**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RONALD HENRY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>MARLETTE FUNDING, LLC d/b/a BEST EGG,<br><br>      Defendant. | Civil Action No. 2:21-cv-00985-RJC |

**DEFENDANT MARLETTE FUNDING, LLC d/b/a BEST EGG'S MEMORANDUM**
**IN SUPPORT OF SECOND MOTION TO COMPEL INDIVIDUAL ARBITRATION**

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, establishes a strong federal policy in favor of the resolution of disputes—including the instant dispute—through arbitration. Plaintiff Ronald Henry ("Plaintiff" or "Henry") brings this lawsuit against Defendant Marlette Funding, LLC d/b/a Best Egg ("Defendant" or "Marlette") regarding a loan agreement that he entered into in October 2015. That loan agreement contains a broad, unequivocal, and conspicuous arbitration provision requiring (if invoked by a party) the arbitration of claims—including statutory claims—between the parties or their assignees relating to or arising out of the loan agreement or activities or relationships involving, leading to, or resulting from the loan agreement. In this arbitration provision, Plaintiff expressly acknowledged his right to litigate disputes in court, but nevertheless waived that right. He also waived any right to arbitrate disputes on a class-wide basis.

In the First Amended Complaint ("FAC"), filed in response to Marlette's initial Motion to Compel Individual Arbitration and Memorandum in Support (Dkts. 7-8), Plaintiff asserts that Defendant violated the Pennsylvania Uniform Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201 *et seq.*, by charging an interest rate on Plaintiff's loan in excess of

limits set by Pennsylvania law.  Plaintiff's UTPCPL claim squarely falls within the plain terms of the loan agreement's arbitration provision.  Plaintiff's UTPCPL claim is a statutory claim relating to and arising out of the loan agreement and the activities and relationships involving and resulting from the loan agreement.  Accordingly, the Court should grant this Second Motion to Compel Individual Arbitration (the "Motion") and require Plaintiff's UTPCPL claim to be arbitrated on an individual basis, pursuant to well-established Supreme Court precedent.  The Court should also stay this case, under the FAA, pending completion of arbitration.

## BACKGROUND

### I.    FACTUAL ALLEGATIONS.[1]

Marlette operates a lending platform through which it accepts loan applications.  *See* Dkt. 11 ¶ 13.  Plaintiff alleges that after Marlette makes a loan offer, it requests that Cross River Bank ("CRB") issue the loan.  *Id.* ¶ 14.  After CRB issues the loan, CRB sells the loan to Marlette or a "designee."  *Id.* ¶ 15.

Plaintiff was issued an $8,000 "Best Egg" loan for personal, family, and/or household purposes in October of 2015.  *Id.* ¶¶ 22, 25-26.  Two (2) days later, CRB sold the loan to one of Marlette's "designees," Marlette Funding Consumer Loan Trust.  *Id.* ¶ 23.[2]  Plaintiff alleges that he was charged a $399.20 origination fee.  *Id.* ¶ 27.  Plaintiff alleges the interest rate charged on the loan was 17.30 percent.  *Id.* ¶ 28.  Plaintiff alleges that the interest and origination fee yielded an annual percentage rate of over 21 percent.  *Id.* ¶ 29.

---

[1] The allegations in the FAC are taken as true solely for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009).

[2] In response to Plaintiff's request, which was made after Marlette filed its initial Motion to Compel Individual Arbitration and was made by Plaintiff expressly invoking Section 16 of the Loan Agreement, Marlette provided Plaintiff with the "Register" relating to Plaintiff's Loan Agreement, which details the assignment history.

Plaintiff alleges that Marlette and its "designees" are not licensed under the Pennsylvania Consumer Discount Company Act ("CDCA"), 72 P.S. §§ 6201-6219, and therefore cannot charge interest in excess of the 6 percent limit that the Pennsylvania Loan Interest and Protection Law ("LIPL") imposes on non-banks, 41 P.S. § 201(a); 7 P.S. § 6203.A.  *See* Dkt. 11 ¶¶ 6-12, 38-40. Plaintiff alleges that CRB issues "Best Egg" loans to Pennsylvania consumers with interest and fees that aggregate in excess of 6 percent simple interest per year.  *Id.* ¶¶ 14, 41-42.  Based on these allegations, Plaintiff asserts a claim against Marlette for violation of the UTPCPL.  *Id.* ¶¶ 68-72.  Plaintiff seeks to certify a class defined as "[a]ll persons who, within the applicable statute of limitations, were issued a Best Egg loan and paid interest and fees that aggregated in excess of 6% simple interest per year."  *Id.* ¶ 61.

## II.    THE LOAN AGREEMENT.

Plaintiff entered into a loan agreement with CRB on October 13, 2015 (the "Loan Agreement").  A true and correct copy of the Loan Agreement is attached and incorporated by reference as **Exhibit 1**.  The "Loan Terms" in the Loan Agreement for the unsecured loan were: (1) an $8,000.00 principal amount; (2) a $399.20 origination fee; (3) $7,600.80 directly given to Plaintiff; (4) a 17.30 percent interest rate; and (5) a payment schedule consisting of 35 consecutive monthly payments of $286.42 and one final payment.  *See* Loan Agreement § 1; Dkt. 11 ¶¶ 22, 25-28.  Plaintiff agreed that CRB could, without further notice or consent, assign the Loan Agreement.  *See* Loan Agreement § 16.  The Loan Agreement provided that CRB is located in New Jersey and that the Loan Agreement "will be entered into" in New Jersey.  *Id.* § 24.  The provisions of the Loan Agreement "will be governed by" federal law and, to the extent that state law applies, New Jersey law, without regard to conflicts of law principles.  *Id.*

The Loan Agreement contains a broad arbitration provision under which Plaintiff and CRB (and its assignees) delineated specific procedures for the arbitration of disputes (the "Arbitration Provision"). *Id.* § 25. Under the Arbitration Provision:

> Either party to this Agreement, ***or any subsequent assignee of this Agreement***, may, ***at its sole election***, require that the sole and exclusive forum and remedy for ***resolution of a Claim be final and binding arbitration*** pursuant to this paragraph 25 (the "Arbitration Provision"), unless you opt out as provided in paragraph 25(b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or ***any assignee*** (or persons claiming through or connected with us and/or any assignee), on the other hand, ***relating to or arising out of this Agreement and/or the activities or relationships that involve, lead to, or result from this Agreement***, including (except to the extent provided otherwise in the last sentence of paragraph 25(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, ***statute***, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

*Id.* § 25.a. (emphasis added).

The Arbitration Provision granted Plaintiff the right to opt out of the Arbitration Provision within thirty (30) days of executing the Loan Agreement. *Id.* § 25.b. The FAC does not allege that Plaintiff did so. *See generally* Dkt. 11.

The Arbitration Provision provides that no arbitration will proceed on a class, representative, or collective basis. *See* Loan Agreement § 25.f. The Arbitration Provision was entered pursuant to a transaction involving interstate commerce and is governed by and enforceable under the FAA. *Id.* § 25.g. The Arbitration Provision survives, among other things, closure of the relationship of the parties and any transfer of the Loan Agreement or the loan to another person or entity. *Id.* § 25.h. The parties waived their right to litigate Claims in a court before a judge or jury upon election of arbitration by any party. *Id.*

Finally, Plaintiff electronically signed the Loan Agreement on October 13, 2015. *Id.* at 9.

## **LEGAL STANDARD**

A court should use a Rule 12(b)(6) standard when ruling on a motion to compel arbitration "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause[.]" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). Where, as here, "the arbitration clause at issue appears in a contract relied upon in the Complaint, [the court] resolves the motion to compel arbitration under a motion to dismiss standard[.]" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014). Under this standard, the Court "accept[s] as true all factual allegations set forth in the Complaint" and may "consider the substance of the contracts that ostensibly compel arbitration." *Id.* The Court may consider a document not attached to a complaint in deciding a motion to compel arbitration under the Rule 12(b)(6) standard when the document is "integral to or explicitly relied upon in the complaint." *Santana v. A.L. Recovery, LLC*, Civil Action No. 18-16, 2018 WL 3912830, at *4 (W.D. Pa. Aug. 16, 2018) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). A document is integral to the complaint if, by its very existence, it gives rise to the legal rights and claims asserted in the complaint. *Id.* at *4-*5.[3]

## **ARGUMENT**

The FAA establishes a strong federal policy in favor of the resolution of disputes through arbitration. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). Before

---

[3] The Court may therefore consider the Loan Agreement in ruling on the Motion because its very existence gives rise to the legal rights and claims Plaintiff asserts in the FAC. Without the Loan Agreement, there would be no loan, and Plaintiff could not assert his UTPCPL claim that is based upon the loan. *See Santana*, 2018 WL 3912830, at *4-*5.

compelling a party to arbitration, a court must determine "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). "When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability." *Id.* "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *see also* 9 U.S.C. § 4.

In this case, both elements for compelling Plaintiff's claim to arbitration are satisfied. First, the Loan Agreement's Arbitration Provision is a valid agreement to arbitrate under governing New Jersey state-law contract principles and may be enforced by Marlette. Second, Plaintiff's UTPCPL claim falls squarely within the scope of the Arbitration Provision because it is a statutory claim "relating to or arising out of" the Loan Agreement and/or "the activities or relationships that involve, lead to, or result from" the Loan Agreement. *See* Loan Agreement § 25.a. Accordingly, pursuant to the FAA and the Loan Agreement, the Court must compel Plaintiff's claim to arbitration and stay this case pending completion of the arbitration.

## I.     THE LOAN AGREEMENT IS A VALID ARBITRATION AGREEMENT.

The Loan Agreement containing the Arbitration Provision is a valid arbitration agreement. In determining whether Plaintiff's claim must be compelled to arbitration, the Court must first consider whether a valid agreement to arbitrate exists. *See Trippe*, 401 F.3d at 532. To make this determination, a federal court applies "ordinary state-law principles that govern the formation of contracts." *See Century Indem.*, 584 F.3d at 524 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In this case, to the extent not governed by federal law, New Jersey law governs the Loan Agreement. *See* Loan Agreement § 24; *Integrserv LLC v. EQT Production*

- 6 -

*Company*, Civil Action No. 20-1228, 2021 WL 1816941, at *3 (W.D. Pa. May 5, 2021) (applying law in agreement's choice of law provision to determine whether the parties agreed to arbitrate).

Under New Jersey law, an enforceable contract—including an agreement to arbitrate disputes—requires offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms. *See Weichert Co. v. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992); *see also Crawford v. Compass Grp. USA*, No. 14-2545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015) ("Under New Jersey law, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract."). Indeed, "[u]nder New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *James v. Glob. Tel\*Link Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014)). For arbitration agreements to be enforceable under New Jersey law, they must contain "clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief." *Atalese*, 99 A.3d at 315-16.

"It is the general rule that where a party affixes [his] signature to a written instrument, . . . a conclusive presumption arises that [he] read, understood and assented to its terms and [he] will not be heard to complain that [he] did not comprehend the effect of [his] act in signing." *Peter W. Kero, Inc. v. Terminal Const. Corp.*, 78 A.2d 814, 817 (N.J. 1951); *see also Morales v. Sun. Constructors, Inc.*, 514 F.3d 218, 221 (3d Cir. 2008) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875))). "[A]n actual, handwritten signature is not necessary" as "a party may manifest assent to an [arbitration] agreement by clicking a link on a website." *Argun v. Neiman Marcus Grp., Inc.*, No.

19-14548, 2020 WL 1272247, at \*9 (D.N.J. Mar. 16, 2020) (collecting cases); *see also Liptak v. Accelerated Inventory Management, LLC*, Case No. 2:20-cv-967, 2021 WL 650514, at \*2 (W.D. Pa. Feb. 19, 2021) ("Thus, because clickwrap agreements are generally enforced by the courts and because of the strong federal policy favoring arbitration, the arbitration provision in the clickwrap agreement shall be enforced.").

Agreements to arbitrate are valid as to assignees where the plain language of the agreement authorizes assignees to enforce the arbitration provision. *See Bowker v. Midland Funding, LLC*, Civil Action No. 18-11320 (SDW)(SCM), 2020 WL 5743044, at \*2 (D.N.J. Sept. 25, 2020) ("The language of the Agreement is both broad and explicit and requires individual arbitration of claims against [the creditor]'s assigns or successors, as well as their affiliates. Therefore, the arbitration provision is valid as to disputes between Plaintiff and Defendants."); *Harris v. Midland Credit Mgmt.*, No. 15-4453 (SDW)(SCM), 2016 WL 475349, at \*2 (D.N.J. Feb. 8, 2016) (same); *see also Montalbano v. Calvary Portfolio Servs., LLC*, Civil Action No. 2:12-cv-01471, 2013 WL 593988, at \*7 (W.D. Pa. Feb. 15, 2013) (holding that "the assignee for collection purposes of [plaintiff's] account by way of a valid assignment from its original owner . . . is entitled to enforce" the arbitration clause contained in an original credit card agreement).

In this case, Plaintiff alleges that he was issued a "Best Egg" loan in October 2015. *See* Dkt. 11 ¶ 22. Indeed, the Loan Agreement states that Plaintiff electronically signed it on October 13, 2015. *See* Loan Agreement at 9. Plaintiffs' electronic signature is sufficient under New Jersey law to manifest Plaintiff's assent to the terms of the Loan Agreement, including the Arbitration Provision. *See Argun*, 2020 WL 1272247, at \*9; *Morales*, 514 F.3d at 221. The Arbitration Provision in the Loan Agreement is therefore a valid agreement to arbitrate under New Jersey law. *See James*, 852 F.3d at 265. In the Arbitration Provision, the parties unequivocally and

conspicuously "acknowledge[d] that they have a right to litigate claims through a court before a judge or jury but will not have that right if any party elects arbitration pursuant to this Arbitration Provision." *See* Loan Agreement § 25.h. (cleaned up). The parties "knowingly and voluntarily waive[d] their rights to litigate such claims in a court before a judge or jury upon election of arbitration by any party." *Id.* (cleaned up). The Arbitration Provision thus contains "clear and unambiguous language that the [P]laintiff . . . waiv[ed] [his] right to sue or go to court to secure relief." *See Atalese*, 99 A.3d at 315-16.

Moreover, Marlette can enforce the Arbitration Provision. Plaintiff alleges that CRB sells Marlette, or its "designee," a "Best Egg" loan two (2) days after it is issued. *See* Dkt. 11 ¶ 15. Indeed, the Loan Agreement states that CRB may assign the Loan Agreement to anyone without further notice or consent. *See* Loan Agreement § 16. The Arbitration Provision authorizes any subsequent assignee of the Loan Agreement to require a Claim to be arbitrated. *Id.* § 25.a. The Arbitration Provision survives, among other events, transfer of the Loan Agreement to any other person or entity. *Id.* § 25.h. Under the plain language of the Loan Agreement, the Arbitration Provision therefore survived CRB's transfer of the loan to Marlette Funding Consumer Loan Trust[4] (and Marlette Funding Consumer Loan Trust's alleged transfer of the loan to UHG I, LLC).[5]

---

[4] Plaintiff cannot credibly challenge the validity of the assignment. First, as stated above (*supra* n.2), Plaintiff filed the FAC and included allegations relating to the assignment of Plaintiff's Loan Agreement from CRB to Marlette Funding Consumer Loan Trust after Plaintiff requested, while invoking Section 16 of the Loan Agreement, that Marlette provide him with the official "Register" detailing his loan's assignment history, which Marlette provided. Moreover, the assignment is plainly valid under New Jersey law, *see Middlesex Surgery Ctr. v. Horizon*, Civil Action No. 13-112 (SRC), 2013 U.S. Dist. LEXIS 27542, at *8 (D.N.J. Feb. 28, 2013); *Curiale v. Hyundai Capital Am.*, Docket No. A-5565-18T3, 2020 N.J. Super. Unpub. LEXIS 765, at *12-*14 (N.J. Super. Apr. 27, 2020), which governs Plaintiff's Loan Agreement, (Loan Agreement § 24).
[5] Of course, Plaintiff cannot avoid the Arbitration Provision by naming Marlette as the defendant, rather than Marlette Funding Consumer Loan Trust, which Plaintiff admits is Marlette's "designee." Dkt. 11 ¶¶ 15, 23, 24.

Accordingly, Marlette may enforce the Arbitration Provision. *See Bowker*, 2020 WL 5743044, at *2; *Harris*, 2016 WL 475349, at *2; *Montalbano*, 2013 WL 593988, at *7.

## II.   PLAINTIFF'S SINGLE STATUTORY CLAIM UNDER THE UTPCPL FALLS SQUARELY WITHIN THE SCOPE OF THE ARBITRATION PROVISION.

Plaintiff's UTPCPL claim falls squarely within the Arbitration Provision.   The determination of whether "a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law," "once a court has found that there is a valid agreement to arbitrate, regardless of whether the action is in a federal or a state court." *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003) (internal citations and quotation marks omitted); *see also Gay v. CreditInform*, 511 F.3d 369, 388 (3d Cir. 2007); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-179 (3d Cir. 1999).   To determine whether a particular dispute falls within the scope of a valid arbitration agreement, "there is a presumption of arbitrability[:] an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *See AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citations omitted); *see also USW, AFL-CIO-CLC v. Rohm & Haas Co.*, 522 F.3d 324, 331 (3d Cir. 2008); *In re Prudential Ins. Co. of Am. Litig.*, 133 F.3d 225, 231 (3d Cir. 1998) ("[D]oubts in interpreting the precise scope of the arbitration agreement are to be resolved in favor of arbitration").   Finally, "[w]hen phrases such as 'any claim arising out of' appear in an arbitration provision, they are given a broad construction, and typically suggest that a given dispute is within the scope of an arbitration provision." *Townsend v. Pinnacle Entm't, Inc.*, 457 Fed. App'x 205, 208-09 (3d Cir. 2012) (citation omitted).

The Arbitration Provision authorizes any party, at its sole election, to "require the sole and exclusive forum and remedy for resolution of a Claim [to] be final and binding arbitration" (unless

Plaintiff opted out, which he did not).  *See* Loan Agreement § 25.a.  The Arbitration Provision defines the phrase "Claim" to include "any past, present, or future claim, dispute, or controversy, involving you (or persons claiming through or connected with you), on the one hand, and us and/or any assignee (or persons claiming through or connected with us and/or any assignee), on the other hand, relating to or arising out of this Agreement and/or the activities or relationships that involve, lead to, or result from this Agreement . . . ."  *Id.*  The Arbitration Provision further states that "Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution; ***statute***; common law; or principles of equity; or otherwise."  *Id.* (emphasis added).  The Arbitration Provision lastly states that its scope "is to be given the broadest interpretation that is enforceable."  *Id.*

Plaintiff's UTPCPL claim—which "arise[s] from . . . statute"—is premised on him allegedly being charged an interest rate in excess of the limits set by the CDCA and the LIPL.  *See id.*; *see generally* Dkt. 11.  Plaintiff's UTPCPL claim is clearly: (1) a "claim, dispute, or controversy[;]" (2) "involving [Plaintiff], on the one hand, and [Marlette], on the other hand[;]" (3) "relating to or arising out of th[e] [Loan] Agreement" or, at the very least, "the activities or relationships that involve, lead to, or result from this [Loan] Agreement[.]"  *See* Loan Agreement § 25.a.; *see also Dodds v. Pulte Home Corp.*, 909 A.2d 348, 350-51 (Pa. Super. 2006) (holding that plaintiff's UTPCPL claim fell within the ambit of the parties' agreement requiring, like the Loan Agreement, arbitration of "[a]ny controversy, claim or dispute arising out of or relating to this Agreement or purchase of the Home").

Given the presumption of arbitrability under the FAA and the Arbitration Provision's clear and unequivocal language, there can be no dispute that Plaintiff's UTPCPL claim falls squarely

within the broad scope of the Arbitration Provision and must be arbitrated.  *See AT&T Techs.*, 475 U.S. at 650; *Townsend*, 457 Fed. App'x at 208-09.

### III.   BASED ON THE CLASS WAIVER IN THE ARBITRATION PROVISION, PLAINTIFF MUST ARBITRATE HIS CLAIM ON AN INDIVIDUAL BASIS.

The Court must compel Plaintiff's claim to individual arbitration—not class arbitration—because Plaintiff expressly agreed that no arbitration may proceed on a class-wide basis.  The Supreme Court has made clear that, absent explicit language permitting it, a court may not compel arbitration on a class-wide basis.  *See Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1623 (2018) (holding that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684-86 (2010) (holding that a court may not compel arbitration on a classwide basis when an agreement is silent on the availability of such arbitration).  The Supreme Court also has made clear that class arbitration waivers are enforceable—they do not eliminate claims, but rather, simply change the manner in which they proceed.  *See American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236 (2013) ("The class-action waiver merely limits arbitration to the two contracting parties.  It no more eliminates those parties' rights to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) (noting that class arbitration is inconsistent with the FAA, which preempted the judicial rule preventing enforcement of class action waivers in consumer contracts); *see also Kobren v. A-1 Limousine Inc.*, Civil Action No. 16-516-BRM-DEA, 2016 WL 6594075, at *4 (D.N.J. Nov. 7, 2016) ("[N]either individual claims nor class arbitration waivers are unconscionable in the context of consumer adhesion contracts, even when there is a clear disparity of bargaining power and when only small monetary amounts are at issue").

In this case, the Arbitration Provision unequivocally and conspicuously states that "NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS . . . EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT." *See* Loan Agreement § 25.f.  The Arbitration Provision further provides that if the limitations on class arbitration are determined to be unenforceable, "then no arbitration shall be had." *Id.* § 25.h.  Clearly, Plaintiff waived any right to class arbitration, and the Court therefore cannot compel arbitration of Plaintiff's claim on a class-wide basis.  *See Lewis*, 138 S.Ct. at 1623; *Stolt-Nielsen*, 559 U.S. at 684-86; *American Exp.*, 570 U.S. at 236; *Concepcion*, 563 U.S. at 351. Rather, the Court must compel arbitration of Plaintiff's claim on an individual basis.

## IV.    THE COURT SHOULD STAY THIS CASE PENDING ARBITRATION.

Section 3 of the FAA requires that a court, when faced with a valid arbitration clause that encompasses the dispute at issue, stay the action pending arbitration.  *See* 9 U.S.C. § 3; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 208 n.7 (3d Cir. 2010).  Indeed, if a court determines that an issue in a case is subject to arbitration, it must stay the proceedings until arbitration is concluded upon request by one of the parties.  *See Lloyd v. Hovensa, L.L.C.*, 369 F.3d 263, 269 (3d Cir. 2004); *DCK N. Am., LLC v. Burns & Roe Servs. Corp.*, 218 F. Supp. 3d 465, 471 (W.D. Pa. 2016) (citing 9 U.S.C. § 3).  Based upon Marlette's request, the Court should stay this case pending completion of arbitration.

**CONCLUSION**

For the foregoing reasons, the Court should grant the Motion, order the parties to proceed to arbitrate this matter on an individual basis in the manner to which they agreed in the Loan Agreement, and stay this case pending arbitration.

Dated: August 27, 2021

**REED SMITH LLP**

*/s/ Justin J. Kontul*
Justin J. Kontul
Pa. I.D. No. 206026
Alex G. Mahfood
Pa. I.D. No. 324047
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
T: (412) 288-3131
F: (412) 288-3063
jkontul@reedsmith.com
amahfood@reedsmith.com

*Counsel for Defendant*
*Marlette Funding, LLC*
*d/b/a Best Egg*

- 14 -

## **CERTIFICATE OF SERVICE**

I certify that on August 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

*/s/ Justin J. Kontul*