## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD HENRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARLETTE FUNDING, LLC d/b/a BEST EGG,<br><br>Defendant. | Case No. 2:21-cv-00985 |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S <u>SECOND MOTION TO COMPEL INDIVIDUAL ARBITRATION</u>

Kevin Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.      INTRODUCTION  ................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

III.    LEGAL STANDARD ............................................................................ 5

        A.      Applicable Standard ................................................................ 5

        B.      Applicable Law ....................................................................... 6

IV.     ARGUMENT ..................................................................................... 7

        A.      The Plain Language Of The Arbitration Provision Prevents Marlette
                From Compelling Arbitration .................................................. 7

        B.      There Is No Evidence From Which A Fact Finder Could Conclude
                That A Valid And Enforceable Arbitration Agreement Exists ........................... 11

        C.      There Is No Evidence From Which A Fact Finder Could Conclude
                That The Loan Agreement, Or The Right To Compel Arbitration,
                Was Transferred To Marlette Or Anyone Else ...................................... 14

V.      CONCLUSION ................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*ACE Am. Ins. Co. v. Guerriero*,
  738 F. App'x 72 (3d Cir. 2018) ........................................................................ 6

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................... 5

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ........................................................................................... 6

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ........................................................................................... 6

*Bacon v. Avis Budget Grp., Inc.*,
  959 F.3d 590 (3d Cir. 2020) ........................................................................... 11

*Badiali v. N.J. Mfrs. Ins. Grp.*,
  107 A.3d 1281 (N.J. 2015) ................................................................................. 8

*Bazemore v. Jefferson Capital Sys., LLC*,
  827 F.3d 1325 (11th Cir. 2016) ............................................................. 13, 14, 17

*Blaine v. Pressler & Pressler, LLP*, No. A-2289-11T2,
  2013 N.J. Super Unpub. LEXIS 1312 (N.J. Super. Ct. App. Div. May 31, 2013) ................. 9

*Carnival Cruise Lines v. Shute*,
  499 U.S. 585 (1991) ......................................................................................... 12

*Curtis v. Cellco P'ship*,
  992 A.2d 795 (N.J. Super. Ct. App. Div. 2010) .................................................. 11

*Fitts v. Chase Manhattan Mortg. Corp.*, No. A-0814-05T5,
  2006 N.J. Super. Unpub. LEXIS 1461 (N.J. Super. Ct. App. Div. Nov. 30, 2006) ............... 9

*Fox v. Nationwide Credit, Inc.*, No. 09-cv-07111,
  2010 U.S. Dist. LEXIS 88654 (N.D. Ill. Aug. 25, 2010) ...................................... 11

*Frank K. Cooper Real Estate #1, Inc. v. Cendant Corp.*,
  No. A-1482-16T3 & No. A-1579-16T3,
  2018 N.J. Super. Unpub. LEXIS 2677 (N.J. Super. Ct. App. Div. Dec. 6, 2018) ................. 7

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*,
  773 A.2d 665 (N.J. 2001) ................................................................................... 7

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
716 F.3d 764 (3d Cir. 2013) ................................................................ 5

*Halsey v. Pfeiffer*,
750 F.3d 273 (3d Cir. 2014) ................................................................ 5

*Haston v. Resurgent Capital Servs., L.P.*, No. 20-cv-01008,
2020 U.S. Dist. LEXIS 239227 (W.D. Pa. Dec. 21, 2020) ................................. 16

*Jackson v. Home Depot, U.S.A., Inc.*,
857 S.E.2d 321 (N.C. Ct. App. 2021) ...................................................... 10

*James v. Global Tel\*Link Corp.*,
852 F.3d 262 (3d Cir. 2017) .......................................................... 11, 12

*John F. Harkins Co. v. Waldinger Corp.*,
796 F.2d 657 (3d Cir. 1986) ................................................................ 6

*Kennedy v. LVNV Funding LLC*, No. 18-cv-10695,
2019 U.S. Dist. LEXIS 69119 (D.N.J. Apr. 24, 2019) ...................................... 10

*Kernahan v. Home Warranty Adm'r of Fl., Inc.*,
199 A.3d 766 (N.J. 2019) ................................................................. 7, 8

*Lance v. Midland Credit Mgmt. Inc.*,
375 F. Supp. 3d 604 (E.D. Pa. 2019) ...................................................... 16

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*,
691 F.3d 294 (3d Cir. 2012) ................................................................ 5

*Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-cv-00895,
2021 U.S. Dist. LEXIS 164995 (E.D.N.Y. Aug. 31, 2021) ............................... 10, 11

*McGinnis v. John C. Bonewicz, P.C.*, No. 11-cv-02210,
2012 U.S. Dist. LEXIS 23833 (C.D. Ill. Feb. 2, 2012),
*report and recommendation adopted*,
2012 U.S. Dist. LEXIS 23829 (C.D. Ill. Feb. 24, 2012) .................................... 10

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ............................................................. 12

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ............................................................... 12

*Pacanowski v. Alltran Fin., LP*,
271 F. Supp. 3d 738 (M.D. Pa. 2017) ...................................................... 10

*ProCD, Inc. v. Zeidenberg*,
    86 F.3d 1447 (7th Cir. 1996) ...................................................................... 12

*Rodriguez-Ocasio v. Midland Credit Mgmt., Inc.*, No. 17-cv-03630,
    2021 U.S. Dist. LEXIS 161071 (D.N.J. Aug. 25, 2021) ...................................... 16

*Saroza v. Client Servs., Inc.*, No. 17-cv-03429,
    2020 U.S. Dist. LEXIS 33375 (D.N.J. Feb. 27, 2020) ........................................ 10

*SBRMCOA, LLC v. Bayside Resort, Inc.*,
    707 F.3d 267 (3d Cir. 2013) ............................................................... 13, 17

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) ............................................................... 6, 12

*Seelhorst v. Immunomedics, Inc.*, No. A-0350-20,
    2021 N.J. Super. Unpub. LEXIS 1077 (N.J. Super. Ct. App. Div. June 7, 2021) ................. 7

*Singh v. Uber Techs. Inc.*,
    939 F.3d 210 (3d Cir. 2019) ..................................................................... 5

*Starke v. SquareTrade, Inc.*,
    913 F.3d 279 (2d Cir. 2019) .................................................................... 12

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ........................................................................... 11

*White v. Sunoco, Inc.*,
    870 F.3d 257 (3d Cir. 2017) .................................................................. 6, 10

*Williams v. Encore Capital Grp., Inc.*, No. 19-cv-05252,
    2020 U.S. Dist. LEXIS 238773 (E.D. Pa. Dec. 18, 2020) ...................................... 6

**Rules**

Fed. R. Civ. P. 56 ............................................................................ 5

Fed. R. Evid. 802 ........................................................................... 14

**Other Authorities**

Adam J. Levitin, *Rent-a-Bank: Bank Partnerships and the Evasion of Usury Laws*,
    71 Duke L.J. (forthcoming 2021), https://ssrn.com/abstract=3684244 .................................. 3

Restatement (Second) of Contracts § 19(2) ............................................................ 12

I.    **INTRODUCTION**

This case involves countless alleged violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Plaintiff Ronald Henry ("Henry") claims Defendant Marlette Funding, LLC ("Marlette") charged usurious interest on personal loans issued to Henry and tens of thousands of other Pennsylvanians, thereby acquiring approximately $30,000,000 in additional revenue. (Doc. 1, ¶¶ 13, 23.)

Marlette does not attempt to defend against these allegations by arguing that its actions were lawful or that Henry fails to state a claim. Instead, Marlette seeks to skirt class wide liability by compelling this case to individual arbitration. Marlette claims the alleged agreement between Henry and Cross River Bank governing the loan at issue ("Loan Agreement") contains a valid and enforceable arbitration agreement ("Arbitration Provision") covering Henry's claim. But Marlette cannot compel arbitration for multiple reasons.

Most importantly, the plain language of the Arbitration Provision precludes Marlette from compelling arbitration. The Arbitration Provision specifically identifies the individuals and entities with the right to elect arbitration of covered claims. These individuals and entities include parties to and subsequent assignees of the Loan Agreement. It is undisputed that Marlette was not a party to and has never been an assignee of the Loan Agreement. As a result, the Arbitration Provision, by its terms, prevents Marlette from compelling arbitration of Henry's claims. The Court must deny Marlette's motion for this reason alone.

Aside from the fact that Marlette does not have the power to elect arbitration under the plain and unambiguous terms of the Loan Agreement and its Arbitration Provision, Marlette still cannot compel arbitration because there is no competent evidence to establish the formation of a valid and enforceable arbitration agreement. Marlette asserts that "the Loan Agreement states that

1

[Henry] electronically signed [the Loan Agreement]" and maintains that "[Henry's] electronic signature is sufficient . . . to manifest [Henry's] assent to . . . the Loan Agreement, including [its] Arbitration Provision." (Doc. 13, p. 8.) But Marlette fails to produce or point to any evidence to prove its conclusory claim that the words "Signed Electronically," which are printed in the Loan Agreement, represent Henry's electronic signature and, thus, his ratification of the terms of the Loan Agreement. Because Marlette produces no evidence to suggest (much less establish) that Henry agreed to arbitrate his claims, or even put at issue Henry's assent to the Loan Agreement and its Arbitration Provision, the Court would still be required to deny Marlette's motion with prejudice, without trial, and without further discovery, even if Marlette could compel arbitration under the plain terms of the Loan Agreement and its Arbitration Provision.

Yet another issue is Marlette's complete failure to produce any evidence to show that the Loan Agreement, let alone the right to elect arbitration, was assigned to Marlette (or anyone else). The Loan Agreement is separate and distinct from Henry's loan. (Doc. 13-1, ¶¶ 16, 25.h.) The Arbitration Provision affords assignees of the former, but not the latter, the right to elect arbitration. (*Id.* at ¶ 25.a.) Like Henry's alleged assent to the Loan Agreement, Marlette produces no evidence to prove, suggest, or even place at issue, the assignment of the Loan Agreement to Marlette or to any other entity. And, while Marlette claims the allegations of the Amended Complaint prove the Loan Agreement was assigned, the Complaint only alleges that Henry's loan was assigned. Accordingly, and contrary to Marlette's claims, Henry "can[] credibly challenge the validity of the assignment" of the Loan Agreement, (Doc. 13, p. 9 n.4), because Henry does not allege, and there is no other evidence to establish, that the Loan Agreement was assigned.

Consequently, Henry respectfully requests that the Court deny Marlette's motion to compel individual arbitration with prejudice, as a matter of law, and without trial.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This case challenges a "rent-a-bank" arrangement[1] involving Marlette, a nonbank that operates an online personal lending platform, and Cross River Bank. (Doc. 11, ¶¶ 13-19.) Pursuant to this arrangement, Cross River Bank originates personal loans, typically with high interest rates, at Marlette's request and, several days later, sells the loans to Marlette or its nonbank designees, who then collect the loans. (*Id.*) Cross River Bank issued, and shortly thereafter assigned to one of Marlette's designees, one such loan to Henry ("Account"). (*Id.* at ¶¶ 22-29.)

Henry claims Marlette's "rent-a-bank" scheme runs afoul of the UTPCPL, (Doc. 11, ¶¶ 68-72), because neither Marlette nor any of its nonbank designees had the licensure required by the Loan Interest and Protection Law ("LIPL") or Consumer Discount Company Act ("CDCA") to charge and collect the interest and fees Marlette charged and collected on Henry's loan and loans issued to tens of thousands of Pennsylvanians. (*Id.* at ¶¶ 6-12, 22-29, 38-42, 63.) Henry further claims the principal, if not sole, purpose of this scheme is the evasion of state usury and licensing laws. (*Id.* at ¶¶ 43-47.) To date, Marlette's "rent-a-bank" scheme has enabled it to overcharge Pennsylvania consumers $30,000,000 in interest. (Doc. 1, ¶ 23.)

In response to Henry's allegations, Marlette filed a motion to compel individual arbitration, contending that the Arbitration Provision of the Loan Agreement that allegedly governs Henry's Account contains a valid and enforceable arbitration agreement. (Doc. 12; Doc. 13.) Marlette claims it is entitled to elect arbitration under the Loan Agreement because Henry's loan was assigned to, and at one time held by, Marlette's nonbank designees. (*Id.*)

---

[1] "In a rent-a-bank arrangement, a nonbank lender contracts with a bank to make loans per [the nonbank lender's] specifications and then [the nonbank lender] buys the loans from the bank." Adam J. Levitin, *Rent-a-Bank: Bank Partnerships and the Evasion of Usury Laws*, 71 DUKE L.J. (forthcoming 2021), https://ssrn.com/abstract=3684244.

The terms of the Loan Agreement material to Marlette's motion to compel include: (i) the first sentence, which sets forth the parties to the Loan Agreement; (ii) paragraph 16, which (a) permits Cross River Bank to assign the Loan Agreement and the Account to others, (b) requires that Marlette maintain a list of all assignees of the Account ("Loan Register"), (c) accords entries in the Loan Register conclusive effect, and (d) renders recordation in the Loan Register the sole means of assignment of the Account; (iii) paragraph 24, which (a) makes clear there are no third party beneficiaries of the Loan Agreement, and (b) contains a choice-of-law clause calling for application of New Jersey law; (iv) paragraph 25, which (a) specifically identifies the only parties entitled to elect arbitration pursuant to the Arbitration Provision, (b) defines the claims covered by the same, (c) includes a class arbitration waiver clause, and (d) states that the Arbitration Provision survives certain events, including termination of the relationship of the parties and assignment of the Loan Agreement or the Account; and (v) the signature section, which allegedly shows the electronic signature of an unidentified individual. (Doc. 13-1.)

In accordance with the terms of the Loan Agreement, and as established by the entries in the Loan Register, the Account was assigned from Cross River Bank to various of Marlette's nonbank designees and, eventually, to a debt buyer, but was never transferred to Defendant, Marlette Funding, LLC. (Exhibit A.) This series of assignments is shown below.

**Assignments of Account, as Listed in Loan Register**



| Cross River Bank | → | Marlette Funding Consumer Loan Trust | → | MF Trust 2015-A | → | Marlette Funding Consumer Loan Trust | → | UHG I LLC |

4

### III.   LEGAL STANDARD

#### A.   Applicable Standard.

Motions to compel arbitration are governed by the motion to dismiss standard of Fed. R. Civ. P. 12(b)(6) or the motion for summary judgment standard of Fed. R. Civ. P. 56. *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019). The motion to dismiss standard applies if it is clear from the complaint that a party's claims are subject to a valid arbitration agreement. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). The summary judgment standard applies if the complaint is "unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue[.]" *Id.*

Here, the summary judgment standard applies to Marlette's motion to compel arbitration because it is not apparent, from the face of the Amended Complaint, (Doc. 11), that Henry's claims are subject to a valid and enforceable agreement to arbitrate.

Where, as here, the summary judgment standard applies to a motion to compel arbitration, the motion may be granted or denied only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-moving party, and a fact is material if it could affect the outcome of the case. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When applying this standard, "a court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the evidence." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

## B.    Applicable Law.

Before compelling arbitration, a court must address two threshold issues. First, the court must consider whether a valid and enforceable arbitration agreement exists between the parties. *ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 77 (3d Cir. 2018) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Second, the court must consider whether the dispute in question falls within the scope of the arbitration agreement. *Id*. A court can compel arbitration only if both issues are answered affirmatively. *Williams v. Encore Capital Grp., Inc.*, No. 19-cv-05252, 2020 U.S. Dist. LEXIS 238773, at *6 (E.D. Pa. Dec. 18, 2020).

These two preliminary issues must be decided pursuant to applicable state law, *Williams*, 2020 U.S. Dist. LEXIS 2 38773, at *6 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) and *AT&T Techs.*, 475 U.S. at 648), and may be determined as a matter of law, *id*. (citing *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 659 (3d Cir. 1986)).

Here, New Jersey law controls these threshold issues. The Loan Agreement contains a choice-of-law clause requiring that "[t]he provisions of th[e] [Loan] Agreement . . . be governed by federal laws and, to the extent that state law applies, the laws of the state of New Jersey[.]"[2] (Doc. 13-1, ¶ 24.) Consequently, New Jersey law applies in the current case.[3]

---

[2] The choice-of-law clause in the Loan Agreement cannot control which state law applies to the initial threshold issue of whether an arbitration agreement exists, as "[a]pplying the choice-of-law clause to resolve th[is] contract formation issue would presume the applicability of a provision before its adoption by the parties [is] established." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). Rather, the Court should apply Pennsylvania's choice-of-law rules to decide which state's law governs this issue. *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017) ("To choose which state law will apply, 'a federal court sitting in diversity must apply the choice-of-law rules of the forum state.'") (citation omitted). Pennsylvania's choice-of-law rules require courts to "avoid [a] choice-of-law question" if "there is no actual conflict" between the possibly applicable state laws. *Id*. The substantive law of Pennsylvania and New Jersey concerning contract formation do not truly conflict, as application of either "would produce the same result." *Id*. Consequently, the Court need not engage in a choice-of-law analysis, and can apply New Jersey law to this issue.

[3] Marlette does not appear to contest the application of New Jersey law. (Doc. 13, pp. 3, 6-9.)

IV.     **ARGUMENT**

     A.     **The Plain Language Of The Arbitration Provision Prevents Marlette From Compelling Arbitration.**

The plain language of the Arbitration Provision precludes Marlette from compelling arbitration. The first sentence of the Arbitration Provision unambiguously identifies the individuals and entities empowered to elect arbitration pursuant to the Loan Agreement. Such individuals and entities include only parties to and assignees of the Loan Agreement. It is undisputed that Marlette is neither. Consequently, the plain language of the Loan Agreement and its Arbitration Provision prevents Marlette from compelling arbitration of Henry's claims.[4]

"A court's objective in construing a[ny] contract[,]" including an arbitration agreement, "is to determine the intent of the parties [thereto]." *Kernahan v. Home Warranty Adm'r of Fl., Inc.*, 199 A.3d 766, 777 (N.J. 2019). "The 'intent expressed or apparent in the writing . . . controls' the interpretation of an arbitration agreement." *Seelhorst v. Immunomedics, Inc.*, No. A-0350-20, 2021 N.J. Super. Unpub. LEXIS 1077, at *10 (N.J. Super. Ct. App. Div. June 7, 2021) (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 773 A.2d 665, 672 (N.J. 2001)). "In interpreting an arbitration provision, courts look to the . . . plain language [of the provision]." *Frank K. Cooper Real Estate #1, Inc. v. Cendant Corp.*, No. A-1482-16T3 & No. A-1579-16T3, 2018 N.J. Super. Unpub. LEXIS 2677, at *13 (N.J. Super. Ct. App. Div. Dec. 6, 2018); *see also*

---

[4] Apparently recognizing it cannot elect arbitration pursuant to the Arbitration Provision, Marlette implies Henry strategically filed suit against Marlette, instead of Marlette's designees, to "avoid the Arbitration Provision[.]" (Doc. 13, p. 9 n.5.) This is plainly untrue. Henry initially alleged that Cross River Bank sells the loans it issues at Marlette's request to Marlette after issuing them. (Doc. 1-2, ¶ 18.) It was not until Marlette filed its first motion to compel, to which the Loan Agreement was attached, that Henry requested, and Marlette provided, the Loan Register. At that time, Henry learned the Account was assigned to several of Marlette's designees but not to Marlette. Based on this new information, Henry filed an amended complaint and revised his allegations accordingly. (Doc. 11, ¶¶ 15, 23-24.)

*Kernahan,* 199 A.3d at 778 ("A basic tenant of contract interpretation is that contract terms should be given their plain and ordinary meaning."). Importantly, "[a] court may not rewrite [a] contract to broaden the scope of [an] arbitration [provision] or otherwise make it more effective." *Badiali v. N.J. Mfrs. Ins. Grp.*, 107 A.3d 1281, 1289 (N.J. 2015).

The Arbitration Provision of the Loan Agreement provides, in pertinent part, that "***[e]ither party to th[e] [Loan] Agreement***, or *any subsequent assignee of th[e] [Loan] Agreement*, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration[.]" (Doc. 13-1, ¶ 25.a. (emphasis added).) The first sentence of the Loan Agreement identifies the parties to the contract as "Cross River Bank" and Ronald Henry, "the borrower." (*Id.* at p. 2.) The Loan Register[5] sets forth all subsequent assignees of the Account. (Exhibit A.) This list includes two of Defendant's designees (Marlette Funding Consumer Loan Trust, and MF Trust 2015-A) as well as a debt buyer (UHG I LLC). (*Id.*) Pursuant to the terms of the Loan Agreement, the entries in the Loan Register are conclusive, and recordation therein is the sole means of transfer of the Account. (Doc. 13-1, ¶ 16.)

The plain and unambiguous language of the Loan Agreement and the Arbitration Provision does not afford Marlette the ability to invoke arbitration. The Arbitration Provision expressly grants a right to elect arbitration to only two groups, namely (1) parties to the Loan Agreement, and (2) subsequent assignees of the Loan Agreement. It is undisputed that Marlette was not a party to the Loan Agreement. It is similarly undisputed that Marlette is not now, and has never been, a

---

[5] The Loan Agreement states: "Marlette . . . shall maintain . . . a register for the recordation of the name . . . of the holder of your loan (including any assignee . . . who becomes the holder of your loan pursuant to an assignment) . . . . The entries in the [Loan] Register shall be conclusive . . . and you, Cross River Bank . . . , and the holder of your loan (including any assignee . . . who becomes the holder of your loan . . . ) shall treat the person whose name is recorded in the [Loan] Register . . . as a holder of your loan . . . for all purposes of th[e] [Loan] Agreement. Recordation in the [Loan] Register is the sole means of assignment or transfer of . . . your loan." (Doc. 13-1, ¶ 16.)

8

subsequent assignee of the Loan Agreement. Discovery cannot change these facts. Accordingly, Marlette cannot compel arbitration of this case.

Other portions of the Arbitration Provision supply additional support for this proposition. For example, after limiting the right to elect arbitration to the parties and any subsequent assignees, the next sentence of the Arbitration Provision defines "Claim" as "any past, present, or future claim, dispute, or controversy involving you (*or persons claiming though or connected with you*) . . . and us and/or any assignee (*or persons claiming through or connected with us and/or any assignee*)[.]" (Doc. 13-1, ¶ 25.a. (emphasis added).) If the parties intended to grant a right to elect arbitration to anyone other than the parties or subsequent assignees, they would have used broader language in the sentence establishing this power, as they did when defining "Claim" in the very next sentence. *See Blaine v. Pressler & Pressler, LLP*, No. A-2289-11T2, 2013 N.J. Super Unpub. LEXIS 1312, at *7-8 (N.J. Super. Ct. App. Div. May 31, 2013) ("Where a contract specifies different rights to different specifically-mentioned entities, the contract must be interpreted to require that specificity."). Construing "[e]ither party . . . or any subsequent assignee" (the words in the election clause) to mean Marlette, who is not a party or assignee, but who may be a "person[] . . . connected with . . . an[] assignee" (the words in the claim definition clause), would render the specific "connected with" language "useless or inexplicable," a construction the Court cannot condone. *See Fitts v. Chase Manhattan Mortg. Corp.*, No. A-0814-05T5, 2006 N.J. Super. Unpub. LEXIS 1461, at *9-10 (N.J. Super. Ct. App. Div. Nov. 30, 2006) ("When interpreting the terms of [a] writing, [a] court is required to give meaning to every word . . . rather than leave a portion of the writing useless or inexplicable."). Given the distinct language utilized by the parties to describe who can elect arbitration, on the one hand, and which claims are subject to arbitration, on the other, the parties did not intend to grant Marlette the right to elect arbitration.

9

The Third Circuit, construing similar "connected with" language in an arbitration clause, agreed in *White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017). In *White*, the defendant, Sunoco, aimed to compel the plaintiff, White, to arbitrate his claims in accordance with an arbitration clause in a credit card agreement between White and a third party not named in the lawsuit. *Id.* at 259. The Court refused to allow Sunoco to do so, stating:

> Sunoco points to the portion of the arbitration clause in the Card[holder] Agreement which defines the claims covered as inclusive of those "made by or against anyone connected with us or you or claiming through us or you." Sunoco argues that it is "connected with" Citibank . . . [but] **Sunoco's argument fails because it *confuses the nature of the claims covered by the arbitration clause with the question of who can compel arbitration*. Even if Sunoco is "connected" with Citibank and the claims against Sunoco are covered claims, that does not give Sunoco the right to elect to arbitrate against White**. The arbitration clause of the Cardholder Agreement establishes unequivocally that "[e]ither you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called 'Claims')." . . . The Cardholder Agreement defines "you" as the card holder and "we" and "us" as Citibank. Nowhere does the agreement provide [] a third party, like Sunoco, [with] the ability to elect arbitration or to move to compel arbitration.

*Id.* at 267-68 (emphasis added) (internal citations omitted).

Courts across the country, in closely analogous cases, have "f[ound] *White* to be directly on point and persuasive" and thus "adopt[ed] its reasoning[.]" *Jackson v. Home Depot, U.S.A., Inc.*, 857 S.E.2d 321, 328-329 (N.C. Ct. App. 2021); *see, e.g., Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-cv-00895, 2021 U.S. Dist. LEXIS 164995, at *15-20 (E.D.N.Y. Aug. 31, 2021); *Saroza v. Client Servs., Inc.*, No. 17-cv-03429, 2020 U.S. Dist. LEXIS 33375, at *5-8 (D.N.J. Feb. 27, 2020); *Kennedy v. LVNV Funding LLC*, No. 18-cv-10695, 2019 U.S. Dist. LEXIS 69119, at *7 n.4 (D.N.J. Apr. 24, 2019); *Pacanowski v. Alltran Fin., LP*, 271 F. Supp. 3d 738, 745-46 (M.D. Pa. 2017); *see also McGinnis v. John C. Bonewicz, P.C.*, No. 11-cv-02210, 2012 U.S. Dist. LEXIS 23833, at *6-12 (C.D. Ill. Feb. 2, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 23829 (C.D. Ill. Feb. 24, 2012) (distinguishing between definition of covered

claims and right to elect arbitration); *Fox v. Nationwide Credit, Inc.*, No. 09-cv-07111, 2010 U.S. Dist. LEXIS 88654, at \*7-10 (N.D. Ill. Aug. 25, 2010) (same). So should this Court.

In sum, the Loan Agreement's plain language confirms Marlette cannot compel arbitration. Federal law "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Curtis v. Cellco P'ship*, 992 A.2d 795, 799 (N.J. Super. Ct. App. Div. 2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). Here, the contract terms grant a right to elect arbitration only to parties and subsequent assignees, and it is undisputed that Marlette is neither. The Court must give effect to the intentions of the parties, as evidenced by the unambiguous language of the Loan Agreement, by enforcing the terms of the Arbitration Provision as written and denying Marlette's motion.[6]

**B.      There Is No Evidence From Which A Fact Finder Could Conclude That A Valid And Enforceable Arbitration Agreement Exists.**

Even if the plain language of the Arbitration Provision did grant a right to elect arbitration to entities related to subsequent assignees, like Marlette, Marlette still could not do so because there is no evidence to establish (or even suggest) that an enforceable agreement to arbitrate exists. "Arbitration is a matter of contract between the parties[.]" *James v. Global Tel\*Link Corp.*, 852 F.3d 262, 265 (3d Cir. 2017). "[T]he FAA does not require parties to arbitrate when they have not agreed to do so." *Id.* (quoting *Volt Info. Scis., Inc.*, 489 U.S. at 478).

A party seeking to compel arbitration cannot do so without proving mutual assent. *See Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 600 (3d Cir. 2020). Assent can be "express or implied by conduct." *James*, 852 F.3d at 266. If implied, the "conduct of a party is not effective as

---

[6] Marlette discusses the class arbitration waiver in the Loan Agreement, (*see* Doc. 13, pp. 12-13; Doc. 13-1, ¶ 25.f.), but "the operation of [this clause] is contingent on a party validly electing to arbitrate." *Madorskaya*, 2021 U.S. Dist. LEXIS 164995, at \*35. Because Marlette "may not invoke the Arbitration [Provision], it may not invoke the class [arbitration] waiver [clause]" within it. *Id*.

11

a manifestation of his assent unless he . . . knows or has reason to know that the other party may infer from his conduct that he assents." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012) (quoting Restatement (Second) of Contracts § 19(2)). A party knows or has reason to know his conduct will bind him to a contract if he has sufficient notice. *Id.* A party has such notice when there is evidence to prove he received a physical copy of a contract as part of a product's packaging, and opened and used the product afterwards. *James*, 852 F.3d at 267 (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 590, 594-95 (1991); *Schnabel*, 697 F.3d at 121-22; and *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996)).

Marlette cannot compel arbitration here because there is no evidence to prove that Henry assented to the Loan Agreement. The sole evidence Marlette relies upon to establish Henry's assent is the Loan Agreement itself, in which the words "Signed Electronically" appear on the ninth page. (Doc. 13-1, ¶ 25.) Henry did not type these words, or the date printed beside them. (Henry Dec., ¶¶ 4, 8-10.) More importantly, there is no documentary, testimonial, or other evidence supporting the claim that Henry caused the words "Signed Electronically" to appear in the Loan Agreement.[7] Instead, Marlette simply declares, without support, that "the Loan Agreement states that [Henry] electronically signed it on October 13, 2015." (Doc. 13, p. 8.) This bald declaration, without any evidence, is woefully insufficient. Marlette's motion must be denied.

---

[7] Nor is there evidence to establish that the existence of the words "Signed Electronically" prove that Henry assented to the Loan Agreement by clicking a button or visiting a website. Marlette does not provide screen shots from any website or log-in portal depicting the appearance of the website or otherwise demonstrating that the website provided Henry with adequate notice that his visitation or use would bind him to the terms of the Loan Agreement. Because a party's conduct can contractually bind him only if he has notice that his conduct may be construed by another as a manifestation of his assent, the failure to produce any such evidence is fatal. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) (analyzing website screenshots to determine they did not provide sufficient notice of arbitration agreement); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) (same); *Starke v. SquareTrade, Inc.*, 913 F.3d 279 (2d Cir. 2019) (same with respect to email); *Schnabel*, 697 F.3d 110 (same with respect to email and website).

Given the dearth of evidence produced pertaining to Henry's assent to the Loan Agreement, the Court should deny Marlette's motion to compel arbitration as a matter of law, with prejudice, and without trial. *See SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3d Cir. 2013) (stating "when there is no genuine issue of fact concerning the formation of the [arbitration] agreement" courts should "decide as a matter of law that the parties did or did not enter into such an agreement"); *see also Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1334 (11th Cir. 2016) (holding when movants "offer[] no competent evidence to demonstrate the existence of a genuine issue of material fact concerning the existence of an arbitration agreement, [a] motion to compel arbitration must be denied as a matter of law without the need for a trial").

The Eleventh Circuit's ruling in *Bazemore* is instructive. There, a debt buyer attempted to compel arbitration based on the existence of an alleged arbitration agreement between a consumer and the issuer of a credit card. 827 F.3d at 1327-28. The Eleventh Circuit denied the debt buyer's motion to compel arbitration as a matter of law and without trial because the record evidence was "woefully inadequate." *Id.* at 1330, 1334. There was no evidence to show the consumer assented to the alleged arbitration agreement, as the debt buyer produced no witnesses or other evidence to prove that the agreement attached to its motion to compel was sent to or received by the plaintiff. *Id.* at 1328, 1331. Instead, the debt buyer's witness could only testify that some agreement "would have been" sent to the plaintiff, but could not testify that any agreement was actually sent, or that the agreement that "would have been" sent was the same as the agreement attached to the motion. *Id.* The Eleventh Circuit found that this complete lack of evidence failed to raise a genuine issue of fact for trial concerning the existence of any arbitration agreement. *Id.* at 1333-34. Because there was no issue of fact for trial, the Eleventh Circuit held that the "motion to compel arbitration must be denied as a matter of law without the need for a trial." *Id.* at 1334.

13

The reasoning of *Bazemore* applies even more forcefully here, as Marlette produced far less evidence of assent than in *Bazemore*. The only proof of Henry's assent is the Loan Agreement, wherein the words "Signed Electronically" appear. There is no testimonial, documentary, or other evidence to establish: that a physical copy of the Loan Agreement was sent to Henry; that Henry printed "Signed Electronically" in the Loan Agreement; that Henry agreed to the Loan Agreement by clicking a button, proceeding through a log-in process or sales portal, or visiting a webpage; or that Henry assented to the Loan Agreement in some other way. Marlette merely declares, without evidence: "the Loan Agreement states that [Henry] electronically signed it on October 13, 2015." (Doc. 13, p. 8.)[8] This bald, wholly unsupported conclusion is far less than what *Bazemore* deemed to be "woefully inadequate" and decided was unable to "raise a genuine issue of fact as to the existence of an arbitration agreement." 827 F.3d at 1330, 1333. Because Marlette has not raised any triable issue of fact concerning Henry's assent to the Loan Agreement (and, thus, the existence of an arbitration agreement), the Court should deny Marlette's motion to compel "as a matter of law without the need for a trial" or any further discovery. *Id.* at 1334.

**C.      There Is No Evidence From Which A Fact Finder Could Conclude
That The Loan Agreement, Or The Right To Compel Arbitration,
Was Transferred To Marlette Or Anyone Else.**

Aside from the fact that the plain text of the Loan Agreement and its Arbitration Provision do not allow Marlette to elect arbitration, and in addition to Marlette's complete failure to produce

---

[8] The terms of the Loan Agreement, though, clearly do not support this claim. The Loan Agreement does not, as Marlette asserts, "state[] that [Henry] electronically signed [the Loan Agreement] on October 13, 2015." (Doc. 13, p. 8.) Rather, the Loan Agreement vaguely provides only, "Signature: (Signed Electronically), Signature Date: 10/13/2015[.]" (Doc. 13-1, p. 10.) The Loan Agreement does not include any information regarding the identity of the person who printed these characters or any explanation of how these characters came to exist. But even if the Loan Agreement stated, "Ronald Henry printed the words 'Signed Electronically' on this agreement on October 13, 2015," such a statement would be inadmissible hearsay. Fed. R. Evid. 802. So, even if the Loan Agreement said what Marlette claims it says, Marlette could not rely solely on such a statement.

any evidence that places the existence of the arbitration agreement at issue, Marlette's motion must be denied because there is no evidence to prove that the Loan Agreement (much less the right to elect arbitration pursuant to it) was transferred to Marlette (or to anyone else). Although Henry alleges that *the Account* was assigned to Marlette's other nonbank designees, he does not allege, nor is there any evidence to establish, that *the Loan Agreement* or any rights thereunder were ever assigned to Marlette (or another).[9] As Marlette recognizes, Henry "alleges that [Cross River Bank] sells Marlette, or its 'designee[s],' a 'Best Egg' loan . . . after it is issued." (Doc. 13, p. 9 (citing Doc. 11, ¶ 15).) There are no allegations or other evidence, however, to prove Cross River Bank assigned the Loan Agreement to Marlette, its designees, or anyone else.

The total absence of evidence showing that the Loan Agreement, specifically, was assigned to Marlette is material because, as Marlette admits, the Arbitration Provision only "authorizes any *subsequent assignee of the Loan Agreement* to require a Claim to be arbitrated." (Doc. 13, p. 9 (emphasis added); Doc. 13-1, ¶ 25.a.) That *the Account* was assigned to Marlette or its designees is irrelevant to whether *the Loan Agreement* or any rights thereunder, including the right to elect arbitration, were assigned to Marlette or its designees. Marlette's reliance on Henry's allegation that the Account was assigned is insufficient to show that the Loan Agreement was assigned. For this additional reason, Marlette is unable to compel arbitration.

---

[9] The terms of the Loan Agreement make clear that the Loan Agreement is separate and distinct from the Account. For example, the Loan Agreement provides: Cross River Bank "may . . . assign any or all of [its] right, title and interest in *th[e] [Loan] Agreement and [Henry's] loan*, including record of [his] loan, the debt incurred, any transfer of the obligation and [his] promise to repay, to anyone." (Doc. 13-1, ¶ 16 (emphasis added); *see also id.* at ¶ 25.h. ("Th[e] Arbitration Provision shall survive . . . any transfer of *[Henry's] loan or th[e] [Loan] Agreement*[.]") (emphasis added).) Because the terms of the Loan Agreement draw this distinction, proving the Account was assigned is insufficient to prove the Loan Agreement, or any rights thereunder, were assigned.

15

Several recent federal court decisions demonstrate why Marlette cannot require arbitration without producing evidence proving it was assigned the right to compel arbitration. *See, e.g., Lance v. Midland Credit Mgmt. Inc.*, 375 F. Supp. 3d 604 (E.D. Pa. 2019); *Rodriguez-Ocasio v. Midland Credit Mgmt., Inc.*, No. 17-cv-03630, 2021 U.S. Dist. LEXIS 161071 (D.N.J. Aug. 25, 2021); *Haston v. Resurgent Capital Servs., L.P.*, No. 20-cv-01008, 2020 U.S. Dist. LEXIS 239227 (W.D. Pa. Dec. 21, 2020). In these cases, the defendants claimed loans were assigned to them, and that these assignments included the right to compel arbitration under separate loan agreements. *Lance*, 375 F. Supp. 3d at 609; *Rodriguez-Ocasio*, 2021 U.S. Dist. LEXIS 161071, at *2-6; *Haston*, 2020 U.S. Dist. LEXIS 239227, at *11-12. The *Lance* and *Haston* defendants produced bills of sale providing for the transfer of "Accounts[,]" and the *Rodriguez-Ocasio* parties produced bills of sale providing for the transfer of "Receivables[.]" *Lance*, 375 F. Supp. 3d at 613; *Haston*, 2020 U.S. Dist. LEXIS 239227, at *12; *Rodriguez-Ocasio*, 2021 U.S. Dist. LEXIS 161071, at *5-7. But the *Lance* and *Haston* defendants failed to provide evidence defining the term "Accounts[,]" which made it impossible to "determine whether [the original creditors] intended to convey all of [their] rights under [the loan] [a]greement[s] with [the plaintiffs], including the right to arbitration[,]" when assigning the "Accounts" to the defendants. *Lance*, 375 F. Supp. 3d at 615; *Haston*, 2020 U.S. Dist. LEXIS 239227, at *14-16. And the *Rodriguez-Ocasio* parties produced documents defining the term "Receivables[,]" which made clear the defendant "did not purchase and was not assigned the right to compel arbitration." *Rodriguez-Ocasio*, 2021 U.S. Dist. LEXIS 161071, at *9-11. As a result, the defendants' motions to compel arbitration were denied.

The Court should follow these and other similar decisions because Marlette has supplied no evidence to prove that the Loan Agreement—much less the right to elect arbitration pursuant to its Arbitration Provision—was assigned to Marlette (or to any of Marlette's other designees).

16

The Court should deny Marlette's motion to compel arbitration with prejudice for Marlette's complete failure to produce any documentary or testimonial evidence that could allow a fact finder to conclude that Marlette (or any other entity) was assigned any right to compel arbitration. *See Bayside Resort, Inc.*, 707 F.3d at 271; *see also Bazemore*, 827 F.3d at 1334.

## V.   CONCLUSION

The Court should reject Marlette's attempt to force Henry to arbitrate his claims. First, because Marlette was not a party to and has never been an assignee of the Loan Agreement, the plain language of its Arbitration Provision precludes Marlette from electing arbitration. Second, there is no evidence to establish that a valid and enforceable arbitration agreement exists. Third, there is no evidence to prove that the Loan Agreement (which is distinct from the Account), or the right to elect arbitration pursuant to its Arbitration Provision, were ever transferred to Marlette (or to any other entity, for that matter). For all of these reasons, Marlette cannot compel individual arbitration of the claims Henry advances against Marlette here. Consequently, Henry respectfully requests that the Court deny Marlette's motion to compel arbitration.

Respectfully submitted,

Dated: September 14, 2021

/s/ Kevin Abramowicz
Kevin Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*

17

## CERTIFICATE OF SERVICE

I hereby certify that, on September 14, 2021, a true and correct copy of this Plaintiff's Response in Opposition to Defendant's Second Motion to Compel Individual Arbitration was served upon the following counsel of record by electronic means via the Court's CM/ECF system:

Justin Kontul
Alex Mahfood
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222
jkontul@reedsmith.com
amahfood@reedsmith.com

/s/ Kevin Abramowicz
Kevin Abramowicz

18