## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD HENRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARLETTE FUNDING, LLC d/b/a BEST EGG,<br><br>Defendant. | Civil Action No. 2:21-cv-00985-RJC |

## REPLY OF DEFENDANT MARLETTE FUNDING, LLC d/b/a BEST EGG
## IN SUPPORT OF SECOND MOTION TO COMPEL INDIVIDUAL ARBITRATION

Plaintiff[1] has asserted claims against Marlette related to "charging, collecting, contracting for, or receiving" allegedly unlawful interest under a loan issued to him, yet he seeks to avoid the Arbitration Provision in the Loan Agreement by claiming that the Loan Agreement was never assigned to Marlette. Putting aside the question of why Plaintiff is suing Marlette if it never had an interest in the Loan Agreement upon which Plaintiff bases his case, courts within the Third Circuit have universally rejected Plaintiff's attempt to use the Loan Agreement as both a sword and a shield—relying on the Loan Agreement to assert a claim against Marlette, while simultaneously disclaiming the same Loan Agreement's Arbitration Provision. In any event and notwithstanding Plaintiff's gamesmanship, Marlette can, in fact, enforce the Arbitration Provision as the "Administrator" and agent of the Loan Agreement's assignee.

Plaintiff's claim that Marlette has presented no evidence that he assented to the Loan Agreement similarly fails. Plaintiff alleges that he was issued the loan in October 2015 yet, after

---

[1] Capitalized terms not defined herein shall have the same meaning as set forth in Marlette's Memorandum in Support of Second Motion to Compel Individual Arbitration. Dkt. 13.

requesting the Loan Agreement from Marlette's counsel, strategically failed to attach it to the First Amended Complaint ("FAC") (or identify any other written agreement governing his loan). The Loan Agreement upon which Plaintiff relies and that Marlette has properly entered into the record is personalized to and electronically signed by Plaintiff. This fact alone enables the Court to find that a valid and enforceable agreement to arbitrate exists. Furthermore, Plaintiff entered into the Loan Agreement through a commonly-accepted online loan application process, which both New Jersey law and this Court recognize creates a valid and enforceable agreement to arbitrate.

Lastly, Plaintiff's claim that "there is no evidence from which a fact finder could conclude that the Loan Agreement, or the right to compel arbitration, was transferred to Marlette or anyone else" is contrived and refuted by Plaintiff's own opposition. Plaintiff's opposition attaches the Register, which identifies the assignees of the Loan Agreement, and the Loan Agreement states that assignees appearing in the Register are holders of the loan "for all purposes of" the Loan Agreement. Plaintiff mischaracterizes the language in the Loan Agreement and relies on inapplicable case law in an attempt to support a distinction between the loan and the Loan Agreement, a distinction that is without a difference because they are one and the same.

In sum, Plaintiff's contrived attempt to avoid arbitration fails as a matter of law and should be rejected.

## **ARGUMENT**

I.   **PLAINTIFF IS SUBJECT TO THE ARBITRATION PROVISION UNDER THE PLAIN LANGUAGE OF THE LOAN AGREEMENT AND BECAUSE MARLETTE IS THE ASSIGNEE'S ADMINISTRATOR AND AGENT.**

Plaintiff alleges in the FAC that Marlette charged and collected unlawful interest under his loan, which was assigned to Marlette's "designee"—Marlette Funding Consumer Loan Trust. Dkt. 11 ¶¶ 22-24, 41. In his opposition, however, Plaintiff claims that the very Loan Agreement

governing the loan was not assigned to Marlette.  Dkt 14 at 12-16.  Plaintiff's irreconcilable position is exemplified by the fact that after Marlette filed its initial Motion to Compel Individual Arbitration (Dkts. 7-8), Plaintiff: (1) requested from Marlette's counsel the ownership "Register" (after having requested the Loan Agreement) (Dkt. 14-1; August 10, 2021 E-Mail From Justin J. Kontul to Kevin Abramowicz, attached as **Exhibit 1**); (2) determined, based on the Register, that Marlette Funding Consumer Loan Trust was assigned the loan (*id.*); but (3) nevertheless filed the FAC continuing to name *Marlette* as the Defendant (Dkt. 11).  *See also* Dkt. 14 at 12 n.4.

Courts within the Third Circuit universally reject exactly what Plaintiff has done here—naming a purported non-signatory or non-assignee (who undeniably is related to a signatory or assignee) as a defendant in order to avoid an arbitration clause when the plaintiff's claims nevertheless arise out of the same contract containing the arbitration clause.  *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121-22 (3d Cir. 1993) (holding that pension plan trustees were required to arbitrate their statutory ERISA claims with the consultant and sister corporation of a broker firm even though those two defendants had never signed the arbitration agreement); *Farmland Dairies, Inc. v. Milk Drivers & Dairy Emps. Union Local 680*, 956 F. Supp. 1190, 1197 (D.N.J. 1997) (quoting *Arnold v. The Arnold Corp.*, 920 F.2d 1269, 1281-82 (6th Cir. 1990)) ("[I]f the rule were otherwise, a party could easily 'avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as [defendants] in his complaint or signatory parties in their individual capacities only [and] the effect of the rule requiring arbitration would, in effect, be nullified.'"); *Derbin v. Access Wealth Management, LLC*, Civil Action No. 11-812 (FLW), 2011 WL 4751992, at *14 (D.N.J. Oct. 7, 2011) (same); *FCMA, LLC v. Fujifilm Recording Media U.S.A., Inc.*, Civil Action No. 09-cv-4053 (JLL), 2010 WL 3076486, at *7 (D.N.J. Aug. 5, 2010) (same); *Bleumer v. Parkway Ins. Co.*, 649 A.2d 913, 928-31 (N.J. Super

1994) (listing decisions in which claims against non-signatories were required to be submitted to arbitration); *see also E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 229 (3d Cir. 1998).

Plaintiff's unequivocal claims that "Marlette was not a party to the Loan Agreement" and that "Marlette is not now, and has never been, a subsequent assignee of the Loan Agreement" (Dkt. 14 at 13-14) are wholly inconsistent with the entire theory underlying the FAC—that Marlette "routinely issues loans with interest and fees that aggregate in excess of 6% simple interest per year and charges, collects, contracts for, or receives such interest and fees from Pennsylvania consumers" (Dkt. 11 ¶ 41). Under Third Circuit law, Plaintiff cannot bring claims against Marlette arising under the Loan Agreement and then seek to prevent application of the Arbitration Provision of the same Loan Agreement by claiming that Marlette is not a signatory or assignee.

Putting aside Plaintiff's gamesmanship, Marlette possesses independent authority to enforce the arbitration provision in the Loan Agreement.[2] In the absence of an express contractual

---

[2] Marlette filed its Motion under the Rule 12(b)(6) standard and respectfully submits that the Court should apply that standard when deciding the Motion. This Court can resolve the Motion based on the allegations in the FAC and the plain language of the Loan Agreement. Indeed, this Court recently granted a motion to compel arbitration under the Rule 12(b)(6) standard even though the parties submitted evidence where it was apparent that the dispute was subject to arbitration based on the pleadings and the agreement. *See See Liptak v. Accelerated Inventory Management, LLC*, 2:20-cv-697, 2021 WL 650514, at *1-*3 (W.D. Pa. Feb. 19, 2021). In its opposition, Plaintiff submits evidence, argues for the application of a Rule 56 standard, and requests that the Court deny the Motion with prejudice. Of course, even if the Court were to apply the Rule 56 standard, the Court should not, as Plaintiff requests, deprive Marlette the opportunity to submit its own countervailing evidence. *See Zheng v. Live Auctioneers LLC*, No. 20-cv-9744 (JGK), 2021 WL 2043562, at *6 (S.D.N.Y. May 21, 2021) ("New materials may be submitted with a reply brief when responding to new argument made by the responding party 'to avoid giving an unfair advantage to the answering party.'" (quotation omitted)); *Filipkowski v. Bethpage Fed. Credit Union*, No. 20-cv-1754, 2021 WL 826016, at *1 (E.D.N.Y. Mar. 4, 2021) ("it [is] entirely appropriate to consider the reply declarations that directly respond to evidence proffered in Plaintiff's opposition").

agreement to arbitrate with a non-signatory or a non-assignee, traditional-state law contract principles can be used "by or against nonparties" to enforce an arbitration agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). These contract principles include, among other things, agency. *See id.*; *Century Indem. Co. v. Certain Underwriters*, 584 F.3d 513, 534 n. 18 (3d Cir. 2009); *E.I. DuPont*, 269 F.3d at 195. As a matter of New Jersey law, arbitration may be compelled by a non-signatory or non-assignee against a signatory or assignee to a contract on the basis of agency principles. *See Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 192 (2013). An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agents. *Sears Mortg. Corp. v. Rose*, 134 N.J. 326, 337 (1993); *N.J. Lawyers' Fund v. Stewart Title*, 203 N.J. 2018, 220 (2010).

Here, CRB assigned all rights, title, and interest in Plaintiff's "Best Egg" loan (including the Loan Agreement) to MF Consumer Loan Trust (the "Trust"), which is referred to as "Marlette Funding Consumer Loan Trust" in the Register. *See* Declaration of Alessandro Rhodes ("Rhodes Decl."), attached as **Exhibit 2** ¶ 8. Pursuant to the September 15, 2015 Amended and Restated Trust Agreement (the "Amended Trust Agreement"),[3] Marlette is the "Administrator" and agent of the Trust. *Id.* ¶¶ 9-10. Under Section 11.01(a)(ii) of the Amended Trust Agreement, Marlette, as Administrator, is authorized to enforce any agreement pursuant to which the Trust has any rights, such as the Loan Agreement. *Id.* Marlette also is entitled to administer, perform, execute, manage, or supervise *any* lawful activities of the Trust involving Trust Property, such as the Loan Agreement. *Id.* ¶ 10. Thus, under the plain language of the Amended Trust Agreement and principles of New Jersey contract and agency law, Plaintiff is subject to the Loan Agreement's

---

[3] The relevant excerpts of the Amended Trust Agreement are attached to the Rhodes Declaration as **Exhibit A**. Marlette is willing to provide the entire Amended Trust Agreement to the Court upon request.

Arbitration Provision because Marlette may enforce the Arbitration Provision as Administrator and agent of the Trust.[4]

## II. A VALID AND ENFORCEABLE ARBITRATION AGREEMENT EXISTS BECAUSE HENRY INDISPUTABLY ASSENTED TO THE LOAN AGREEMENT.

Plaintiff's assertion that there is no evidence that a valid arbitration agreement exists defies the FAC's core allegation that in October of 2015, CRB issued a personal loan to Henry. *See* Dkt. 11 ¶ 22. Indeed, unlike the unsigned, form agreement in *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330-32 (11th Cir. 2016), upon which Plaintiff relies (Dkt. 14 at 18-19), the Loan Agreement is personalized to Plaintiff. Dkt. 13-1. It identifies the borrower as Henry, lists his address, contains a unique loan identifier, states the loan terms, and indicates that he electronically signed it on October 13, 2015. *Id.* at 2, 10. Plaintiff does not contend, nor could he, that a different loan agreement governs his "Best Egg" loan. The FAC and the Loan Agreement provide more than a sufficient basis for this Court to conclude that a valid arbitration agreement exists.

In any event, the manner in which Plaintiff obtained his loan and entered into the Loan Agreement is commonplace and routinely endorsed by courts. As noted above, on October 13, 2015, Henry applied for and was issued a "Best Egg" loan through the "Best Egg" online lending platform. *See* Rhodes Decl. ¶¶ 3, 7. In order to complete the online application and obtain the "Best Egg" loan, Henry was required to click a checkbox during the online application stating "I have read the Truth in Lending Disclosure Statement (above), Loan Agreement, Credit Score Notice, and Verification and Credit Report Notice, and intend this to be my electronic signature on the Loan Agreement." *Id.* ¶ 4 (blue emphasis in original). The first (blue) reference to "Loan

---

[4] Marlette also was the servicer of the Trust at the time Henry's loan was assigned to and held by the Trust (Rhodes Decl. ¶ 11) and can enforce the Arbitration Provision in that capacity. *See Hirsch*, 215 N.J. at 188-89; *Sicily by Car S.p.A. v. Hertz Global Holdings, Inc.*, Civil Action No. 14-6113 (SRC), 2015 WL 2403129, at *2, *5 (D.N.J. May 20, 2015).

Agreement" in the preceding statement contained a hyperlink to the Loan Agreement governing Henry's "Best Egg" loan. *Id.* ¶ 4, 6. Through this hyperlink, Henry had the opportunity to review the Loan Agreement before he completed the online application for his "Best Egg" loan. *Id.* ¶ 4. If Henry declined to click this checkbox, his electronic signature would not have been placed on the Loan Agreement, he would not have been permitted to move to the next screen of the online application or been able to complete the online application process, and he would not have obtained his "Best Egg" loan. *Id.* ¶ 5.

Under New Jersey law, the precise manner in which Henry agreed to the terms of the Loan Agreement is valid and enforceable. In *Beture v. Samsung Elecs.*, Civil Action No. 17-5757 (SRC), 2018 WL 4621586, at *5 (D.N.J. July 18, 2018), the court held that agreements are valid and enforceable under New Jersey law if visible via hyperlink and accompanied with a requirement to click a checkbox or other button to assent to the terms in the hyperlinked terms. *See also Holdbrook Pediatric Dental, LLC v. Pro Computer Serv., LLC*, Civil No. 14-6115 (NLH/JS), 2015 WL 4476017, at *6 (D.N.J. July 21, 2015) (noting that "courts find that parties assent to terms contained in a hyperlink when the consumer is provided 'reasonable notice' that additional terms apply to the agreement. In such cases, the icon to be clicked to indicate assent was accompanied by a statement that clicking the button constitutes acceptance of the hyperlinked terms."); *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 57 (1st Cir. 2018) (noting that "requiring users to click a box stating that they agree to a set of terms, often provided by hyperlink, before continuing to the next screen" is "a common method of conspicuously informing users of the existence and location of terms and conditions").

Indeed, this Court recently found that a borrower agreement was valid and enforceable where the plaintiff clicked an "I Agree" button through which the plaintiff electronically agreed to

the terms of the borrower agreement available by hyperlink. *See Liptak*, 2021 WL 650514, at *1-*2. There, the Court noted that the plaintiff "would not have been able to obtain the loan from WebBank if he did not select the 'I Agree' button on the webpage[,]" and rejected the claim made by the plaintiff (represented by the same counsel as Henry) that he did not remember reading the agreement or assenting to arbitration. *Id.* at *2. Similarly, the fact that Plaintiff obtained the instant loan is proof positive that he assented to the Loan Agreement; otherwise, he simply could not have obtained the funds.

In sum, Plaintiff's claim that no valid and enforceable agreement to arbitrate exists ignores the FAC's allegations, the Loan Agreement's plain language, and the commonly-accepted method by which Plaintiff entered into the Loan Agreement.

## III.    PLAINTIFFS' CONTRIVED ATTEMPT TO DISTINGUISH THE LOAN FROM THE LOAN AGREEMENT IGNORES THE PLAIN LANGUAGE OF THE LOAN AGREEMENT AND RELIES ON INAPPLICABLE CASE LAW.

Plaintiff's attempt to distinguish the loan from the Loan Agreement is contrived, at best. Dkt. 14 at 19-22. Section 16 of the Loan Agreement states that the Register, which Marlette's counsel provided to Plaintiff's counsel per a request made pursuant to the Loan Agreement (Ex. 1), is "conclusive," and Plaintiff must treat the name recorded in the Register as the holder of his loan "*for all purposes of this Agreement.*" Dkt. 13-1 § 16 (emphasis added). Contrary to Plaintiff's claim, there is no difference between the loan and the Loan Agreement for purposes of this Motion. Henry must treat the entity in the Register as the holder of his loan "for all purposes" of the Loan Agreement, including with respect to the Arbitration Provision.

In light of this dispositive language, Plaintiff resorts to mischaracterizing the allegations in the FAC and the plain language of the Loan Agreement in an attempt to distinguish between the loan and the Loan Agreement. First, without identifying or attaching any governing written

agreement, *Plaintiff* defines his loan as the "Account." Dkt. No. 11 ¶ 22. Plaintiff's reliance on his self-serving definition of the "Account" is meritless and a non-starter. Dkt. 14 at 20. Second, Plaintiff seizes on the fact that Section 16 of the Loan Agreement states that CRB may assign its right, title and interest in "this Agreement and your loan[.]" Dkt. 14 at 20 n.9 (purporting to quote Dkt. 13-1 § 16). However, the phrases "Agreement" and "your loan" in Section 16 are joined by the conjunctive "and" rather than the disjunctive "or," unlike the agreements in the inapplicable case law on which Plaintiff relies. *See Lance v. Midland Credit Management Inc.*, 375 F. Supp. 3d 604, 607 (E.D. Pa. 2019) (construing assignment clause stating that "[w]e may sell, assign or transfer any or all of our rights or duties under this Agreement *or* your account" (emphasis in original)). Third, Plaintiff mischaracterizes Section 25.h. of the Loan Agreement, claiming that it states that the Arbitration Provision shall survive "any transfer of [Henry's] loan or th[e] [Loan] Agreement[.]" Dkt. 14 at 15 n. 9 (purporting to quote Dkt. 13-1 § 25.h.) (bracketed alterations in original). To the contrary, Section 25.h. of the Loan Agreement addresses the transfer of loans beyond Plaintiff's and *actually* states that the Arbitration Provision shall survive "any transfer of *any* loan or this Agreement to any other person or entity[.]" *See* Dkt. 13-1 § 25.h (emphasis added).

Finally, Plaintiff's claim that the loan and the Loan Agreement are distinct is undermined by the very case law on which Plaintiff relies. Dkt. 14 at 21-22. For instance, in *Rodriguez-Ocasio v. Midland Credit Mgmt., Inc.*, Civil Action 17-3630 (ES) (MAH), 2021 WL 3758077, at *4-*5 (D.N.J. Aug. 25, 2021), the court held that the recipient of a *receivable* was not permitted to enforce an arbitration agreement. The court noted, however, that other courts within the Third Circuit reached different conclusions when the language of the contract—exactly like the "for all purposes of this Agreement" language in Section 16 of the Loan Agreement—made clear that *all* rights under the contract were transferred. *Id.* at *5 (citing *Bowker v. Midland Funding, LLC*, No.

18-11320, 2020 WL 5743044, at *2 (D.N.J. Sept. 25, 2020) ("The clear language of the Purchase Agreement, however, states that Midland Funding purchased 'all right[s] (including the right to legally enforce, file suit, collect, settle or take any similar action with respect to such Account), title and interest in and to the Account.'"); *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *4 (D.N.J. July 25, 2019) ("Comenity sold to Midland Funding LLC . . . Plaintiff's account, and the Bill of Sale provides, '[Comenity]' hereby assigns effective as of the Closing Date of August 31, 2017 all rights, title and interest of [Comenity] in and to those Charged-off Accounts . . . for all purposes.'"); *Lance v. Midland Credit Mgmt. Inc.*, No. CV 18-4933, 2019 WL 2143362, at *5 (E.D. Pa. May 16, 2019) ("Section 2.1 of the Purchase Agreement shows it bought 'all right[s]' to Mr. Lance's 'Account'"); *Morrison v. Midland Funding, LLC*, No. 20-6468, 2021 WL 2529618, at *5 (W.D.N.Y. June 21, 2021); *Blaine v. Pressler & Pressler, LLP*, No. A-2289-11T2, 2013 WL 2359729, at *2 (N.J. Super. Ct. App. Div. May 31, 2013)).  In sum, Plaintiff's contrived attempt to distinguish between the loan and the Loan Agreement is a distinction without a difference and ought to be rejected.

## CONCLUSION

For the foregoing reasons and those in Marlette's Memorandum in Support of the Motion (Dkt. 13), Marlette respectfully requests that the Court grant the Motion, order the parties to proceed to arbitrate this matter on an individual basis, and stay this case pending arbitration.

Dated: September 21, 2021

**REED SMITH LLP**

*/s/ Justin J. Kontul*
Justin J. Kontul
Pa. I.D. No. 206026
Alex G. Mahfood
Pa. I.D. No. 324047
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
T: (412) 288-3131
F: (412) 288-3063
jkontul@reedsmith.com
amahfood@reedsmith.com

*Counsel for Defendant*
*Marlette Funding, LLC*
*d/b/a Best Egg*

## CERTIFICATE OF SERVICE

I certify that on September 21, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.


*/s/ Justin J. Kontul*