**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RONALD HENRY, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-00985 |
| Plaintiff, | |
| v. | |
| MARLETTE FUNDING, LLC d/b/a BEST EGG, | |
| Defendant. | |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S**
**<u>SECOND MOTION TO COMPEL INDIVIDUAL ARBITRATION</u>**

Kevin Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*

I.    **THE COURT SHOULD NOT CONSIDER MARLETTE'S NEW AGENCY ARGUMENT OR NEW EVIDENCE**

Moving parties cannot "shift gears and introduce new facts or different legal arguments in the reply brief than those that were presented in the moving papers." *Karlo v. Pittsburgh Glass Works*, 880 F. Supp. 2d 629, 641 (W.D. Pa. 2012). "Reply briefs are limited in scope to matters either raised by the opposition or unforeseen at the time of the original motion." *Id.* at 642.

The Court should reject Marlette's new claim that it can enforce the Loan Agreement under agency principles. Marlette did not raise any agency argument in its first motion to compel or in its initial brief supporting its second motion to compel. (Doc. 7, 8, 12, 13.) Rather, Marlette sought to compel arbitration on the basis that it was an assignee of the Loan Agreement, (*id.*), even though Marlette knew it was a non-signatory to and non-assignee of the Agreement. Marlette's failure to raise any agency argument, even though Marlette knew it was a non-signatory and non-assignee, is the definition of waiver. *See Joaquin v. DIRECTV Grp. Holdings, Inc.*, No. 15-cv-08194, 2016 U.S. Dist. LEXIS 116312, at *16-17 n.2 (D.N.J. Aug. 30, 2016) ("For the first time in their reply brief, the [nonsignatory] [d]efendants also argue that [the] [p]laintiff must arbitrate . . . based on agency principles. However, the Court will not consider new issues raised in a reply brief that should have been raised in the initial brief."). Consequently, the Court should disregard, and so reject, Marlette's new agency arguments.

The Court also should disregard the new evidence Marlette filed. Before filing its reply, Marlette submitted no declarations, no screen shots, no testimony, no trust agreements, and no other evidence, other than the Loan Agreement, which included the words "Signed Electronically." (Doc. 7, 8, 12, 13.) Given Marlette's failure to produce evidence to prove that Henry assented to the Loan Agreement or that Marlette was assigned the right to compel arbitration, Henry's counsel requested limited discovery on these issues. (Doc. 16-1, p. 2.) In response, Marlette stated it "d[id]

1

not believe that discovery was necessary" and "d[id] not agree to [Henry]'s request." (*Id.*) After that, Henry responded to Marlette's motion to compel and argued (as his counsel disclosed in the previous email) that Marlette failed to prove that Henry assented to the Loan Agreement or that Marlette was assigned the right to compel arbitration. (Doc. 14.) A week later, Marlette filed its reply, through which it introduced a declaration, screen shots, written testimony, and a trust agreement in an attempt to prove that it could compel arbitration.[1] (Doc. 16.) This contradicts Marlette's prior representation that discovery was unnecessary. Marlette should not be permitted to withhold or produce evidence if, but only if, doing so suits Marlette. Given Marlette's conduct, the Court should not consider the evidence Marlette withheld from Henry and introduced for the first time in its reply brief.

## II.   EVEN IF THE COURT CONSIDERS MARLETTE'S NEW EVIDENCE AND ARGUMENTS, MARLETTE STILL CANNOT COMPEL ARBITRATION

Although Henry cannot rebut Marlette's new evidence (because he had no opportunity to do so), even if the Court accepts this evidence, Marlette still cannot compel arbitration of Henry's claims. First, Marlette claims federal common law estops Henry from refusing arbitration. Second, Marlette claims it can elect arbitration as an agent of a trust that was assigned the Loan Agreement. Both arguments are misplaced and the Court should reject them.

---

[1] Marlette claims this evidence can be considered because it responds to "countervailing evidence." (Doc. 16, p. 4 n.2.) The problem with this claim is that Marlette's new evidence does not respond to "countervailing evidence." The only evidence submitted with Henry's response was the Loan Register, (Doc. 14-1), which Marlette possessed, and Henry's declaration, (Doc. 14-2), which was cited to prove he did not print any words on the Loan Agreement, (Doc. 14, p. 12), which Marlette knew. Marlette's new evidence does not countervail these facts. If Marlette wished to rely on the evidence submitted with its reply, it should have done so initially, as Marlette knew it was not an assignee and knew Henry did not print any words on the Loan Agreement. Henry even requested discovery before responding to Marlette's motion, but Marlette refused. (Doc. 16-1, p. 2.) The Court should not allow Marlette to submit evidence that responds to facts that have always been in Marlette's possession and that Marlette knew it should have relied on initially.

**A.      Federal Common Law Does Not Apply And Cannot Be Used To Grant Marlette The Right To Compel Arbitration**

First, Marlette cannot use federal common law to compel arbitration because it does not govern here. "Traditional principals of state law," not federal law, govern whether non-signatories can enforce arbitration contracts. *White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017) (citing *Arthur Andersen LLP cv. Carlisle*, 556 U.S. 624, 631 (2009)). The Supreme Court, in *Arthur Anderson*, overruled any contrary decisions. *See Atricure, Inc. v. Meng*, No. 19-4067, 2021 U.S. App. LEXIS 25952, at *12 (6th Cir. Aug. 27, 2021). The Court should reject Marlette's attempt to rely on federal common law to compel arbitration of Henry's claims.

**B.      To The Extent Henry Agreed To The Loan Agreement, He Did Not Agree To Allow Marlette To Compel Arbitration**

Second, Marlette cannot use its status as a purported agent of a trust to compel arbitration for Marlette's own benefit. The Loan Agreement specifically states that third parties, like Marlette, cannot benefit from the Loan Agreement, and that only parties (which include Henry and Cross River Bank, but not Marlette) and subsequent assignees (which include various trusts, but not Marlette) may elect arbitration. (Doc. 13-1 ¶¶ 24, 25.a.)[2] To the extent Henry agreed to these terms,

---

[2] The undisputed fact that Marlette is not a party to, or subsequent assignee of the Loan Agreement is not "wholly inconsistent with the entire theory of liability underlying" Henry's case. (Doc. 16, pp. 1-4.) The Unfair Trade Practices and Consumer Protection Law ("UTPCPL") allows persons that suffer ascertainable losses "as a result of the use or employment by any person of a method, act or practice declared unlawful by [the UTPCPL]" to bring an action for damages. 73 P.S. § 201-9.2(a). Here, Henry claims the "rent-a-bank" scheme Marlette created and facilitated caused him and thousands of others to suffer ascertainable losses. This allegation stands, regardless of whether Marlette held a loan. What matters is that Marlette advertised loans, directed Cross River Bank to issue and sell loans, and charged and collected allegedly unlawful interest and fees. (Doc. 11 ¶¶ 13-47.) As the architect and facilitator of this scheme, Marlette is liable for the ascertainable losses caused by the use and employment of the scheme. Marlette is the proper party to sue, regardless of whether it held any loans, because it is the party that used and employed the allegedly unlawful "rent-a-bank" scheme that caused Henry and more than 24,000 Pennsylvanians to suffer more than $30,000,000 of ascertainable losses. (Doc. 1 ¶¶ 13, 23.)

he clearly did not agree to allow Marlette to benefit from the Arbitration Provision, or to allow Marlette to compel arbitration for its own benefit. *See 1180 Raymond Urban Renewal, LLC v. 1180 Astro Urban Renewal Inv'rs, LLC*, No. A-5074-12T3, 2015 N.J. Super. Unpub. LEXIS 1494, at *9 (N.J. Super. Ct. App. Div. June 22, 2015) (refusing to allow third party to enforce agreement where "the Loan Agreement specifically provide[d] that there [we]re no third-party beneficiaries, and no one other than the parties to the agreement ha[d] standing to enforce any term of the Loan Agreement"). The Court should permit Henry to rely on the agreement he allegedly bargained for and made.

Marlette's attempt to rely on an Amended and Restated Trust Agreement to deny Henry the benefit of his alleged bargain is unavailing. While the *Trust Agreement* allows Marlette to take certain actions, (Doc. 16-2, Ex. A ¶ 11.01(c)), it cannot broaden the scope of the *Loan Agreement*, which denies third parties the right or ability to benefit from or enforce Loan Agreement. (Doc. 13-1 ¶¶ 24, 25.a.) In fact, the Trust Agreement furthers the terms of the Loan Agreement, by stating, "Nothing in this Agreement, whether express or implied, shall be construed to give to any Person, other than the Owner Trustee and the Beneficial Owners, any legal or equitable right, remedy or claim in the Trust Property," which includes "Consumer Loans," which include "Portfolio Documents," which include any "loan agreement or contract," like the Loan Agreement. (Doc. 16-2, Ex. A ¶¶ 1.01, 12.02.) The claim that the Trust Agreement gives Marlette "independent authority to enforce the arbitration provision in the Loan Agreement," (Doc. 16, p. 4), conflicts with the plain terms of the Trust Agreement, which states **nothing** in the Trust Agreement shall be construed to give Marlette ***any legal or equitable right, remedy or claim*** in the Loan Agreement. (Doc. 16-2, Ex. A ¶¶ 1.01, 12.02.) Marlette has no "independent right" to enforce arbitration, either under the terms of the Loan Agreement or the terms of the newly produced Trust Agreement.

4

Not only does Marlette lack any legal or equitable right to enforce the Loan Agreement, but allowing Marlette to do so make no sense. Marlette is the facilitator of the allegedly unlawful "rent-a-bank" scheme, as Marlette created the online lending platform, directed Cross River Bank to issue loans, and imposed allegedly unlawful interest and fees. (Doc. 11 ¶¶ 13-47.)[3] The other parties to the scheme, Cross River Bank and the trusts, issued, sold, and/or held loans at Marlette's direction. (*Id*.) These parties did not create, facilitate, use, or employ the "rent-a-bank" scheme that caused Henry and the class members to suffer losses. *See* 7 P.S. § 201-9.2(a). Allowing Marlette to enforce contracts that apply to trusts that did not direct Marlette to create or facilitate the "rent-a-bank" scheme that Henry challenges makes no sense, as Marlette (not the trusts) is the party that created and facilitated the "rent-a-bank" scheme at issue. *See Hirsch v. Amper Fin. Servs., LLC*, 71 A.3d 849, 860 (N.J. 2013) ("[T]he intertwinement of claims and parties . . . in and of itself [is not] sufficient to give a non-signatory corporation standing to compel arbitration.").

Ultimately, the Loan Agreement unambiguously denies Marlette the right to benefit from or enforce its terms. Henry is trying to enforce these terms, as drafted. Since "arbitration is a matter of contract," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019), Henry should be able to expect that a contract will be enforced according to its terms. *Hirsch*, 71 A.3d at 861 ("[A]lthough we are sensitive to the preference for resolving ambiguities in arbitration clauses

---

[3] While Marlette claims Henry is using the Loan Agreement "as both a sword and a shield," (Doc. 16, p. 1), this is untrue. Henry does not seek to enforce, nor do his claims "aris[e] under the Loan Agreement." (*Id.* at p. 4.) To the contrary, Henry seeks to enforce, and his claims arise under the UTPCPL. 73 P.S. § 201-9.2(a). Although the Loan Agreement may memorialize part of Marlette's allegedly unlawful conduct, it does not create any rights Henry seeks to enforce. Nor are Henry's claims dependent on the Loan Agreement; they are dependent on the allegedly unlawful "rent-a-bank" scheme Marlette used and employed against Henry and the class. The fact that part of this scheme is memorialized or intertwined with the Loan Agreement is not enough to allow Marlette to benefit from or enforce the Loan Agreement, which specifically denies Marlette the ability to benefit from or enforce its terms. *See generally Hirsch v. Amper Fin. Servs., LLC*, 71 A.3d 849 (N.J. 2013) (expressly rejecting intertwinement theory for non-signatories).

in favor of compelling arbitration that preference only applies when an agreement exists between the parties to arbitrate their disputes. In other words, absent express contractual language signaling an agreement to arbitrate, a court has little to interpret in favor of compelling arbitration."). Contrary to Marlette's rhetoric, enforcing a contract according to its terms is not "gamesmanship." (Doc. 16, pp. 1, 4.) While Marlette may wish the Loan Agreement was drafted in a way that did not deny Marlette the right or ability to benefit from or enforce its terms, these misgivings do not allow the Court to rewrite the Loan Agreement and grant Marlette powers that the parties plainly decided not to extend to Marlette. *See Badiali v. N.J. Mfrs. Ins. Grp.*, 107 A.3d 1281, 1289 (N.J. 2015) ("[A] court may not rewrite [a] contract to broaden the scope of [an] arbitration [provision] or otherwise make it more effective."); *Blaine v. Pressler & Pressler, LLP*, No. A-2289-11T2, 2013 N.J. Super Unpub. LEXIS 1312, at *7-8 (N.J. Super. Ct. App. Div. May 31, 2013) ("Where a contract specifies different rights to different specifically-mentioned entities, the contract must be interpreted to require that specificity."). The Court should enforce the terms of the Loan Agreement as written and deny Marlette's motion to compel.

### C.    No Agency Relationship Exists Between Marlette And The Trust

Third, even if the Court considers Marlette's agency arguments, and allows Marlette to rewrite the terms of the Loan Agreement to grant rights that the parties agreed not to extend, no agency relationship exists between Marlette and Marlette Funding Consumer Loans Trust (the "Trust"). Specifically, the Trust Agreement states: "Nothing in this Agreement . . . shall be deemed . . . to create any fiduciary relationship between the [Marlette] and the Trust[.]" (Doc. 16-2, Ex. A, ¶ 11.01(c).) The Third Restatement of Agency defines an agency relationship as "***the fiduciary relationship*** that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and

6

the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006) (emphasis added).[4] Thus, the terms of the Trust Agreement contradict Marlette's claimed agency status and demonstrate that Marlette is not an agent and cannot compel arbitration.[5]

### D.    Marlette Acted Outside The Scope Of Any Agency Relationship

Fourth, even assuming Marlette is an agent and can rewrite the Loan Agreement to give agents rights that the parties explicitly refused to allow agents to exercise or possess, Marlette still cannot compel arbitration because it acted outside the scope of any agency relationship Marlette claims allows it to compel arbitration. The Trust Agreement states: "Marlette . . . acting as an agent of the Trust, . . . shall have the authority and power and authorization, to act on behalf of the Trust . . . to administer, perform, execute, manage or supervise *any lawful activities* . . . involving the Trust Property[.]" (Doc. 16-2, Ex. A ¶ 11.01(a) (emphasis added).) By charging and collecting interest and fees that were usurious and illegal under Pennsylvania, Marlette engaged in unlawful activity and, therefore, was not acting within any alleged actual or apparent authority granted by the Trust Agreement. *N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Agency, Inc.*, 1 A.3d 632, 639 (N.J. 2010) ("Generally, an agent may only bind his principal for such acts that 'are

---

[4] New Jersey courts have adopted and consistently applied the Third Restatement of Agency. *Gayles v. Sky Zone Trampoline Park*, No. A-3519-19, 2021 N.J. Super. LEXIS 61, at *11 (N.J. Super. Ct. App. Div. May 12, 2021); *N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Agency, Inc.*, 1 A.3d 632, 639 (N.J. 2010).

[5] If the Court concludes the Trust Agreement is ambiguous—in that certain of its terms characterize Marlette as an agent of the Trust while others indicate a contrary intention to foreclose the creation of any fiduciary relationship—its ambiguity must be construed against its drafters (*i.e.*, Marlette and the Trust). *See Castle Realty Mgmt., LLC v. Burbage*, No. A-5399-15T4, 2017 N.J. Super. Unpub. LEXIS 1748, at *7-8 (N.J. Super. Ct. App. Div. July 13, 2017) (quoting *Kieffer v. Best Buy*, 14 A.3d 737, 743 (N.J. 2011)) ("If the meaning of a provision is ambiguous, the provision should be construed against the drafter because, 'as the drafter, it chose the words that may be susceptible to different meanings.'")

7

within his actual or apparent authority.'") (citation omitted).[6] Marlette cannot rely on a claim of agency to compel arbitration when Marlette engaged in activity that its alleged principal did not authorize. Nor can Marlette rely on a claim of agency to compel arbitration of claims that target a "rent-a-bank" scheme that was created and facilitated by Marlette and not by the trusts Marlette used to facilitate the scheme. For these reasons, and the others explained above, Marlette cannot compel arbitration of Henry's claims.

## III.    **CONCLUSION**

Marlette's reply introduces new arguments that Marlette could have made, but did not, and new evidence that Marlette could have offered, but withheld. The Court should disregard the reply on this basis alone. But even if the reply is considered, Marlette cannot deny Henry the benefit of the bargain to which he is alleged to have agreed. Henry should be permitted to enforce the plain terms of the Loan Agreement, and Marlette should not be permitted to rewrite the Loan Agreement based solely on its misgivings with the operative draft. Arbitration is a matter of contract and, to the extent Henry agreed to the Loan Agreement, he did not agree to allow Marlette to benefit from the Loan Agreement or compel arbitration. Marlette's motion to compel should be denied and this case should be allowed to proceed in court.

---

[6] "Actual authority occurs 'when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" *Id.* (quoting Restatement (Third) of Agency § 2.01 (Am. Law Inst. 2006)). "Apparent authority arises 'when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" *Id.* (quoting Restatement (Third) of Agency § 2.03 (Am. Law Inst. 2006)).

Respectfully submitted,

Dated: September 28, 2021

/s/ Kevin Abramowicz
Kevin Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 28, 2021, a true and correct copy of this Plaintiff's Sur-Reply in Opposition to Defendant's Second Motion to Compel Individual Arbitration was served upon the following counsel of record by electronic means via the Court's CM/ECF system:

Justin Kontul
Alex Mahfood
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA 15222
jkontul@reedsmith.com
amahfood@reedsmith.com

/s/ Kevin Abramowicz
Kevin Abramowicz

9