## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD HENRY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>MARLETTE FUNDING, LLC d/b/a BEST EGG,<br><br>      Defendant. | Civil Action No. 2:21-cv-00985-RJC |

## DEFENDANT MARLETTE FUNDING, LLC d/b/a BEST EGG'S MEMORANDUM
## IN SUPPORT OF THIRD MOTION TO COMPEL INDIVIDUAL ARBITRATION

**REED SMITH LLP**

Justin J. Kontul
Pa. I.D. No. 206026
Alex G. Mahfood
Pa. I.D. No. 324047
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
T: (412) 288-3131
F: (412) 288-3063
jkontul@reedsmith.com
amahfood@reedsmith.com

*Counsel for Defendant*
*Marlette Funding, LLC*
*d/b/a Best Egg*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL STANDARD................................................................................................................. 2

ARGUMENT ............................................................................................................................. 3

I.      THE ARBITRATION PROVISION DELEGATES GATEWAY QUESTIONS OF
        THE VALIDITY AND ENFORCEABILITY OF THE LOAN AGREEMENT
        ITSELF AND THE ARBITRATION PROVISION TO THE ARBITRATOR. ................. 5

II.     THE LOAN AGREEMENT IS A VALID ARBITRATION AGREEMENT
        UNDER NEW JERSEY LAW. ....................................................................................... 6

        A.      New Jersey Law Governs the Loan Agreement. ................................................... 6

        B.      Plaintiff Indisputably Assented to the Loan Agreement and the Valid
                Arbitration Provision it Contained. ...................................................................... 7

                i.      Plaintiff Assented to the Loan Agreement. ................................................ 7

                ii.     The Arbitration Provision is Valid.......................................................... 10

        C.      Marlette Can Enforce the Arbitration Provision. ................................................ 11

                i.      Plaintiff Cannot Circumvent the Arbitration Provision By Naming
                        Marlette as the Defendant. ...................................................................... 11

                ii.     Marlette Can Enforce the Loan Agreement Under Agency
                        Principles................................................................................................. 13

III.    PLAINTIFF'S SINGLE STATUTORY UTPCPL CLAIM FALLS SQUARELY
        WITHIN THE SCOPE OF THE ARBITRATION PROVISION. .................................. 16

IV.     BASED ON THE CLASS WAIVER IN THE ARBITRATION PROVISION,
        PLAINTIFF MUST ARBITRATE HIS CLAIM ON AN INDIVIDUAL BASIS. .......... 18

V.      THE COURT SHOULD DISMISS THIS CASE. ......................................................... 19

CONCLUSION........................................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Lens.Com, Inc.*,
    722 F.3d 1229 (10th Cir. 2013) ...............................................................................14

*Alexander v. Anthony Int'l, L.P.*,
    341 F.3d 256 (3d Cir. 2003)........................................................................................3

*Am. Exp. Co. v. Italian Colors Restaurant*,
    570 U.S. 228 (2013) ............................................................................................18, 19

*Argun v. Neiman Marcus Grp., Inc.*,
    No. 19-14548, 2020 WL 1272247 (D.N.J. Mar. 16, 2020) .................................8, 10

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009).................................................................................................14

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..................................................................................................19

*AT&T Techs. v. Communs. Workers of Am.*,
    475 U.S. 643 (1986)............................................................................................17, 18

*Atalese v. U.S. Legal Servs. Grp., L.P.*,
    99 A.3d 306 (N.J. 2014)..........................................................................................7, 11

*Beture v. Samsung Elecs.*,
    Civil Action No. 17-5757 (SRC), 2018 WL 4621586 (D.N.J. July 18, 2018) ....................7, 10

*Blaine v. Pressler & Pressler, LLP*,
    No. A-2289-11T2, 2013 WL 2359729 (N.J. Super. Ct. App. Div. May 31,
    2013) ......................................................................................................................13

*Bleumer v. Parkway Ins. Co.*,
    649 A.2d 913 (N.J. Super. 1994) .............................................................................11

*Bowker v. Midland Funding, LLC*,
    Civil Action No. 18-11320 (SDW)(SCM), 2020 WL 5743044 (D.N.J. Sept.
    25, 2020) ................................................................................................................13

*Burton v. Teleflex Inc.*,
    707 F.3d 417 (3d Cir. 2013)........................................................................................3

*Celotex Corp. v. Catrett*,
    488 U.S. 317 (1986)....................................................................................................3

*Century Indem. Co. v. Certain Underwriters at Lloyd's*,
    584 F.3d 513 (3d Cir. 2009)..................................................................................4, 6, 14

*China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*,
    334 F.3d 274 (3d Cir. 2003)..................................................................................16

*Clemons v. Midland Credit Mgmt., Inc.*,
    No. 18-16883, 2019 WL 3336421 (D.N.J. July 25, 2019) ......................................13

*Colon v. Conchetta, Inc.*,
    Civil Action No. 17-0959, 2017 U.S. Dist. LEXIS 91001 (E.D. Pa. June 14,
    2017) ......................................................................................................................5, 6

*Crawford v. Compass Grp. USA*,
    No. 14-2545, 2015 WL 1006389 (D.N.J. Mar. 6, 2015) ................................7, 10, 11

*Cullinane v. Uber Techs., Inc.*,
    893 F.3d 53 (1st Cir. 2018)....................................................................................8

*Curiale v. Hyundai Capital Am.*,
    Docket No. A-5565-18T3, 2020 N.J. Super. Unpub. LEXIS 765 (N.J. Super.
    Apr. 27, 2020) ........................................................................................................15

*DCK N. Am., LLC v. Burns & Roe Servs. Corp.*,
    218 F. Supp. 3d 465 (W.D. Pa. 2016).....................................................................19

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)...............................................................................................19

*Derbin v. Access Wealth Mgmt., LLC*,
    Civil Action No. 11-812 (FLW), 2011 WL 4751992 (D.N.J. Oct. 7, 2011) ............12

*Dodds v. Pulte Home Corp.*,
    909 A.2d 348 (Pa. Super. 2006)..............................................................................18

*E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin
    Intermediates, S.A.S.*,
    269 F.3d 187 (3d Cir. 2001)...................................................................................12, 14

*Epic Systems Corp. v. Lewis*,
    138 S.Ct. 1612 (2018)............................................................................................18, 19

*Farmland Dairies, Inc. v. Milk Drivers & Dairy Emps. Union Local 680*,
    956 F. Supp. 1190 (D.N.J. 1997) ...........................................................................11, 12

*FCMA, LLC v. Fujifilm Recording Media U.S.A., Inc.*,
    Civil Action No. 09-cv-4053 (JLL), 2010 WL 3076486 (D.N.J. Aug. 5, 2010) .....12

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)..............................................................................................................6

*Gay v. CreditInform*,
  511 F.3d 369 (3d Cir. 2007)................................................................................................16

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
  716 F.3d 764 (3d Cir. 2013)..............................................................................................2, 3

*H20 Res., LLC v. Oilfiled Tracking Servs., LLC*,
  No. 18-cv-1164, 2018 U.S. Dist. LEXIS 104991 (E.D. Pa. June 22, 2018)...........................20

*Harris v. Green Tree Fin. Corp.*,
  183 F.3d 173 (3d Cir. 1999)................................................................................................16

*Harris v. Midland Credit Mgmt.*,
  No. 15-4453 (SDW)(SCM), 2016 WL 475349 (D.N.J. Feb. 8, 2016) ...................................13

*Hirsch v. Amper Fin. Servs., LLC*,
  215 N.J. 174 (2013) .......................................................................................................14, 16

*Holdbrook Pediatric Dental, LLC v. Pro Computer Serv., LLC*,
  Civil No. 14-6115 (NLH/JS), 2015 WL 4476017 (D.N.J. July 21, 2015)..........................7, 10

*Integrserv LLC v. EQT Production Company*,
  Civil Action No. 20-1228, 2021 WL 1816941 (W.D. Pa. May 5, 2021).................................6

*James v. Glob. Tel\*Link Corp.*,
  852 F.3d 262 (3d Cir. 2017).............................................................................................7, 10

*Laguna v. Coverall N. Am., Inc.*,
  Civil No. 09cv2131-JM (BGS), 2011 U.S. Dist. LEXIS 81105 (S.D. Cal. July
  26, 2011) ............................................................................................................................4

*Lance v. Midland Credit Mgmt. Inc.*,
  No. CV 18-4933, 2019 WL 2143362 (E.D. Pa. May 16, 2019) .............................................13

*Liptak v. Accelerated Inventory Management, LLC*,
  Case No. 2:20-cv-967, 2021 WL 650514 (W.D. Pa. Feb. 19, 2021)...............................8, 9, 10

*Lloyd v. Hovensa, L.L.C.*,
  369 F.3d 263 (3d Cir. 2004)................................................................................................19

*Lomonico v. Foulke Mgmt. Corp.*,
  Civil No. 18-11511, 2020 U.S. Dist. LEXIS 28777 (D.N.J. Feb. 20, 2020) ...........................5

*MacDonald v. CashCall, Inc.*,
  883 F.3d 220 (3d Cir. 2018)..................................................................................................5

*McDaid v. Avant, LLC f/k/a Avant, Inc.*,
　Civil Action No. 2:21-cv-01135-RJC-LPL (W.D. Pa.) ...........................................................9

*Montalbano v. Calvary Portfolio Servs., LLC*,
　Civil Action No. 2:12-cv-01471, 2013 WL 593988 (W.D. Pa. Feb. 15, 2013).......................13

*Morales v. Sun. Constructors, Inc.*,
　514 F.3d 218 (3d Cir. 2008).....................................................................................................8

*MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*,
　974 F.3d 386 (3d Cir. 2020)......................................................................................................3

*N.J. Lawyers' Fund v. Stewart Title*,
　203 N.J. 2018 (2010) ..............................................................................................................14

*New Prime Inc. v. Oliveira*,
　139 S.Ct. 532, 202 L.Ed.2d 536 (2019) ...................................................................................5

*Nino v. Jewelry Exchange, Inc.*,
　609 F.3d 191 (3d Cir. 2010).....................................................................................................19

*Noye v. Johnson & Johnson*,
　No 1:15-cv-2382, 2020 U.S. Dist. LEXIS 120640 (M.D. Pa. Sept. 7, 2016)..........................20

*Peter W. Kero, Inc. v. Terminal Const. Corp.*,
　78 A.2d 814 (N.J. 1951)........................................................................................................8, 10

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*,
　7 F.3d 1110 (3d Cir. 1993)......................................................................................................11

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
　133 F.3d 225 (3d Cir. 1998)................................................................................................12, 17

*Quilloin v. Tenet HealthSystem Phila., Inc.*,
　673 F.3d 221 (3d Cir. 2012)......................................................................................................6

*Rent-A-Center West v. Jackson*,
　561 U.S. 63 (2010)..............................................................................................................4, 5

*Salerno Med. Assocs., LLP v. Riverside Med. Mgmt., LLC*,
　542 F. Supp. 3d 268 (D.N.J. 2021) .........................................................................................12

*Sears Mortg. Corp. v. Rose*,
　134 N.J. 326 (1993) ................................................................................................................14

*Sicily by Car S.p.A. v. Hertz Global Holdings, Inc.*,
　Civil Action No. 14-6113 (SRC), 2015 U.S. Dist. LEXIS 65751 (D.N.J. May
　20, 2015) ............................................................................................................................12, 16

*Singh v. Uber Techs. Inc.*,
      939 F.3d 210 (3d Cir. 2019)......................................................................................5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
      559 U.S. 662 (2010)............................................................................................18, 19

*Townsend v. Pinnacle Entm't, Inc.*,
      457 Fed. App'x 205 (3d Cir. 2012)....................................................................17, 18

*Trippe Mfg. Co. v. Niles Audio Corp.*,
      401 F.3d 529 (3d Cir. 2005)...................................................................................3, 6

*USW, AFL-CIO-CLC v. Rohm & Haas Co.*,
      522 F.3d 324 (3d Cir. 2008)...................................................................................17

*Weichert Co. v. Realtors v. Ryan*,
      608 A.2d 280 (N.J. 1992)...................................................................................7, 10

**Statutes**

9 U.S.C. § 4...................................................................................................................3, 4

**Rules**

Fed. R. Civ. P. 56.........................................................................................................2, 3

Fed. R. Civ. P. 56(a) ........................................................................................................3

Fed. R. Civ. P. 56(c)(1)(a) ...............................................................................................3

**Other Authorities**

Restatement (Third) of Agency § 1.01 cmt. e. (2006)....................................................14

**PRELIMINARY STATEMENT**

Plaintiff Ronald Henry ("Plaintiff" or "Henry") asserts claims against Defendant Marlette Funding, LLC d/b/a Best Egg ("Defendant" or "Marlette") regarding the interest rate charged on a loan that he applied for through Marlette's website. During the application process, the written loan agreement was made available to Henry, and Henry confirmed that he reviewed the agreement and accepted its terms. That agreement contains a broad, unequivocal, and conspicuous arbitration provision that bars the assertion of his claims in this Court and directs that the arbitrator decide any challenge to arbitration of the dispute. These facts are indisputable and, accordingly, the Court should grant Marlette's Third Motion to Compel Individual Arbitration ("Motion") and order Plaintiff to individually arbitrate his claims.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes a strong federal policy in favor of the resolution of disputes—including the instant dispute—through arbitration. Plaintiff brings this lawsuit against Marlette regarding a loan agreement that he entered into in October 2015 ("Loan Agreement"). That Loan Agreement contains an arbitration provision requiring (if invoked) the arbitration of any "Claim," which is defined to include "any past, present, or future claim, dispute, of controversy" involving the parties to the Loan Agreement or their assignees "relating to or arising out of [the Loan Agreement] and/or the activities or relationships that involve, lead to, or result from [the Loan Agreement], including . . . the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement." ("Arbitration Provision"). Plaintiff expressly agreed in the Arbitration Provision to delegate to the arbitrator any issues relating to the validity or enforceability of the Loan Agreement itself, as well as the Arbitration Provision. Accordingly, all threshold, gateway issues regarding the validity or enforceability of the Loan Agreement itself or the Arbitration Provision, as well as the arbitrability of claims more generally, should be decided by an arbitrator, not the Court.

In any event, even if the Court rather than the arbitrator were to decide these threshold questions, the Court should still compel arbitration. In the Arbitration Provision, while Plaintiff acknowledged his right to litigate disputes in court, he nevertheless knowingly and voluntarily waived that right. He also waived any right to arbitrate disputes on a class-wide basis. Under well-established governing law, as further discussed below, Plaintiff entered into a valid agreement to arbitrate, and Marlette is entitled to enforce it.

As a final matter, the claim in this case is clearly arbitrable. In the First Amended Complaint ("FAC"), Plaintiff asserts that Defendant violated the Pennsylvania Uniform Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201 *et seq.*, by allegedly charging an interest rate in excess of limits set by Pennsylvania law. Plaintiff's UTPCPL claim squarely falls within the plain terms of the Arbitration Provision. Plaintiff's UTPCPL claim is a statutory claim relating to and arising out of the Loan Agreement and the activities and relationships involving and resulting from the Loan Agreement and is thus subject to arbitration.

Accordingly, the Court should grant the Motion and require Plaintiff's UTPCPL claim to be arbitrated on an individual basis, pursuant to well-established Supreme Court precedent. The Court should also dismiss this case in its entirety under the FAA and applicable Third Circuit law.[1]

## LEGAL STANDARD

Because the parties have conducted discovery on the issue of arbitrability at the Court's direction, the Court now decides the Motion under the summary judgment standard set forth in Fed. R. Civ. P. 56. Dkt. 26; *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013). Under Fed. R. Civ. P. 56 a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[1] Marlette incorporates by reference the accompanying Motion, Concise Statement of Material Facts in Support of the Motion ("CSMF"), and Appendix in Support of the Motion ("Appendix").

as a matter of law." Fed. R. Civ. P. 56(a). "[T]he moving party bears the initial burden of showing that the non-moving party has failed to establish one or more essential elements of its case, and, once that initial burden is met, the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Guidotti*, 766 F.3d at 772 (citing *Celotex Corp. v. Catrett*, 488 U.S. 317, 324 (1986)). The party opposing summary judgment must show that there is a genuine dispute of material fact and must support that assertion by citing to particular parts of the record. *Id.* (citing Fed. R. Civ. P. 56(c)(1)(a)). While the Court must view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor, that party must, in order to successfully oppose a motion for summary judgment under Fed. R. Civ. P. 56, present more than a mere scintilla of evidence—there must be evidence on which the jury could reasonably find for the non-moving party. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If a genuine issue of material fact remains after summary judgment on whether a validly formed and enforceable arbitration agreement exists, "the court must proceed summarily to trial on 'the making of the arbitration agreement.'" *MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020); 9 U.S.C. § 4.

## **ARGUMENT**

The FAA establishes a strong federal policy in favor of the resolution of disputes through arbitration. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). Before compelling a party to arbitration, a court must determine "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). "When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability." *Id.* "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the

arbitration agreement in accordance with its terms." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *see also* 9 U.S.C. § 4.

"In certain circumstances, however, the court must first consider whether the parties' agreement reserved for the arbitrator questions regarding the validity and/or enforceability of the arbitration agreement itself.  This initial consideration is referred to as a 'gateway' question.  The Supreme Court recognizes that parties may agree to arbitrate 'gateway' questions of 'arbitrability.'" *Laguna v. Coverall N. Am., Inc.*, Civil No. 09cv2131-JM (BGS), 2011 U.S. Dist. LEXIS 81105, at *11 (S.D. Cal. July 26, 2011) (citing *Rent-A-Center West v. Jackson*, 561 U.S. 63, 70 (2010)) (internal citations omitted).

In this case, the Loan Agreement's Arbitration Provision reserves for the arbitrator gateway questions regarding the "validity or enforceability of this Arbitration Provision, any part thereof, or the entire [Loan] Agreement."  Clearly, the parties agreed that the arbitrator, not the Court, should decide all threshold arbitrability issues.  In any event, even if the Court were to address these issues, both elements needed for this Court to compel Plaintiff's claim to arbitration are satisfied.  First, the Loan Agreement's Arbitration Provision is a valid agreement to arbitrate under governing New Jersey state-law contract principles and may be enforced by Marlette.  Second, Plaintiff's UTPCPL claim falls squarely within the scope of the Arbitration Provision because it is a statutory claim "relating to or arising out of" the Loan Agreement and/or "the activities or relationships that involve, lead to, or result from" the Loan Agreement.  *See* Loan Agreement § 25.a.  Accordingly, pursuant to the FAA and the Loan Agreement, the Court should compel Plaintiff's claim to arbitration and dismiss this case.

- 4 -

I.    **THE ARBITRATION PROVISION DELEGATES GATEWAY QUESTIONS OF THE VALIDITY AND ENFORCEABILITY OF THE LOAN AGREEMENT ITSELF AND THE ARBITRATION PROVISION TO THE ARBITRATOR.**

Because the Loan Agreement contains a clause delegating to the arbitrator claims relating to the validity or enforceability of the Loan Agreement itself, as well as the Arbitration Provision, the arbitrator, not the Court, should decide these threshold issues.  Although gateway questions of arbitrability—such as the validity and enforceability of an arbitration clause—are typically resolved in court, the parties may contract around that typical route and agree to have these questions decided by an arbitrator by including a "delegation clause."  *See Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019).  These threshold questions also include disputes about the validity of the broader contract itself (here, the Loan Agreement).  *See Lomonico v. Foulke Mgmt. Corp.*, Civil No. 18-11511 (RBK/AMD), 2020 U.S. Dist. LEXIS 28777, at *17 (D.N.J. Feb. 20, 2020) ("Because the contract here contains a delegation clause, and because [plaintiff] challenges the entire contract as opposed to the arbitration provision or delegation clause, his argument that the contract is invalid [under New Jersey law] and therefore cannot be arbitrated fails.").  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  *Rent-A-Center*, 561 U.S. at 68.

Where such a delegation clause is included, courts should not decide threshold questions of arbitrability unless a party challenges the delegation clause specifically and the court concludes that the delegation clause is not enforceable.  *See Singh*, 939 F.3d at 215 (quoting *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018)); *Lomonico*, 2020 U.S. Dist. LEXIS 28777, at *17 (quoting *New Prime Inc. v. Oliveira*, 139 S.Ct. 532, 538, 202 L.Ed.2d 536 (2019)).  In such circumstances, the Court "must first look to whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Colon v. Conchetta, Inc.*, Civil Action No. 17-0959,

2017 U.S. Dist. LEXIS 91001, at *8 (E.D. Pa. June 14, 2017) (citing *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 229 (3d Cir. 2012)).

Here, the Arbitration Provision states that a party may require that the sole and exclusive remedy for resolution of a "Claim" be final and binding arbitration, where "Claim" is defined to include "any past, present, or future claim, dispute, or controversy" relating to "***the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement.***"  *See* Loan Agreement § 25.a. (emphasis added).  Thus, "there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  Indeed, the language could not be clearer that the parties have agreed that the arbitrator will decide all threshold issues."  *See Colon*, 2017 U.S. Dist. LEXIS 91001, at *9.  Pursuant to this language, "any questions of arbitrability must go to the arbitrator."  *Id.* at *11.  Because all threshold issues—including determinations relating to the validity of the Loan Agreement—are to be determined by the arbitrator, the Court should dismiss the FAC.

## II.    THE LOAN AGREEMENT IS A VALID ARBITRATION AGREEMENT UNDER NEW JERSEY LAW.

### A.    New Jersey Law Governs the Loan Agreement.

The Loan Agreement's Arbitration Provision is valid.  In determining whether Plaintiff's claim must be compelled to arbitration, the Court must first consider whether a valid agreement to arbitrate exists.  *See Trippe*, 401 F.3d at 532.  To make this determination, a federal court applies "ordinary state-law principles that govern the formation of contracts."  *See Century Indem.*, 584 F.3d at 524 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  In this case, to the extent not governed by federal law, New Jersey law governs the Loan Agreement.  *See* Loan Agreement § 24; *Integrserv LLC v. EQT Production Company*, Civil Action No. 20-1228, 2021 WL 1816941, at *3 (W.D. Pa. May 5, 2021) (applying law in agreement's choice of law provision to determine whether the parties agreed to arbitrate).

Under New Jersey law, an enforceable contract—including an agreement to arbitrate disputes—requires offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms. *See Weichert Co. v. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992); *see also Crawford v. Compass Grp. USA*, No. 14-2545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015) ("Under New Jersey law, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract."). Indeed, "[u]nder New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *James v. Glob. Tel*Link Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014)). For arbitration agreements to be enforceable under New Jersey law, they must contain "clear and unambiguous language that the plaintiff is waiving her right to sue or go to court to secure relief." *Atalese*, 99 A.3d at 315-16.

**B.     Plaintiff Indisputably Assented to the Loan Agreement and the Valid Arbitration Provision it Contained.**

**i.     Plaintiff Assented to the Loan Agreement.**

Under New Jersey law, the precise manner in which Henry agreed to the terms of the Loan Agreement—assenting to hyperlinked terms by clicking a checkbox—is valid and enforceable. In *Beture v. Samsung Elecs.*, Civil Action No. 17-5757 (SRC), 2018 WL 4621586, at *5 (D.N.J. July 18, 2018), the court held that agreements are valid and enforceable under New Jersey law if visible via hyperlink and accompanied with a requirement to click a checkbox or other button to assent to the terms in the hyperlinked terms. *See also Holdbrook Pediatric Dental, LLC v. Pro Computer Serv., LLC*, Civil No. 14-6115 (NLH/JS), 2015 WL 4476017, at *6 (D.N.J. July 21, 2015) (noting that "courts find that parties assent to terms contained in a hyperlink when the consumer is provided 'reasonable notice' that additional terms apply to the agreement. In such cases, the icon

to be clicked to indicate assent was accompanied by a statement that clicking the button constitutes acceptance of the hyperlinked terms."); *Argun v. Neiman Marcus Grp., Inc.*, No. 19-14548, 2020 WL 1272247, at *9 (D.N.J. Mar. 16, 2020) ("[A]n actual, handwritten signature is not necessary" as "a party may manifest assent to an [arbitration] agreement by clicking a link on a website.") (collecting cases); *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 57 (1st Cir. 2018) (noting that "requiring users to click a box stating that they agree to a set of terms, often provided by hyperlink, before continuing to the next screen" is "a common method of conspicuously informing users of the existence and location of terms and conditions"); *Peter W. Kero, Inc. v. Terminal Const. Corp.*, 78 A.2d 814, 817 (N.J. 1951) ("It is the general rule that where a party affixes [his] signature to a written instrument, . . . a conclusive presumption arises that [he] read, understood and assented to its terms and [he] will not be heard to complain that [he] did not comprehend the effect of [his] act in signing."); *Morales v. Sun. Constructors, Inc.*, 514 F.3d 218, 221 (3d Cir. 2008) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained" (quotation omitted)).

Indeed, this Court recently found that a loan agreement was valid and enforceable where the plaintiff borrower clicked an "I Agree" clickwrap button through which the plaintiff electronically agreed to the terms of the loan agreement available by hyperlink. *See Liptak v. Accelerated Inventory Management, LLC*, Case No. 2:20-cv-967, 2021 WL 650514, at *1-*2 (W.D. Pa. Feb. 19, 2021) ("Thus, because clickwrap agreements are generally enforced by the courts and because of the strong federal policy favoring arbitration, the arbitration provision in the clickwrap agreement shall be enforced."). In *Liptak*, this Court noted that the plaintiff "would not have been able to obtain the loan from WebBank if he did not select the 'I Agree' button on the

webpage[,]" and rejected the claim made by the plaintiff (represented by the same counsel as Henry) that he did not remember reading the agreement or assenting to arbitration. *Id.* at *2.[2]

In this case, on October 13, 2015, Henry applied for a "Best Egg" loan and entered into a loan agreement with Cross River Bank ("CRB") through the "Best Egg" online lending platform ("Loan Agreement"). *See* CSMF ¶ 13. In order to complete the online application process and obtain the "Best Egg" loan, Henry was required to click a checkbox during the online application stating "I have read the Truth in Lending Disclosure Statement (above), Loan Agreement, Credit Score Notice, and Verification and Credit Report Notice, and intend this to be my electronic signature on the Loan Agreement." *Id.* ¶ 16. The first (blue) reference to "Loan Agreement" in the preceding statement contained a hyperlink to the Loan Agreement governing Henry's "Best Egg" loan. *Id.* ¶ 18. By clicking on that hyperlink, Henry had the opportunity to review the Loan Agreement before he completed the online application for his "Best Egg" loan. *Id.* ¶ 19. If Henry declined, or otherwise failed, to click this checkbox, as well as the E-Sign Act Consent checkbox, his electronic signature would not have been placed on the Loan Agreement, he would not have been permitted to move to the next screen of the online application or been able to complete the online application process, and he would not have obtained his "Best Egg" loan. *Id.* ¶ 20.

According to Marlette's electronic records, Henry accessed the webpage depicting the Truth in Lending Disclosure Statement at 8:58 PM UTC on October 13, 2015. *Id.* ¶ 23. Henry scrolled through this webpage and clicked the checkboxes referenced above and then the "Accept and Submit" button at 8:59 PM UTC to advance to the next page in the application process. *Id.*

---

[2] Remarkably, this case appears to be at least the third recent case in this Court where a plaintiff represented by the same counsel as Henry does not remember entering into a written loan agreement governing the terms of the at issue loan when opposing a motion to compel arbitration. *See* Dkt. 14-2; *Liptak*, 2021 WL 650514, at *1-*2; *McDaid v. Avant, LLC f/k/a Avant, Inc.*, Civil Action No. 2:21-cv-01135-RJC-LPL, Dkt. 49 at 13-14 (W.D. Pa.).

¶ 24.  Henry completed the entire online application process for his "Best Egg" loan through the "Best Egg" online lending platform—specifically the remaining "bank details," "docs needed," and "application pending" webpages—on October 13, 2015 by 9:01 PM UTC.  *Id.* ¶ 25.  The resulting Loan Agreement is personalized to Henry—it identifies Henry as the borrower, lists his address, contains a unique loan identifier, states the loan terms (alleged by Henry in the Complaint), and indicates that he electronically signed the Loan Agreement on October 13, 2015. *Id.* ¶ 27; Loan Agreement at 1, 9.  Plaintiff does not contend, nor could he, that a different written loan agreement governs his "Best Egg" loan—indeed, Plaintiff inexplicably claims he does not know whether his "Best Egg" loan is even governed by a writing.  *See* CSMF ¶ 26.  Under New Jersey law, the manner and process by which Plaintiff agreed to, and affixed his electronic signature to, the Loan Agreement manifest Plaintiff's assent to the terms of the Loan Agreement, including the Arbitration Provision.  *See Beture*, 2018 WL 4621586, at *5; *Holdbrook*, 2015 WL 4476017, at *6; *Argun*, 2020 WL 1272247, at *9; *Terminal Const.*, 78 A.2d at 817.  Like in *Liptak*, the fact that Plaintiff obtained the loan is proof positive that he assented to the Loan Agreement; otherwise, he simply would not have obtained the funds.  *See* 2021 WL 650514, at *1-*2.

    **ii.  The Arbitration Provision is Valid.**

Because Henry indisputably assented to the Loan Agreement, the Arbitration Provision in the Loan Agreement is a valid agreement to arbitrate under New Jersey law.  *See James*, 852 F.3d at 265 (noting that agreements to arbitrate, like any other contract, must be the product of mutual assent).  Indeed, the terms of the Arbitration Provision to which Henry assented are absolutely clear that he agreed to arbitration of claims like that in the FAC.  *See Weichert*, 2015 WL 1006389, at *3 (creation of a contract requires agreement to essential terms).  Specifically, in the Arbitration Provision, the parties unequivocally and conspicuously "acknowledge[d] that they have a right to

litigate claims through a court before a judge or jury but will not have that right if any party elects arbitration pursuant to this Arbitration Provision." *See* Loan Agreement § 25.h. (cleaned up). The parties "knowingly and voluntarily waive[d] their rights to litigate such claims in a court before a judge or jury upon election of arbitration by any party." *Id.* (cleaned up). The Arbitration Provision thus contains "clear and unambiguous language that the [P]laintiff . . . waiv[ed] [his] right to sue or go to court to secure relief." *See Atalese*, 99 A.3d at 315-16.

### C.      Marlette Can Enforce the Arbitration Provision.

#### i.      Plaintiff Cannot Circumvent the Arbitration Provision By Naming Marlette as the Defendant.

Plaintiff's attempt to avoid the Arbitration Provision by naming Marlette, who Plaintiff claims is not a party to the Loan Agreement, as a defendant is misguided, and such attempts have been universally rejected by courts. Plaintiff cannot, under New Jersey and Third Circuit law, name Marlette—a purported non-signatory or non-assignee (who undeniably is related to a signatory or assignee)—as the Defendant in this case in order to avoid the Arbitration Provision when his claim arises out of the Loan Agreement containing the Arbitration Provision. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121-22 (3d Cir. 1993) (holding that pension plan trustees were required to arbitrate their ERISA claims with the consultant and sister corporation of a broker firm even though those two defendants had never signed the arbitration agreement); *Bleumer v. Parkway Ins. Co.*, 649 A.2d 913, 928-31 (N.J. Super. 1994) (collecting cases where claims against non-signatories were required to be arbitrated).

Indeed, "if the rule were otherwise, a party could easily 'avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as [defendants] in his complaint or signatory parties in their individual capacities only [and] the effect of the rule requiring arbitration would, in effect, be nullified.'" *Farmland Dairies, Inc. v. Milk Drivers & Dairy Emps. Union*

- 11 -

*Local 680*, 956 F. Supp. 1190, 1197 (D.N.J. 1997) (quoting *Arnold v. The Arnold Corp.*, 920 F.2d 1269, 1281-82 (6th Cir. 1990)); *see also Derbin v. Access Wealth Mgmt., LLC*, Civil Action No. 11-812 (FLW), 2011 WL 4751992, at *14 (D.N.J. Oct. 7, 2011) (same); *FCMA, LLC v. Fujifilm Recording Media U.S.A., Inc.*, Civil Action No. 09-cv-4053 (JLL), 2010 WL 3076486, at *7 (D.N.J. Aug. 5, 2010) (same); *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 229 (3d Cir. 1998).  Similarly, New Jersey law recognizes a non-party to a contract's right to rely on equitable estoppel to compel arbitration upon a showing of detrimental reliance.  *See Sicily by Car S.p.A. v. Hertz Global Holdings, Inc.*, Civil Action No. 14-6113 (SRC), 2015 U.S. Dist. LEXIS 65751, at *11-*12 (D.N.J. May 20, 2015).

Here, Plaintiff's entire theory underlying the FAC is that *Marlette* charged and collected unlawful interest under his loan (*i.e.*, the Loan Agreement), which was assigned to Marlette's "designee"—Marlette Funding Consumer Loan Trust. Dkt. 11 ¶¶ 22-24, 41.  Plaintiff cannot sue Marlette, a non-signatory, in an attempt to "avoid the practical consequences of" and nullify the Arbitration Provision.  *See Farmland Dairies*, 956 F. Supp. at 1197.  Because Plaintiff "took deliberate action with regard to placing the [Loan] Agreement squarely at issue in the claim[] [he] has asserted against [Marlette] in this lawsuit[,]" Marlette is entitled to enforce the Arbitration Provision under the doctrine of equitable estoppel.  *Sicily*, 2015 U.S. Dist. LEXIS 65751, at *14 (holding that, under New Jersey law and facts similar to those here, the defendant "demonstrated detrimental reliance and established that, as a non-signatory, it is entitled to enforce the License Agreement's arbitration provision as a matter of equitable estoppel."); *Salerno Med. Assocs., LLP v. Riverside Med. Mgmt., LLC*, 542 F. Supp. 3d 268, (D.N.J. 2021) ("Nor can the Medical Groups successfully contend that this suit is entirely divorced from the in-network agreements. . . .

- 12 -

Because the Groups rely on the agreements, and those agreements have an arbitration clause, the Groups are equitably bound, for the sake of justice and consistency, to respect that clause."). Under New Jersey and Third Circuit law, Plaintiff cannot bring claims against Marlette arising under the Loan Agreement and then seek to prevent application of the Arbitration Provision of the same Loan Agreement by claiming that Marlette is not a signatory or assignee.

### ii.    Marlette Can Enforce the Loan Agreement Under Agency Principles.

In addition to having the ability to enforce the Loan Agreement despite Plaintiff's gamesmanship, Marlette can enforce the Loan Agreement as an agent of the Loan Agreement's assignees (MF Consumer Loan Trust and then MF Trust 2015-A). Agreements to arbitrate are valid as to assignees where the plain language of the agreement authorizes assignees to enforce the arbitration provision. *See Bowker v. Midland Funding, LLC*, Civil Action No. 18-11320 (SDW)(SCM), 2020 WL 5743044, at *2 (D.N.J. Sept. 25, 2020) ("The language of the Agreement is both broad and explicit and requires individual arbitration of claims against [the creditor]'s assigns or successors, as well as their affiliates. Therefore, the arbitration provision is valid as to disputes between Plaintiff and Defendants."); *Harris v. Midland Credit Mgmt.*, No. 15-4453 (SDW)(SCM), 2016 WL 475349, at *2 (D.N.J. Feb. 8, 2016) (same); *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *4 (D.N.J. July 25, 2019); *Lance v. Midland Credit Mgmt. Inc.*, No. CV 18-4933, 2019 WL 2143362, at *5 (E.D. Pa. May 16, 2019); *Blaine v. Pressler & Pressler, LLP*, No. A-2289-11T2, 2013 WL 2359729, at *2 (N.J. Super. Ct. App. Div. May 31, 2013); *Montalbano v. Calvary Portfolio Servs., LLC*, Civil Action No. 2:12-cv-01471, 2013 WL 593988, at *7 (W.D. Pa. Feb. 15, 2013) (holding that "the assignee for collection purposes of [plaintiff's] account by way of a valid assignment from its original owner . . . is entitled to enforce" the arbitration clause contained in an original credit card agreement).

- 13 -

Further, in the absence of an express contractual agreement to arbitrate with a non-signatory or a non-assignee, traditional-state law contract principles can be used "by . . . nonparties" to enforce an arbitration agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). These contract principles include, among other things, agency. *Id.*; *Century Indem. Co. v. Certain Underwriters*, 584 F.3d 513, 534 n. 18 (3d Cir. 2009); *E.I. DuPont*, 269 F.3d at 195. Under New Jersey law, arbitration may be compelled by a non-signatory or non-assignee against a signatory to a contract on the basis of contract and agency principles. *See Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 192 (2013). An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agents. *Sears Mortg. Corp. v. Rose*, 134 N.J. 326, 337 (1993); *N.J. Lawyers' Fund v. Stewart Title*, 203 N.J. 2018, 220 (2010). Contrary to what Plaintiff has previously asserted (Dkt. 19 at 7-8), "[t]o establish that a relationship is one of agency, it is not necessary to prove its fiduciary character as an element." *See* Restatement (Third) of Agency § 1.01 cmt. e. at 23 (2006); *see also 1-800 Contacts, Inc. v. Lens.Com, Inc.*, 722 F.3d 1229, 1250 (10th Cir. 2013) ("[O]ne need not show a fiduciary relationship to establish that an agency relationship exists; rather, fiduciary duties arise as a result of circumstances establishing the agency relationship.").

Here, Plaintiff alleges that CRB sells Marlette, or its "designee," a "Best Egg" loan two (2) days after it is issued. *See* Dkt. 11 ¶ 15. Indeed, the Loan Agreement states that CRB may assign the Loan Agreement to anyone without further notice or consent and that Plaintiff must treat the name recorded in the ownership Register ("Register") conclusively as the holder of his loan "*for all purposes of this Agreement.*" *See* Loan Agreement § 16 (emphasis added). On October 16, 2015, CRB assigned all rights, title, and interest in Henry's "Best Egg" loan (including the Loan Agreement) to Marlette Subsidiary, MF Consumer Loan Trust. *See* CSMF ¶ 46. On March 28,

- 14 -

2016, MF Consumer Loan Trust assigned all rights, title, and interest in Henry's "Best Egg" loan (including the Loan Agreement) to another Marlette Subsidiary, MF Trust 2015-A. *Id.* ¶ 47. On August 2, 2016, MF Trust 2015-A assigned all rights, title, and interest in Henry's "Best Egg" loan (including the Loan Agreement) back to Marlette Subsidiary, MF Consumer Loan Trust. *Id.* ¶ 48. Finally, on July 27, 2020, MF Consumer Loan Trust assigned all rights, title, and interest in Henry's "Best Egg" loan (including the Loan Agreement) to UHG I, LLC. *Id.* ¶ 49. By its own terms, the Arbitration Provision authorizes any subsequent assignee of the Loan Agreement to require a Claim to be arbitrated. *Id.* § 25.a. And it survives, among other events, transfer of the Loan Agreement to any other person or entity, including the chain of entities listed above. *Id.* § 25.h. Under the plain language of the Loan Agreement, therefore, the Arbitration Provision survived these assignments[3] of the Loan Agreement. *See Curiale v. Hyundai Capital Am.*, Docket No. A-5565-18T3, 2020 N.J. Super. Unpub. LEXIS 765, at *12-*14 (N.J. Super. Apr. 27, 2020).

And because Marlette is an agent of two of the assignees—MF Consumer Loan Trust and MF Trust 2015-A—Marlette can enforce the Arbitration Provision. For instance, pursuant to the September 15, 2015 Amended and Restated Trust Agreement of MF Consumer Loan Trust ("MF Consumer Loan Trust Amended Trust Agreement"), Marlette is the Administrator of the MF Consumer Loan Trust. *See* CSMF ¶ 50. Similarly, pursuant to the September 15, 2015 Amended and Restated Trust Agreement of MF Trust 2015-A ("MF Trust 2015-A Amended Trust Agreement"), Marlette is the Administrator of the MF Trust 2015-A. *Id.* ¶ 53. Under Section 11.01(a)(ii) of both the MF Consumer Loan Trust Amended Trust Agreement and the MF Trust 2015-A Amended Trust Agreement, Marlette, as Administrator, is authorized to enforce any

---

[3] All of these assignments are reflected as entries in the Register and are therefore conclusive. *See* CSMF ¶¶ 46-49; Register; Loan Agreement § 16.

agreement pursuant to which the MF Consumer Loan Trust and the MF Trust 2015-A, respectively, has any rights, such as the Loan Agreement. *Id.* ¶¶ 51, 54. Marlette also is entitled to administer, perform, execute, manage, or supervise *any* lawful activities of the MF Consumer Loan Trust and the MF Trust 2015-A, respectively, involving Trust Property, such as the Loan Agreement. *Id.* ¶¶ 51, 54. Thus, under the plain language of the MF Consumer Loan Trust Amended Trust Agreement and the MF Trust 2015-A Amended Trust Agreement, respectively, and principles of New Jersey contract and agency law, Plaintiff is subject to the Loan Agreement's Arbitration Provision because Marlette may enforce the Arbitration Provision as Administrator and agent of the MF Consumer Loan Trust and the MF Trust 2015-A.[4]

## III. PLAINTIFF'S SINGLE STATUTORY UTPCPL CLAIM FALLS SQUARELY WITHIN THE SCOPE OF THE ARBITRATION PROVISION.

Plaintiff's UTPCPL claim falls squarely within the Arbitration Provision. The determination of whether "a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law," "once a court has found that there is a valid agreement to arbitrate, regardless of whether the action is in a federal or a state court." *China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003) (internal citations and quotation marks omitted); *see also Gay v. CreditInform*, 511 F.3d 369, 388 (3d Cir. 2007); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-179 (3d Cir. 1999). To determine whether a particular dispute falls within the scope of a valid arbitration agreement, "there is a presumption of arbitrability[:] an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible

---

[4] Marlette was also the servicer of Henry's loan at the time it was assigned to the MF Consumer Loan Trust and the MF Trust 2015-A and continued to service the loan on behalf of these entities while they held the loan. *See* CSMF ¶¶ 52, 55. Marlette can thus enforce the Arbitration Provision in that capacity as well. *See Hirsch*, 215 N.J. at 188-89; *Sicily*, 2015 WL 2403129, at *2, *5.

to an interpretation that covers the asserted dispute." *See AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citations omitted); *see also USW, AFL-CIO-CLC v. Rohm & Haas Co.*, 522 F.3d 324, 331 (3d Cir. 2008); *In re Prudential Ins. Co. of Am. Litig.*, 133 F.3d 225, 231 (3d Cir. 1998) ("[D]oubts in interpreting the precise scope of the arbitration agreement are to be resolved in favor of arbitration").  Finally, "[w]hen phrases such as 'any claim arising out of' appear in an arbitration provision, they are given a broad construction, and typically suggest that a given dispute is within the scope of an arbitration provision." *Townsend v. Pinnacle Entm't, Inc.*, 457 Fed. App'x 205, 208-09 (3d Cir. 2012) (citation omitted).

The Arbitration Provision authorizes any person or entity that can enforce the Arbitration Provision, at its sole election, to "require the sole and exclusive forum and remedy for resolution of a Claim [to] be final and binding arbitration" (unless Plaintiff opted out, which he did not).  *See* Loan Agreement § 25.a.; CSMF ¶¶ 36-37.  The Arbitration Provision defines the phrase "Claim" to include "any past, present, or future claim, dispute, or controversy, involving you (or persons claiming through or connected with you), on the one hand, and us and/or any assignee (or persons claiming through or connected with us and/or any assignee), on the other hand, relating to or arising out of this Agreement and/or the activities or relationships that involve, lead to, or result from this Agreement . . . ."  *See* Loan Agreement § 25.a.  The Arbitration Provision further states that "Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution; *statute*; common law; or principles of equity; or otherwise."  *Id.* (emphasis added).  The Arbitration Provision lastly states that its scope "is to be given the broadest interpretation that is enforceable."  *Id.*

Plaintiff's UTPCPL claim—which "arise[s] from . . . statute"—is premised on him allegedly being charged an interest rate in excess of the limits set by Pennsylvania law.  *See id.*;

- 17 -

*see generally* Dkt. 11.    Plaintiff's UTPCPL claim is clearly: (1) a "claim, dispute, or controversy[;]" (2) "involving [Plaintiff], on the one hand, and [Marlette], on the other hand[;]" (3) "relating to or arising out of th[e] [Loan] Agreement" or, at the very least, "the activities or relationships that involve, lead to, or result from this [Loan] Agreement[.]"  *See* Loan Agreement § 25.a.; *see also Dodds v. Pulte Home Corp.*, 909 A.2d 348, 350-51 (Pa. Super. 2006) (holding that plaintiff's UTPCPL claim fell within the ambit of the parties' agreement requiring, like the Loan Agreement, arbitration of "[a]ny controversy, claim or dispute arising out of or relating to this Agreement or purchase of the Home").

Given the presumption of arbitrability under the FAA and the Arbitration Provision's clear and unequivocal language, there can be no dispute that Plaintiff's UTPCPL claim falls squarely within the broad scope of the Arbitration Provision and must be arbitrated.  *See AT&T Techs.*, 475 U.S. at 650; *Townsend*, 457 Fed. App'x at 208-09.

## IV.    BASED ON THE CLASS WAIVER IN THE ARBITRATION PROVISION, PLAINTIFF MUST ARBITRATE HIS CLAIM ON AN INDIVIDUAL BASIS.

The Court must compel Plaintiff's claim to individual arbitration—not class arbitration—because Plaintiff expressly agreed that no arbitration may proceed on a class-wide basis.  The Supreme Court has made clear that, absent explicit language permitting it, a court may not compel arbitration on a class-wide basis.  *See Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1623 (2018) (holding that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684-86 (2010) (holding that a court may not compel arbitration on a class-wide basis when an agreement is silent on the availability of such arbitration). The Supreme Court also has made clear that class arbitration waivers are enforceable—they do not eliminate claims, but rather, simply change the manner in which they proceed.  *See Am. Exp.*

*Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236 (2013) ("The class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates those parties' rights to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) (noting that class arbitration is inconsistent with the FAA, which preempted the judicial rule preventing enforcement of class action waivers in consumer contracts).

In this case, the Arbitration Provision unequivocally and conspicuously states that "NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS . . . EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT." *See* Loan Agreement § 25.f. The Arbitration Provision further provides that if the limitations on class arbitration are determined to be unenforceable, "then no arbitration shall be had." *Id.* § 25.h. Clearly, Plaintiff waived any right to class arbitration, and the Court therefore cannot compel arbitration of Plaintiff's claim on a class-wide basis. *See Lewis*, 138 S.Ct. at 1623; *Stolt-Nielsen*, 559 U.S. at 684-86; *American Exp.*, 570 U.S. at 236; *Concepcion*, 563 U.S. at 351. Rather, the Court must compel arbitration of Plaintiff's claim on an individual basis.

## V.    THE COURT SHOULD DISMISS THIS CASE.

Section 3 of the FAA requires that a court, when faced with a valid arbitration clause that encompasses the dispute at issue, stay the action pending arbitration. *See* 9 U.S.C. § 3; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 208 n.7 (3d Cir. 2010). Indeed, if a court determines that an issue in a case is subject to arbitration, it must stay the proceedings until arbitration is concluded upon request by one of the parties. *See Lloyd v. Hovensa, L.L.C.*, 369 F.3d 263, 269 (3d Cir. 2004); *DCK N. Am., LLC v.*

*Burns & Roe Servs. Corp.*, 218 F. Supp. 3d 465, 471 (W.D. Pa. 2016) (citing 9 U.S.C. § 3). However, Third Circuit case law clarifies this requirement and further provides that when there are no non-arbitrable claims remaining before the court, dismissal is appropriate. *See Noye v. Johnson & Johnson*, No 1:15-cv-2382, 2020 U.S. Dist. LEXIS 120640, at *26 (M.D. Pa. Sept. 7, 2016) (citing *H20 Res., LLC v. Oilfiled Tracking Servs., LLC*, No. 18-cv-1164, 2018 U.S. Dist. LEXIS 104991, at *38 (E.D. Pa. June 22, 2018)).  Because there are no non-arbitrable claims remaining before the Court, the Court can and should dismiss this case.

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion, order the parties to proceed to arbitrate this matter on an individual basis in the manner to which Plaintiff agreed in the Loan Agreement, and dismiss this case in its entirety.

Dated: May 27, 2022

**REED SMITH LLP**

*/s/ Justin J. Kontul*
Justin J. Kontul
Pa. I.D. No. 206026
Alex G. Mahfood
Pa. I.D. No. 324047
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
T: (412) 288-3131
F: (412) 288-3063
jkontul@reedsmith.com
amahfood@reedsmith.com

*Counsel for Defendant*
*Marlette Funding, LLC*
*d/b/a Best Egg*

## CERTIFICATE OF SERVICE

I certify that on May 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

*/s/ Justin J. Kontul*