# <u>EXHIBIT 1</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD HENRY, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARLETTE FUNDING, LLC d/b/a BEST EGG,<br><br>　　　　　Defendant. | Civil Action No. 2:21-cv-00985-RJC |

## <u>DECLARATION OF ALESSANDRO RHODES</u>

I, Alessandro Rhodes, being duly sworn, depose and state the following under oath:

1.　　I am Chief Operating Officer at Marlette Funding, LLC d/b/a Best Egg ("Marlette"). In this position, I lead the strategic direction of Marlette's customer contact centers and outsourced providers and manage certain technology platforms used by Operations.

2.　　I make this Declaration in support of Marlette's Third Motion to Compel Individual Arbitration in the matter captioned above. This Declaration is based upon my knowledge, review of filings in the matter captioned above, and information gathered from my review of pertinent business records within Marlette's custody and control.

3.　　On October 13, 2015, Henry applied for a "Best Egg" loan and entered into a loan agreement with Cross River Bank ("CRB") through the "Best Egg" online lending platform ("Loan Agreement"). I understand that the Loan Agreement is attached to Marlette's Appendix in Support of Third Motion to Compel Individual Arbitration ("Appendix") as Exhibit 2.

4.　　Marlette has maintained a document depicting the "Application Flow" for the "Best Egg" online lending platform that was in effect when Henry applied for his loan on October 13,

2015 ("Application Flow").  The Application Flow depicts the sequence of webpages, screens, and fields presented to borrowers completing the application for a "Best Egg" loan, such as Henry, in October 2015.  I understand that the Application Flow is attached to the Appendix as Exhibit 3.

5.      In order to complete the online application and obtain the "Best Egg" loan, Henry was required to click a checkbox during the online application process stating "I have read the Truth in Lending Disclosure Statement (above), Loan Agreement, Credit Score Notice, and Verification and Credit Report Notice, and intend this to be my electronic signature on the Loan Agreement."

6.      The screenshot from the Application Flow below shows the language presented to borrowers completing the online application for "Best Egg" loans at the time Henry applied for and was issued his "Best Egg" loan through the online lending platform:[1]

_____

[1] This screenshot from the Application Flow below is a sample, but the language would have been specific to Henry when he viewed the "Best Egg" online lending platform.

- 2 -



7.     The first (blue) reference to "Loan Agreement" in the above screenshot and the preceding statement contained a hyperlink to the Loan Agreement governing Henry's "Best Egg" loan.

8.     By clicking on this hyperlink, Henry had the opportunity to review the Loan Agreement before he completed the online application for his "Best Egg" loan.

9.     If Henry declined, or otherwise failed, to click this checkbox, as well as the E-Sign Act Consent checkbox, his electronic signature would not have been placed on the Loan Agreement, he would not have been permitted to move to the next screen of the online application

- 3 -

or been able to complete the online application process, and he would not have obtained his "Best Egg" loan.

10. Marlette creates and maintains, in the course of its regularly conducted business, electronic records that detail the actions an applicant took on the "Best Egg" online lending platform, including, but not limited to, memorializing the date an applicant completes the online application for a "Best Egg" loan and accepts the governing documents, including, but not limited to, the Loan Agreement.

11. Specifically, Marlette has maintained a log of "web events" detailing the actions Henry took on the "Best Egg" online lending platform ("Henry's Web Events Log"). I understand that Henry's Web Events Log is attached to the Appendix as Exhibit 4.

12. According to Henry's Web Events Log, Henry accessed the webpage depicting the Truth in Lending Disclosure Statement at 8:58 PM UTC on October 13, 2015.

13. According to Henry's Web Events Log, Henry scrolled through this webpage and clicked the checkboxes referenced above and then the "Accept and Submit" button at 8:59 PM UTC to advance to the next page in the Application Flow.

14. According to Henry's Web Events Log, Henry completed the entire online application process for his "Best Egg" loan through the "Best Egg" online lending platform—specifically the remaining "bank details," "docs needed," and "application pending" webpages—on October 13, 2015 by 9:01 PM UTC.

15. According to Marlette's records, Henry did not exercise his right to opt out of the Arbitration Provision.

16. Marlette maintains a "Register" for the recordation of the name and address of the holder of the Loan Agreement, including any assignee who becomes the holder of the Loan

- 4 -

Agreement pursuant to an assignment ("Register").  I understand that the Register is attached to the Appendix as Exhibit 6.

17.     Although pursuant to the Loan Agreement the Register is conclusive as to assignment or transfer of the Loan Agreement, Marlette also maintains business records reflecting the assignments of the Loan Agreement identified within the Register.

18.     By way of background with respect to the assignments of Henry's Loan Agreement described herein, each entity is a 100% wholly-owned subsidiary of Marlette Funding, LLC. Marlette is the sole member of MF Asset Holdings, LLC.  MF Asset Holdings, LLC, in turn, is the sole beneficial owner of MF Consumer Loan Trust, and MF Consumer Loan Trust is the sole beneficial owner of MF Trust 2015-A.  MF Asset Holdings, LLC, MF Consumer Loan Trust, and MF Trust 2015-A are each referred to herein as a "Marlette Subsidiary."

19.     Due in part to the high volume of loans assigned to and between Marlette Subsidiaries, Marlette's business practice is to record assignments that occur on a particular day and that involve a particular Marlette Subsidiary in Excel spreadsheets.

20.     On October 16, 2015, CRB, the entity with whom Henry entered into the Loan Agreement, assigned all rights, title, and interest in Henry's "Best Egg" loan (including the Loan Agreement) to Marlette Subsidiary, MF Consumer Loan Trust, which is referred to as "Marlette Funding Consumer Loan Trust" in the Register.  I understand that Marlette's business record reflecting the October 16, 2015 assignment from CRB to MF Consumer Loan Trust is attached to the Appendix as Exhibit 7.

21.     On March 28, 2016, MF Consumer Loan Trust assigned all rights, title, and interest in Henry's "Best Egg" loan (including the Loan Agreement) to another Marlette Subsidiary, MF Trust 2015-A.  I understand that Marlette's business record reflecting the March 28, 2016

assignment from MF Consumer Loan Trust to MF Trust 2015-A is attached to the Appendix as Exhibit 8.

22.    On August 2, 2016, MF Trust 2015-A assigned all rights, title, and interest in Henry's "Best Egg" loan (including the Loan Agreement) back to Marlette Subsidiary, MF Consumer Loan Trust.  I understand that Marlette's business record reflecting the August 2, 2016 assignment from MF Trust 2015-A to MF Consumer Loan Trust is attached to the Appendix as Exhibit 9.

23.    On July 27, 2020, MF Consumer Loan Trust assigned all rights, title, and interest in Henry's "Best Egg" loan (including the Loan Agreement) to UHG I, LLC.

24.    Pursuant to the September 15, 2015 Amended and Restated Trust Agreement of MF Consumer Loan Trust (the "MF Consumer Loan Trust Amended Trust Agreement"), Marlette is the Administrator of the MF Consumer Loan Trust.  I understand that excerpts of the MF Consumer Loan Trust Amended Trust Agreement are attached to the Appendix as Exhibit 10.

25.    Section 11.01(a) of the Amended Trust Agreement, which is entitled "Duties with Respect to the Trust" and contained within Article XI Administrator, states, in relevant part:

(a) Marlette Funding, LLC, in the capacity of Administrator as provided in this Section 11.01 hereby agrees to act as an agent of the Trust and is hereby appointed by the current Beneficial Owners pursuant to Section 3806(b)(7) of the Statutory Trust Act as an independent contractor acting as an agent of the Trust, having full power, authority and authorization to manage and administer the business and affairs of the Trust and to perform its obligations as Administrator hereunder; *provided*, *however*, that the Administrator may be removed, or replaced with a successor administrator, by the written instructions of the Requisite Owners to the Administrator and the Owner Trustee. The Administrator shall, and shall have the authority and power and authorization to, act on behalf of the Trust:

(i) to administer, perform, execute, manage or supervise any lawful activities of the Trust and involving the Trust Property, which are authorized pursuant to Section 2.03 and are reasonably within the capability of the Administrator, and which shall include, without limitation, entering into and executing Transaction Documents on behalf of the Trust and taking

- 6 -

all action as it shall be the right or duty of the Trust to take pursuant to this Agreement or any of the Transaction Documents;

(ii) to enforce any agreement entered into by the Trust or pursuant to which it is a beneficiary or has any rights, including any of the Transaction Documents to which the Trust is or will be a party[.]

26. Marlette also was the servicer of Henry's loan at the time it was assigned to MF Consumer Loan Trust, and continued to service the loan on behalf of MF Consumer Loan Trust while it held the loan.

27. Pursuant to the September 15, 2015 Amended and Restated Trust Agreement of MF Trust 2015-A (the "MF Trust 2015-A Amended Trust Agreement"), Marlette is the Administrator of the MF Trust 2015-A. I understand that excerpts of the MF Trust 2015-A Amended Trust Agreement are attached to the Appendix as Exhibit 11.

28. Section 11.01(a) of the MF Trust 2015-A Amended Trust Agreement, which is entitled "Duties with Respect to the Trust" and contained within Article XI Administrator, states, in relevant part:

(a) Marlette Funding, LLC, in the capacity of Administrator as provided in this Section 11.01 hereby agrees to act as an agent of the Trust and is hereby appointed by the current Beneficial Owners pursuant to Section 3806(b)(7) of the Statutory Trust Act as an independent contractor acting as an agent of the Trust, having full power, authority and authorization to manage and administer the business and affairs of the Trust and to perform its obligations as Administrator hereunder; *provided*, *however*, that the Administrator may be removed, or replaced with a successor administrator, by either (i) the Agent, but only in the case of the occurrence and continuance of a Servicer Event of Default, for Cause (each, as defined in the Credit Agreement) or if the Administrator fails to materially satisfy its duties as Administrator hereunder and such failure continues for a period of ten (10) Business Days after the earlier (x) written notice from the Agent has been provided to the Administrator specifying such failure with particularity and (y) actual knowledge of the Administrator, or (ii) at the written instructions of the Requisite Owners, with the prior written consent of the Agent (which consent shall not be unreasonably withheld), to the Administrator and the Owner Trustee. The Administrator shall, and shall have the authority and power and authorization to, act on behalf of the Trust:

(i) to administer, perform, execute, manage or supervise any lawful activities of the Trust and involving the Trust Property, which are authorized pursuant to Section 2.03 and are reasonably within the capability of the Administrator, and which shall include, without limitation, entering into and executing Transaction Documents on behalf of the Trust and taking all action as it shall be the right or duty of the Trust to take pursuant to this Agreement or any of the Transaction Documents; *provided, however*, except as directed by the Beneficial Owners, the Administrator is expressly prohibited from both withdrawing capital or Trust Property from the Trust except for the benefit of the Beneficial Owners;

(ii) to enforce any agreement entered into by the Trust or pursuant to which it is a beneficiary or has any rights, including any of the Transaction Documents to which the Trust is or will be a party[.]

29.    Marlette also was the servicer of Henry's loan at the time it was assigned to MF Trust 2015-A, and continued to service the loan on behalf of MF-Trust 2015-A while it held the loan.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 27, 2022

/s/ Alessandro Rhodes
Alessandro Rhodes

- 8 -