# <u>EXHIBIT 2</u>

# LOAN AGREEMENT 09/2015

Ronald Henry

142 Huron Circle

New Alexandria, PA 15670

44429360-561b-44d0-9e3c-a53001590192

**Cross River Bank**

Best Egg Loan Agreement and Promissory Note

The terms and conditions of this Loan Agreement and Promissory Note (this "Agreement") are a binding contract between Cross River Bank ("we," "us," or "our") and the borrower ("you" and "your"), whose name and address are: listed above. The terms of this Agreement affect your rights and you should read them carefully and print a copy for your records. Your agreement to these terms means you agree to borrow and repay the money if your loan is approved under the terms of this Agreement, and agree to have any dispute with us resolved by binding arbitration.

**1. Loan Terms.**

a. The principal Amount of Your Loan is: $8,000.00

b. The Origination Fee is: $399.20

c. The Amount Given to You Directly is: $7,600.80

d. The Annual Loan Interest Rate is:17.30%

e. Your Payment Schedule is: 35 consecutive monthly payments of $286.42 and one final payment of the unpaid principal balance, all unpaid interest, and all unpaid fees and charges. The first payment will be one calendar month after the loan is funded. See paragraph 7. Payments, below, for more details.

f. Your loan is unsecured.

**2. Credit Reports.** You hereby authorize us (and our service providers) to obtain consumer reports (also called credit reports) and related information about you from one or more consumer reporting agencies. We may also obtain additional consumer reports at any time in connection with the origination, servicing, administration, collection, or enforcement of the loan.

**3. Verification of Information.** We may verify any information you submit by requiring you to produce appropriate documentation or other proof, and also reserve the right to conduct such verification through any third parties. You hereby authorize us to request and obtain data from any third parties to verify any information you provide to us in connection with your application.

MARLETTE_000135

Verification of information may cause a delay in the disbursement of loan proceeds. We may terminate consideration of your application at any time in our sole discretion.

**4. Loan Funding and Closing.**

- Funding. You authorize us to disburse the loan proceeds by Automated Clearing House ("ACH") transfer to your designated account or on your behalf to your selected designee.
- Closing. BY ELECTRONICALLY SIGNING OR AGREEING TO THIS AGREEMENT IN ANOTHER WAY, YOU ARE COMMITTING TO OBTAIN A LOAN FROM US IN THE AMOUNT AND ON THE TERMS SET FORTH IN THIS AGREEMENT. YOU HAVE NO RIGHT TO RESCIND THE LOAN ONCE MADE BUT YOU MAY PREPAY THE LOAN AT ANY TIME WITHOUT PENALTY. WE HAVE NOT AGREED TO MAKE A LOAN TO YOU UNLESS AND UNTIL WE INFORM YOU THAT WE HAVE APPROVED YOUR LOAN APPLICATION.
- Closing by Telephone: IF YOU AGREE TO THE TERMS OF THE LOAN BY TELEPHONE, WE WILL DISBURSE THE LOAN PROCEEDS TO YOU. WE WILL SEND YOU A FINAL TRUTH IN LENDING DISCLOSURE STATEMENT THAT WILL CONFIRM THESE TERMS.

**5. Promise to Pay.** You promise to pay to us the Amount of Your Loan set forth in paragraph 1. Loan Terms, above, together with interest and fees as provided in this Agreement.

**6. Interest.** You agree to pay interest on the unpaid principal balance of the Amount of Your Loan from the date the loan proceeds are disbursed until the loan is paid in full, at the fixed Annual Loan Interest Rate set forth in paragraph 1. Loan Terms, above. Interest is calculated on a daily basis, on the unpaid principal balance, at the interest rate, and for the number of days that balance was unpaid. This is a simple interest obligation, and interest is not charged on unpaid interest, except interest is charged on the unpaid origination fee. The Total of Payments and amount of the Finance Charge set forth in the Truth in Lending Disclosure Statement assume that each payment is made on its due date. Late payments will result in more interest; early payments will result in less interest.

**7. Payments.** You agree to make monthly payments of principal and interest, in the amounts and on the dates set forth in the payment schedule in paragraph 1. Loan Terms, above. Your payment date is the same date each month, except that if your payment date is on the 29th, 30th, or 31st of a month, then your payment date will be the last day of any month that does not have a 29th, 30th, or 31st day (as applicable). The last payment may be a different amount because of rounding and because of when you made your prior payments and whether you paid them in full.

**8. Making Your Loan Payments.** If you authorize us and our successors and assigns (and any of our successors' and assignees' affiliates, agents or service providers), we will debit your designated account by ACH transfer for the amount of the payment due on its due date. You may elect to make payments by check, by contacting our customer service department at 1-844-825-2608. If you elect to make payments by check, you must send the checks either (i) by regular mail to Systems and Services Technologies Inc., P.O. Box 5493, Carol Stream, IL 60197-5493, or (ii) by overnight mail or UPS delivery to Systems and Services Technologies Inc., Attn. Lockbox Operations, Box 5493, 2400 Ogden Ave, Ste. 120, Lisle, IL 60532. If you do not elect to make payments by check, you authorize

us and our successors and assigns (and any of our successors' and assignees' affiliates, agents or service providers) to debit your designated account by ACH transfer for the amount of each remaining payment due on its due date, however, if your payment due date occurs on a non-business day, your account will be debited the next business day. You will maintain sufficient funds in your designated account to make these payments. This authorization does not affect your obligation to pay when due all amounts payable on your loan, whether or not there are sufficient funds in your accounts. The foregoing authorization is in addition to, and not in limitation of, any rights of setoff we may have. With regard to payments made by automatic withdrawal, you have the right to stop payment of automatic withdrawals or revoke your prior authorization for automatic withdrawals by notifying us or your financial institution at least three (3) banking days before the scheduled date of transfer. You must notify us of the exercise of your right to stop a payment or revoke your authorization for automatic withdrawals at least three (3) banking days before the scheduled date of transfer. You have the right to have any unauthorized debit credited to your bank account in accordance with the applicable provisions of the Electronic Funds Transfer Act as implemented by Federal Reserve System Regulation E. If you stop the automatic withdrawals, you are still obligated to make each payment that is due. You will receive a monthly statement advising of your payment amount. You may contact us for instructions on how to make payments by other payments options.

**9. Prepayments and Partial Payments.** You may make any payment early, in whole or in part, without penalty or premium at any time. Any partial prepayment is to be applied against the principal amount outstanding and does not postpone the due date of any subsequent monthly installments, unless we otherwise agree in writing. If you prepay the principal amount in part, you agree to continue to make regularly scheduled payments until all amounts due under this Agreement are paid. We may accept late payments or partial payments, even though marked "paid in full" or with similar language, without losing any rights under this Agreement. We will use any payment we receive to pay any payment then due, in whole or in part; if no payment is then due, we will use any payment of the regularly scheduled payment amount to pay the next scheduled payment. If the next scheduled payment has been paid, or if the payment is in another amount, we will treat the payment as a partial prepayment, unless you and we agree otherwise.

**10. Application of Payments.** All regularly scheduled payments are to be applied first to the payment of returned check or ACH fees, then to accrued interest, then to outstanding principal, then to collection and other permitted expenses, and then to late fees; provided, however, that after an Event of Default (as defined below), payments will be applied to your obligations as we determine in our sole discretion.

**11. Other Borrower Obligations.** You agree that you (A) are a US citizen or permanent resident and (B) did not and will not, in connection with your loan application: (i) make any false, misleading or deceptive statements or omissions of fact in your application; (ii) misrepresent your identity, or describe, present or portray yourself as a person other than yourself; (iii) use any of the loan proceeds to fund any post-secondary educational expenses, including, but not limited to, tuition, fees, books, supplies, miscellaneous expenses, or room and board. You acknowledge and agree that we may rely without independent verification on the accuracy, authenticity, and completeness of

all information you provide to us. You certify that the proceeds of the loan will not be used for the purpose of purchasing or carrying any securities or to fund any illegal activity.

**12. Fees.**

- Origination Fee. If applicable, you agree to pay a non-refundable Origination Fee to us, as set forth in paragraph 1. Loan Terms, above. This fee will be deducted from your loan proceeds, so the Amount Given to You Directly or on your behalf will be less than the full principal Amount of Your Loan. You acknowledge that the Origination Fee will be considered part of the principal on your loan and is subject to the accrual of interest.
- Returned Check or ACH Fee. You agree to pay a fee of $15, if ACH transfers or checks are returned or fail due to insufficient funds in your account or for any other reason. Each attempt to collect a payment is considered a separate transaction, so an unsuccessful payment fee will be assessed for each failed attempt. The bank that holds your designated account may assess its own fee in addition to the fee we assess.
- Late Fee. If your payment is not received by us within three days of the due date, we may charge a late fee in the amount of $15. We will charge only one late fee on each late payment. These fees may be collected using ACH transfers initiated by us from your designated account. Any such late fee assessed is immediately due and payable. Any payment received after 6:00 P.M., Eastern Time, on a banking day is deemed received on the next succeeding banking day.
- Extension Fees. You agree to pay a fee of $25 or such other amount as provided by law for the processing of your request for an extension of this Agreement.

**13. Default.** You will be deemed in default on your loan (each, an "Event of Default") if you: (1) fail to pay timely any amount due on your loan; (2) file or have instituted against you any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) die; (4) commit fraud or make any material misrepresentation in this Agreement, or any other documents, applications or related materials delivered to us in connection with your loan; or (5) fail to abide by the terms of this Agreement. Upon the occurrence of an Event of Default, and after any notice and opportunity to cure the default, if such notice and right to cure is required by applicable law, we may exercise all remedies available to us under applicable law and this Agreement, including without limitation, demand that you immediately pay all amounts owed on your loan.

**14. Collection & Reporting of Delinquent Loans.** You agree to pay all costs of collecting any delinquent payments, as permitted by applicable law, including, if we file suit in court, reasonable attorneys' fees for an attorney who is not our salaried employee. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**15. Communications Consent:** You agree that we and any of our affiliates, agents, service providers or assignees (and any of our assignee's affiliates, agents or service providers) may call you, leave you a voice prerecorded, or artificial voice message, or send you a text, e-mail, or other electronic message for any purpose related to the servicing and collection of your loan, for surveys

MARLETTE_000138

or research or for any other informational purpose related to your loan (each a "Communication").You agree that we and any of our affiliates, agents, service providers or assignees (and any of our assignee's affiliates, agents or service providers) may call or text you at any telephone number associated with your loan, including cellular telephone numbers, and may send an e-mail to any email address associated with your loan. You also agree that we and any of our affiliates, agents, service providers or assignees (and any of our assignee's affiliates, agents or service providers) may include your personal information in a Communication and may conduct a Communication using an automatic telephone dialing system. We will not charge you for a Communication, but your data service provider may. In addition, you understand and agree that we and any of our affiliates, agents, service providers or assignees (and any of our assignee's affiliates, agents or service providers) may always communicate with you in any manner permissible by law that does not require your prior consent.

**16. Assignment of Your Loan.** You agree that we may, without further prior notice to or consent from you, assign any or all of our right, title and interest in this Agreement and your loan, including record of this loan, the debt incurred, any transfer of the obligation and your promise to repay, to anyone. Marlette Funding, LLC or its agents or designees, acting solely for this purpose as your agent, shall maintain at one of its offices in Wilmington, Delaware a copy of each assignment delivered to it and a register for the recordation of the name and address of the holder of your loan (including any assignee, if any, who becomes the holder of your loan pursuant to an assignment), and principal amounts (and stated interest) of your loan or loans owing to, such holder pursuant to the terms hereof from time to time (the "Register"). The entries in the Register shall be conclusive absent manifest error, and you, Cross River Bank or its agents or designees, and the holder of your loan (including any assignee, if any, who becomes the holder of your loan pursuant to an assignment) shall treat the person whose name is recorded in the Register pursuant to the terms hereof as a holder of your loan hereunder for all purposes of this Agreement. Recordation in the Register is the sole means of assignment or transfer of the holder's (or its assignee's) interest in your loan. The Register shall be available for inspection by you and any holder (including assignees), at any reasonable time and from time to time upon

**17. Entire Agreement.** This Agreement represents the entire agreement between you and us regarding the subject matter hereof and supersedes all prior or contemporaneous communications, promises and proposals, whether oral, written or electronic, between us with respect to your application and loan.

**18. Electronic Transactions.** THIS AGREEMENT IS FULLY SUBJECT TO YOUR CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES, WHICH YOU AGREED TO AT THE TIME OF YOUR APPLICATION. YOU EXPRESSLY AGREE THAT THIS AGREEMENT IS A "TRANSFERABLE RECORD" FOR ALL PURPOSES UNDER THE ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT AND THE UNIFORM ELECTRONIC TRANSACTIONS ACT.

**19. Notices.** All notices and other communications to you hereunder may be given by email to your email address on file with us or by regular mail to your address on file with us, and shall be deemed to have been duly given and effective upon transmission. You acknowledge that you have sole

MARLETTE_000139

access to the email account on file with and that communications from us may contain sensitive, confidential, and collections-related communications. If your email address changes, you must notify us of the change. You also agree to update your residence address and telephone number if they change.

**20. NO WARRANTIES.** EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, WE MAKE NO REPRESENTATIONS OR WARRANTIES TO YOU, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**21. LIMITATION ON LIABILITY.** IN NO EVENT SHALL WE BE LIABLE TO YOU FOR ANY LOST PROFITS OR SPECIAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHERMORE, WE MAKE NO REPRESENTATION OR WARRANTY TO YOU REGARDING THE EFFECT THAT THE AGREEMENT MAY HAVE UPON YOUR FOREIGN, FEDERAL, STATE OR LOCAL TAX LIABILITY.

**22. Waiver of Demand.** You hereby waive demand, notice of non-payment, protest, and all other notices or demands whatsoever.

**23. Amendments.** Any changes to this Agreement must be in writing signed by you and us.

**24. Miscellaneous.** The parties acknowledge that there are no third party beneficiaries to this Agreement. You may not assign, transfer, sublicense or otherwise delegate your rights or obligations under this Agreement to another person without our prior written consent. Any such assignment, transfer, sublicense or delegation in violation of this paragraph 24 shall be null and void. We are located in the state of New Jersey and this Agreement will be entered into in the state of New Jersey. The provisions of this Agreement will be governed by federal laws and, to the extent that state law applies, the laws of the state of New Jersey, without regard to any principle of conflicts of laws that would require or permit the application of the laws of any other jurisdiction. Any waiver of a breach of any provision of this Agreement will not be a waiver of any other subsequent breach. Failure or delay by either party to enforce any term or condition of this Agreement will not constitute a waiver of such term or condition. If at any time after the date of this Agreement, any of the provisions of this Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall be of no force and effect, but the illegality and unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provisions of this Agreement. The headings in this Agreement are for reference purposes only and shall not affect the interpretation of this Agreement in any way.

**25. Arbitration.**

a. Either party to this Agreement, or any subsequent assignee of this Agreement, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this paragraph 25 (the "Arbitration Provision"), unless you opt out as provided in paragraph 25(b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or any assignee (or persons claiming through or connected with us and/or any assignee), on the other hand, relating to or arising out of this

MARLETTE_000140

Agreement and/or the activities or relationships that involve, lead to, or result from this Agreement, including (except to the extent provided otherwise in the last sentence of paragraph 25(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

b. You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt out notice to P.O. Box 3999 St. Joseph, MO 64503-0999, which is received at the specified address within 30 days of the date of your electronic acceptance of the terms of this Agreement. The opt out notice must clearly state that you are rejecting arbitration; identify the Agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. You may send the opt out notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to opt out of this Arbitration Provision. If the opt out notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the opt out notice on your behalf.

c. The party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or JAMS. The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law. In the case of a conflict between the rules and policies of the administrator and this Arbitration Provision, this Arbitration Provision shall control, subject to countervailing law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply.

d. If we (or any assignee) elect arbitration, we (or the assignee, as the case may be) shall pay all the administrator's filing costs and administrative fees (other than hearing fees). If you elect arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing law if contrary to the administrator's rules. We (or the assignee, as the case may be) shall pay the administrator's hearing fees for one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise, or you request that we (or the assignee) pay them and we agree (or the assignee agrees) to do so. Each party shall bear the expense of its own attorneys' fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein.

e. Within 30 days of a final award by the arbitrator, any party may appeal the award for reconsideration by a three-arbitrator panel selected according to the rules of the arbitrator administrator. In the event of such an appeal, any opposing party may cross-appeal within 30 days after notice of the appeal. The panel will reconsider de novo all aspects of the initial award that are appealed. Costs and conduct of any appeal shall be governed by this Arbitration Provision and the administrator's rules, in the same way as the initial arbitration proceeding. Any award by the

MARLETTE_000141

individual arbitrator that is not subject to appeal, and any panel award on appeal, shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered as a judgment in any court of competent jurisdiction.

f. We agree not to invoke our right to arbitrate an individual Claim you may bring in Small Claims Court or an equivalent court, if any, so long as the Claim is pending only in that court. NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. Unless consented to in writing by all parties to the arbitration, no party to the arbitration may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction. Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (a) determine the rights, obligations, or interests of anyone other than a named party, or resolve any Claim of anyone other than a named party; nor (b) make an award for the benefit of, or against, anyone other than a named party. No administrator or arbitrator shall have the power or authority to waive, modify, or fail to enforce this paragraph 25(f), and any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. Any challenge to the validity of this paragraph 25(f) shall be determined exclusively by a court and not by the administrator or any arbitrator.

g. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court. The arbitrator shall take steps to reasonably protect confidential information.

h. This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or assignees; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or this Agreement to any other person or entity. If any portion of this Arbitration Provision other than paragraph 25(f) is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in paragraph 25(f) are finally adjudicated pursuant to the last sentence of paragraph 25(f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision. THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES

MARLETTE_000142

HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

Signature: (Signed Electronically), Signature Date: 10/13/2015

You can contact us for purposes of this Agreement at P.O. Box 3999 St. Joseph, MO 64503-0999. For customer service our telephone number is 1-844-825-2608.

STATE LAW NOTICES:

CALIFORNIA RESIDENTS: A married applicant may apply for a separate account. If we take any adverse action as defined by § 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, you have the right to obtain within 60 days a free copy of your consumer credit report from the consumer reporting agency who furnished the consumer credit report and from any other consumer credit reporting agency that complies and maintains files on consumers on a nationwide basis.

CALIFORNIA and UTAH RESIDENTS: As required by California and Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

KANSAS (and IOWA residents if the principal amount of this loan exceeds $20,000): Important: read before signing. The terms of this agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. We may change the terms of this agreement only by another written agreement.

MARYLAND RESIDENTS: To the extent that any court determines that this Agreement is subject to Maryland law concerning consumer credit, you and we agree and elect to make this loan pursuant to Subtitle 10 (Credit Grantor Closed End Credit provisions) of Title 12 of the Maryland Commercial Law Article only to the extent that such provisions are not inconsistent with our authority under federal law (12 U.S.C. § 1831d) and related regulations and interpretations, which authority we expressly reserve.

MASSACHUSETTS RESIDENTS: Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

MISSOURI AND NEBRASKA RESIDENTS: Oral loan agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of such debt, including promises to extend or renew such debt, are not enforceable. To protect you and us and any holder of this agreement from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEW JERSEY RESIDENTS: The paragraph headings of the Agreement are a table of contents and not contract terms. Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, actions or practices (i) which are or may be permitted by "applicable law" are permitted by New

MARLETTE_000143

Jersey law, and (ii) that may be or will be taken by us unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND and VERMONT RESIDENTS: You understand and agree that we may obtain a consumer credit report in connection with this application and in connection with any update, renewals for extension of any credit as a result of this application. If you ask, you will be informed whether or not such a report was obtained, and if so, the name and address of the agency that furnished the report. You also understand and agree that Lender may obtain a consumer credit report in connection with the review or collection of any loan made to you as a result of this application or for other legitimate purposes related to such loans.

NORTH DAKOTA RESIDENTS ONLY:  Notice: Money brokers are licensed and regulated by the department of financial institutions, 2000 Schafer Street, Suite G, Bismarck, North Dakota 58501-1204. The Department of Financial Institutions has not passed on the merits of the contract and licensing does not constitute an approval of the terms or of the broker's ability to arrange any loan. Complaints regarding the services of money brokers should be directed to the Department of Financial Institutions.  (NDAC 13-05-01-09)

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

SOUTH DAKOTA RESIDENTS: Any improprieties in making the loan or in loan practices may be referred to the South Dakota Division of Banking, located at 1601 N. Harrison Avenue, Suite 1, Pierre, SD 57501, or by phone at 605.773.3421.

WISCONSIN RESIDENTS: For married Wisconsin residents, your signature confirms that this loan obligation is being incurred in the interest of your marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under § 766.59 of the Wisconsin statutes or court decree under § 766.70 adversely affects our interest unless, prior to the time that the loan is approved, we are furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. If this loan for which you are applying is granted, you will notify us if you have a spouse who needs to receive notification that credit has been extended to you.

---

MARLETTE_000144