# **EXHIBIT 11**

EXECUTION VERSION

**AMENDED AND RESTATED TRUST AGREEMENT**

**OF**

**MF TRUST 2015-A**

**by and among**

**WILMINGTON SAVINGS FUND SOCIETY, FSB,**

**as Owner Trustee,**

**and**

**MF CONSUMER LOAN TRUST**

**as Initial Beneficiary**

**and**

**MARLETTE FUNDING, LLC,**

**as Administrator**

**Amended and Restated as of September 15, 2015**

ACTIVE 209654705v.9

This AMENDED AND RESTATED TRUST AGREEMENT, dated as of September 15, 2015 (this "Trust Agreement"), is made by and among Wilmington Savings Fund Society, FSB, a federal savings bank, as owner trustee (in such capacity, the "Owner Trustee"), Marlette Funding, LLC, a Delaware limited liability company, as trust administrator (in such capacity, the "Administrator") and MF Consumer Loan Trust, a Delaware statutory trust, as initial beneficiary (the "Initial Beneficiary").

WHEREAS, the parties hereto entered into a Trust Agreement, dated as of September 3, 2015 (the "Original Trust Agreement"), and filed a Certificate of Trust with the Secretary of State of the State of Delaware, pursuant to which MF Trust 2015-A (the "Trust") was formed as a Delaware statutory trust;

WHEREAS, the parties hereto desire to amend and restate the Original Trust Agreement in its entirety for the purposes of acquiring and holding pools of consumer loans in separate series for the benefit of the Initial Beneficiary and of any other Beneficial Owners of series hereunder, from time to time.

NOW, THEREFORE, in consideration of the premises and of the mutual agreements herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto amend and restate the Original Trust Agreement and otherwise agree as follows:

# ARTICLE I.
# DEFINITIONS

Section 1.01    Definitions.    For all purposes of this Agreement and any Series Supplement unless otherwise defined therein, the following terms shall have the meanings set forth below.

"Account Control Agreement" shall have the meaning set forth in the Credit Agreement and shall include, without limitation, each of the Deposit Account Control Agreements entered into by the Trust, the Agent and City National Bank, a national banking association, in connection with the closing of the transactions under the Credit Agreement.

"Accredited Investor" means an "Accredited Investor" within the meaning of Rule 501 under the Securities Act.

"Administrator" means Marlette Funding, LLC, in its capacity as the Administrator hereunder, and any of its successors or assignees in such capacity.

"Advances" has the meaning set forth in the Credit Agreement.

"Affected Asset" has the meaning specified in Section 3.03(c).

"Affiliate" means, with respect to any specified Person, any other Person controlling or controlled by or under common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the

1

ACTIVE 209654705v.9

    MARLETTE_000024

ownership of voting securities, by contract or otherwise and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Agent" means Goldman Sachs Bank USA, as Administrative Agent under the Credit Agreement.

"Agreement" means this Amended and Restated Trust Agreement, as may be further modified or amended from time to time.

"Applicant" has the meaning specified in Section 3.07.

"Bank" means Cross River Bank, a New Jersey state-chartered bank or any other bank approved by the Administrator.

"Bankruptcy Action" is defined in Section 8.01(b).

"Beneficial Owner" means each owner of record of a Series Beneficial Interest, as reflected on the Register from time to time, each such owner being a beneficial owner within the meaning of the Statutory Trust Act.

"Business Day" means any day, other than (i) a Saturday or Sunday, or (ii) a day on which banking institutions and trust companies in Wilmington, Delaware, New York, New York, or the location of the Corporate Trust Office designated by the Owner Trustee (if other than Wilmington, Delaware), are authorized or obligated by law or executive order to close.

"Certificate of Trust" means the Certificate of Trust filed for the Trust pursuant to Section 3810(a) of the Statutory Trust Act, as may be further amended, modified, supplemented or restated from time to time.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, together with the regulations thereunder, as in effect from time to time. Section references to the Code are to the Code as in effect as of the date hereof and any subsequent provisions of the Code amendatory thereof, supplemental thereto or substituted therefor.

"Collection Account" has the meaning set forth in the Credit Agreement.

"Consumer Loan" means an unsecured consumer loan, which includes, on a whole loan basis, all right, title and interest to such Consumer Loan, including without limitation (a) the related Portfolio Documents and all other loan documents, files and records of lender and its servicing agent for such Consumer Loan, (b) all proceeds from such Consumer Loan (including without limitation any monthly payments, any prepayments and any other proceeds), (c) the related servicing rights for such Consumer Loan, and (d) all other rights, interest, benefits, proceeds, remedies, and claims in favor or for the benefit of the lender arising from or relating to such Consumer Loan.

"Corporate Trust Office" has the meaning specified in Section 2.02.

2

Confidential

MARLETTE_000025

"Credit Agreement" means that certain Revolving Credit and Security Agreement, dated as of September 15, 2015, among the Trust, acting with respect to itself and each Series, Marlette Funding, LLC, as Master Servicer, the Lenders from time to time parties thereto, and the Agent.

"Distribution Account" has the meaning specified in Section 9.03.

"ERISA" means the Employee Retirement Income Security Act of 1974, including any successor or amendatory statutes.

"Extraordinary Expenses" has the meaning specified in Section 6.01(b).

"Facility Documents" has the meaning set forth in the Credit Agreement.

"Indemnified Persons" has the meaning specified in Section 6.01(b).

"Independent" when used with respect to any specified Person means such a Person who (1) is in fact independent of the Trust, (2) does not have any direct financial interest or any material indirect financial interest in the Trust or in any Affiliate of the Trust, and (3) is not connected with the Trust or any Affiliate thereof as a relative or an officer, employee, promoter, underwriter, trustee, partner, advisor, director, or Person performing similar functions (other than as Owner Trustee).

"Initial Beneficiary" means MF Consumer Loan Trust as Beneficial Owner with respect to Series 1.

"Investment Company Act" means the Investment Company Act of 1940, as amended.

"Liabilities" means all losses, liabilities, claims, damages, expenses (including related reasonable legal and other professional fees and expenses), taxes, actions and suits of any kind.

"Loan Sale Agreement" means that certain Amended and Restated Loan Sale Agreement, dated as of September 15, 2015, between the Bank and Marlette Funding, LLC, as purchaser, and the Trust (acting solely with respect to Series 1) as an additional designated purchaser thereunder.

"Owner Trustee" means Wilmington Savings Fund Society, FSB, a federal savings bank, not in its individual capacity but solely as owner trustee, and any successor owner trustee hereunder.

"Owner Trustee Institution" means Wilmington Savings Fund Society, FSB acting in its individual capacity and any successor Owner Trustee in its individual capacity.

"Person" means a legal person, including, without limitation, any individual, corporation, estate, partnership, joint venture, association, joint stock company, limited liability company, trust, unincorporated association, government or any agency or political subdivision thereof, or any other entity of whatever nature.

3

ACTIVE 209654705v.9

 MARLETTE_000026

"Portfolio Documents" collectively means any promissory note, loan agreement or contract, which shall include a truth-in-lending disclosure, the loan application and any other agreement or document executed and delivered by a debtor in connection with a Receivable to or for the benefit of the originating bank, the Administrator, the Trust or any other lender thereunder, including renewals, extensions, modifications and amendments thereof

"Receivable" means all rights to payment of indebtedness and obligations (including without limitation, unpaid principal, accrued interest, costs, fees, expenses and indemnity obligations) owing by a debtor in respect of a Consumer Loan or other financial accommodations, including, without limitation, all rights (including enforcement rights) under or pursuant to all related loan documents in respect thereof (including without limitation the Portfolio Documents), and all supporting obligations in connection therewith.

"Registrar Office" has the meaning specified in Section 3.05.

"Register" and "Registrar" mean the register maintained and the registrar (or any successor thereto) appointed pursuant to Section 3.04.

"Requisite Owners" means, a majority in percentage interest of the Beneficial Owners of all outstanding Series, or, with respect to a particular Series, a majority in percentage interest of the Beneficial Owners of the Series Beneficial Interest in such Series.

"Responsible Officer" means, (a) as to the Owner Trustee, any officer within the Corporate Trust Office of the Owner Trustee, including any managing director, director, vice president, assistant vice president, assistant treasurer, assistant secretary or associate, or any other officer customarily performing functions similar to those performed by any of the above designated officers, in all cases having direct responsibility for the administration of the Trust, and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of and familiarity with the particular subject and (b) as to the Administrator or any other Person, its president, chief executive officer, any vice president, treasurer or secretary or any natural Person who is a managing general partner or manager or managing member of a limited liability company.

"Secretary of State" means the Secretary of State of the State of Delaware.

"Securities Act" means the Securities Act of 1933, as amended.

"Series" means each series of beneficial interests in a specified pool of assets of the Trust established by the Administrator on behalf of the Trust pursuant to Section 3.01 of this Trust Agreement or by the execution of a Series Supplement in accordance with Article III hereof, to which Series specific assets identified by the Administrator are allocated on the books and records of the Administrator on behalf of the Trust, and which will have the name and beneficial owners designated by the Administrator in this Agreement or in the Series Supplement. Each such Series constitutes a separate series of the Trust pursuant to Section 3806(b)(2) of the Statutory Trust Act.

"Series Assets" means such portion of the Trust Property identified and allocated to a Series pursuant to Article III and any related Series Supplement.

4

ACTIVE 209654705v.9

Confidential                                                                    MARLETTE_000027

"Series Beneficial Interest" means an undivided beneficial interest in the assets of the related Series, including, without limitation, rights to receive distributions (liquidating or otherwise), allocations and information, and to consent or approve, all as more fully set forth herein, together with all obligations of the Beneficial Owner of such Series to comply with the terms and provisions of this Agreement and any related Series Supplement.

"Series Sub-Account" means each sub-account of the Distribution Account created and maintained with respect to a separate Series of the Trust.

"Series Supplement" means a supplement to this Agreement, substantially in the form attached hereto as Exhibit B, the execution and delivery of which pursuant to Section 3.02(b) hereof by the Owner Trustee, the Administrator, and the initial Beneficial Owner(s) of such Series will effect the creation of a Series of the Trust.

"Servicer" means the Person acting as the servicer of the Receivables included as Trust Property pursuant to the Servicing Agreement, which initially shall be Marlette Funding, LLC.

"Servicing Agreement" means that certain Loan Servicing Agreement, dated as of September 15, 2015, between Marlette Funding, LLC, as Servicer, and the Trust.

"Statutory Trust Act" means Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. § 3801, et seq., as the same may be amended from time to time and including any successor statute.

"Tax Opinion" means, with respect to any action, an opinion of counsel to the effect that, for federal income tax purposes, such action will not, in and of itself, cause (i) the Trust to become subject to entity level income taxes or (ii) the Trust or the Owner Trustee to have an obligation to withhold income taxes or other taxes with respect to interests in the Trust.

"Transaction Documents" means the following documents (as each may be amended, supplemented or otherwise modified from time to time in accordance with its respective terms): this Agreement and each Series Supplement, the Servicing Agreement, the Loan Sale Agreement, the Credit Agreement, the Account Control Agreements, and any other documents or other agreements, instruments, documents and contracts executed in connection therewith or pursuant thereto, including any other documents, which are necessary or appropriate to effectuate the purposes of the Trust, including without limitation any agreement, instrument, document or contract the Trust executes or acknowledges in writing that relates to the foregoing.

"Transfer" means any direct or indirect transfer, sale, or other assignment of a Series Beneficial Interest, as the context requires, and "transferred" has a correlative meaning.

"Transfer Certificate" means a certificate in the form of Exhibit A attached hereto.

"Transferee" means any Person who is acquiring by Transfer a Series Beneficial Interest.

"Transferor" means any Person who engages in a Transfer to a Transferee.

"Trust" means MF Trust 2015-A, a Delaware statutory trust.

5

ACTIVE 209654705v.9

"Trust Agreement" means this Agreement together with any Series Supplement, each as may be modified, supplemented or amended from time to time.

"Trust Expenses" means all costs and expenses incidental to the organization and ongoing operation of the Trust including, without limitation, (a) the formation of the Trust, including but not limited to legal fees and expenses relating to the preparation and filings of its certificate of trust and trust agreements (and amendments thereto), (b) the preparation and negotiation of the Transaction Documents (and amendments thereto), including the fees and expenses of counsel for the Owner Trustee, the Administrator and the Initial Beneficiary (or its investment adviser), (c) all investment-related costs and expenses (such as, for example, the servicing fees pursuant to the Servicing Agreement, any brokerage commissions and charges, clearing and settlement charges and custodial and service fees), (d) all interest and commitment fees on loans and debit balances, (e) all costs and expenses of negotiating and entering into contracts and arrangements and making investments (such as brokerage, legal, accounting, investment banking, appraisal and other professional and consulting fees and expenses arising from particular investments and potential investments) and similar expenses in terminating those contracts and arrangements and disposing of the Trust's investments, (f) all costs and expenses incurred in attempting to protect or enhance the value of the Trust's investments (including the costs and expenses of instituting and defending lawsuits), (g) all income taxes, withholding taxes, transfer taxes and other governmental charges and duties, (h) all fees and costs of the Owner Trustee that are approved by the Administrator, (i) all fees and charges of custodians, clearing agencies and banks, (j) all administrative, bookkeeping, recordkeeping, legal, accounting, auditing, tax preparation and other professional, expert and consulting fees and expenses arising in connection with the Trust's activities (including but not limited to fees and expenses of counsel for the Administrator or the Initial Beneficiary (or its investment adviser), and all fees, costs and expenses of accounting, bookkeeping and recordkeeping services of the Trust's Administrator or any similar service provider retained by the Administrator to assist it in performing services for the Trust), (k) all fees, costs and expenses of offering and selling beneficial interests in the Trust and communicating with existing and prospective beneficial owners (including, without limitation, the costs of printing and distributing offering materials, reports and notices, legal and accounting fees and expenses, governmental and self-regulatory agency filing fees), (l) the costs and expenses of investing the Trust's assets indirectly, such as through trusts, partnerships or other entities, including all or a portion of the costs and expenses of organizing and operating such entities, (m) all premiums and other costs and expenses of insurance policies as the Administrator considers appropriate, insuring the Trust and any other persons the Administrator deems appropriate against liabilities that may arise in connection with the Trust's management and activities, (n) all costs and expenses of proxy voting services, and (o) any contingencies for which the Administrator determines reserves are required.  The Administrator also may elect to cause the Trust to bear all or a portion of the expenses charged by any service provider that provides accounting, investor relations, financial reporting or similar services to the Administrator or to a Beneficial Owner if, in the Administrator's reasonable discretion, the portion of such expense allocated to the Trust relates to the Trust.  The Trust shall reimburse any person (including but not limited to the Administrator and the Initial Beneficiary) for any expenses described above.

"Trust Liabilities" means any and all costs, expenses or liabilities of the Trust including, without limitation, Trust Expenses and Extraordinary Expenses.

6

ACTIVE 209654705v.9

MARLETTE_000029

"Trust Property" means any and all assets and property of the Trust consisting of: (A) all Receivables, including without limitation the related Consumer Loans and the related Portfolio Documents; (B) all rights, interests and benefits of the Trust under the Transaction Documents; (C) all books, records, files, instruments and other documents concerning the foregoing assets and property (including, without limitation, all tapes, disks and related items containing such information); (D) all accounts, general intangibles, payment intangibles, instruments, chattel paper, equipment, goods, inventory, deposit accounts, securities accounts, investment property, letter of credit rights and supporting obligations (in each case, as such respective term is defined in the UCC) of the Trust; and (E) all present and future claims, demands, causes of action and choses in action regarding any of the foregoing and all payments on any of the foregoing and all proceeds of any nature whatsoever regarding any of the foregoing, including all proceeds of the conversion thereof (voluntarily or involuntarily) into cash or other liquid property, and all other proceeds, including all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, insurance proceeds, condemnation awards, general intangibles, securities, property, rights to payment of any kind and other forms of obligations, and receivables, instruments and other property that at any time constitute any part of or are included in the proceeds of any of the foregoing.

"UCC" means the Uniform Commercial Code as in effect in any applicable jurisdiction from time to time.

Section 1.02    Rules of Construction.  Unless the context otherwise requires:

(a)    a term has the meaning assigned to it;

(b)    "or" is not exclusive;

(c)    "including" means including without limitation;

(d)    words in the singular include the plural and words in the plural include the singular;

(e)    any agreement, instrument or statute defined or referred to herein or in any instrument or certificate delivered in connection herewith means such agreement, instrument or statute as from time to time amended, modified or supplemented and includes (in the case of agreements or instruments) references to all attachments thereto and instruments incorporated therein; references to a Person are also to its permitted successors and assigns; and

(f)    the words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.  Section, subsection and Schedule references contained in this Agreement are references to Sections, subsections and Schedules in or to this Agreement unless otherwise specified.

**ARTICLE II.**
**ORGANIZATION**

7

ACTIVE 209654705v.9

Confidential                                                                                        MARLETTE_000030

Section 2.01   Name.  The Trust formed hereby shall be known as "MF Trust 2015-A" in which name the Owner Trustee and the Administrator, each acting singly in the name of and on behalf of the Trust, shall be authorized and empowered, without the need for further action on the part of the Trust or any other Person, to conduct the activities of the Trust and engage in the transactions as contemplated hereby, including without limitation:  to make and execute and deliver contracts, instruments and other documents; acquire, hold, manage, collect, disburse and dispose of the Trust Property; sue and be sued; and enter into such other transactions and take such other actions as are necessary or desirable to carry out the provisions hereof, all in accordance with this Agreement.  The Owner Trustee is hereby authorized and instructed to file the Certificate of Trust with the Secretary of State in the form attached hereto as Exhibit C.

Section 2.02   Office.  The office of the Trust shall be in care of the Owner Trustee at 500 Delaware Avenue, 11th Floor, Wilmington, DE 19801, Attention:  Corporate Trust Administration (the "Corporate Trust Office") or at such other address as the Owner Trustee may designate by notice to the Beneficial Owners and the Administrator.

Section 2.03   Purpose and Powers.

(a)   The purpose of the Trust is to act as a passive owner of the Trust Property for the principal purpose of holding, segregating and maintaining custody of the Trust Property to obtain and facilitate the financing, holding and/or disposition of such Trust Property.  As a passive owner, the Trust's primary objectives will be to acquire, own, hold, finance, sell, liquidate and dispose of the Trust Property, to allocate the Trust Property to separate Series of the Trust, to issue Series Beneficial Interests and to retain other Persons to actively manage, service, operate and/or administer the Trust Property on behalf of the Trust, including without limitation the Servicer under the Servicing Agreement.  The Trust as a passive owner does not expect or anticipate that it will have, and will seek to operate in a manner to exclude it from having, any contact or communication with any obligor or issuer of the Consumer Loans/Receivables or any contact with any tangible real or personal property that secures or constitutes part of such Consumer Loans/Receivables.  In addition, the Trust will not have any employees and will limit its activities to avoid incurring any liabilities, indebtedness or obligations other than liabilities, indebtedness and obligations related to the Transaction Documents.  In furtherance of the foregoing, the Trust (on behalf of itself or acting with respect to a Series) shall have the power and authority, and is hereby authorized and empowered all without the need for further action on the part of any Person:

(1)   from time to time, to acquire or purchase pools of Consumer Loans from the Bank pursuant to the Loan Sale Agreement, to create, and identify and allocate such Consumer Loans and the related Trust Property to, separate Series of the Trust pursuant to the execution by the Administrator of one or more Series Supplements, and to issue Series Beneficial Interests with respect to such Series;

(2)   to sell, assign, grant, transfer, pledge, mortgage, convey, dispose of and otherwise deal with the Trust Property, including without limitation the purchase and sale of the Consumer Loans under the Loan Sale Agreement *provided, however*, that the Trust (on behalf of itself or acting with respect to a

8

ACTIVE 209654705v.9

Confidential

Series) may not sell, assign, grant, transfer, pledge, mortgage, convey, dispose of or otherwise deal with the Trust Property without the prior written consent of the Agent (which consent shall not be required if consent of the Agent for any such action by the Trust is not required under the Credit Agreement as determined by the Administrator in its sole discretion); and provided further except as expressly provided by this Agreement or any applicable Series Supplement, the Administrator is prohibited from withdrawing capital or Trust Property from the Trust except for the benefit of the related Beneficial Owners;

(3)    to cause the Servicer on its behalf to collect, exercise, enforce, pursue, realize and protect any rights, interests, benefits and remedies arising from or relating to the Trust Property, and to hold, manage, distribute and disburse any portion of the Trust Property to the applicable Beneficial Owners and other Persons entitled thereto in accordance with the terms of this Agreement and the related Series Supplement or otherwise as directed by the applicable Beneficial Owners;

(4)    to enter into, execute and deliver and perform its obligations under each of the Transaction Documents to which the Trust, including with respect to any Series, is a party and to consummate the transactions thereunder;

(5)    to acquire, collect, hold, manage, invest, distribute and disburse to the applicable Persons entitled thereto pursuant to the terms of the Agreement and the related Series Supplement the proceeds from the Trust Property, including without limitation the remittance of proceeds to and from each Series Sub-Account;

(6)    to engage, retain and contract with other Persons to perform the foregoing activities on behalf of the Trust, including without limitation the management, servicing, operation and/or administration of the Trust Property on behalf of the Trust;

(7)    to grant the Liens with regard to the Trust Property if required pursuant to the Transaction Documents to which it is a party;

(8)    to obtain and maintain such qualifications to do business in such jurisdictions as may be necessary or desirable as determined by the Administrator; and

(9)    to engage in those activities, including entering into, executing, delivering and performing its obligations under such agreements, documents and other writings that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith.

(b)    The Trust shall not have power or authority to perform any act or engage in any business whatsoever, except as specified in this Section 2.03 and any activity reasonably incidental thereto or appropriate therefor.  Subject to the limitations provided in this Agreement or any Series Supplement, each of the Owner Trustee and the

9

ACTIVE 209654705v.9

Confidential

Administrator shall have all rights, powers and authority set forth in this Agreement or any Series Supplement and, in the Statutory Trust Act for the sole purpose and to the extent necessary or desirable to accomplish the purposes of the Trust as set forth in this Section 2.03

Section 2.04    Declaration of Trust.  The Owner Trustee hereby declares that it will hold the Trust Property (including as allocated to each Series) provided to it upon the trusts set forth herein and for the use and benefit of the applicable Beneficial Owners as herein set forth, subject to the obligations of the Trust under the Transaction Documents.  It is the intention of the parties hereto that the Trust constitute a statutory trust under the Statutory Trust Act and that this Trust Agreement constitute the governing instrument of the Trust.  Except as provided in Section 2.06 below, the Trust shall not be deemed to be a partnership, joint venture, joint shares company or corporation.

Section 2.05    Trust Obligations.

(a)    Subject to Section 3.03(c), all Trust Liabilities, to the extent not paid by a third party, are, and shall be, obligations of the Trust and when due and payable shall be satisfied out of the Trust Property.

(b)    Except as otherwise provided in the Transaction Documents, no Beneficial Owner shall be personally liable for any Trust Liability.

Section 2.06    Tax Treatment; Construction.  It is the intention of the Initial Beneficiary and the Administrator that, solely for federal, state and local income tax purposes, the Advances under the Credit Agreement shall be treated as indebtedness of the Trust and that the Trust shall be treated as either an entity that is disregarded as separate from the Beneficial Owner if there is only one such owner or, if there are two or more such owners or if an applicable tax authority ever recharacterizes the Advances as interests in the Trust rather than debt, as a partnership for federal, state and local income tax purposes, with the assets of the partnership being assets held by the Trust, and the partners of the partnership being the holders of the Beneficial Interest Certificates and, if applicable, the holders of any recharacterized Advances.  The Trust shall not elect to be treated as an association taxable as a corporation under Section 301.7701-3(a) of the regulations of the United States Department of the Treasury for federal income tax purposes.  The Administrator is authorized to modify the allocations in this Section if necessary or appropriate, in its sole discretion, for the allocations to reflect fairly the economic income, gain or loss to the Beneficial Owners or as otherwise required by the Code.  The parties agree that, unless otherwise required by appropriate tax authorities, the Administrator, on behalf of the Trust, will prepare, execute and file or cause to be prepared and filed annual or other necessary returns, reports and other forms consistent with the characterization of the Advances and the Trust as provided in the preceding sentences of this subsection for such tax purposes.

Section 2.07    Title to Trust Property.

(a)    Legal title to the Trust Property (including as allocated to a Series) shall be held in the name of the Owner Trustee on behalf of the Trust.  Trust Property titled in the name of the Owner Trustee shall be recorded in the name of "Wilmington Savings

10

ACTIVE 209654705v.9

distributed to the applicable Beneficial Owners for such Series any remaining assets allocated to such Series or, if so directed by the related Beneficial Owners, the Administrator shall relocate all or a portion of such Series Assets to another Series. If such Series Assets are distributed to the related Beneficial Owners, such Beneficial Owners shall pay or cause to be paid the costs and expenses associated with any transferor assignment of such Series Assets and any associated fees and taxes and shall be for the account of and payable by such Beneficial Owners. Promptly following the termination of a Series, the Administrator shall provide notice of the termination the Series to the Owner Trustee and the Registrar, and the Registrar shall thereupon update the Register to reflect the cancellation of such Series Beneficial Interest.

Section 10.02  Termination of Trust.

(a)    Dissolution of the Trust. The Trust shall be dissolved and its affairs shall be wound up only upon the written election of all Beneficial Owners, delivered to the Owner Trustee and the Administrator, to dissolve the Trust. Upon dissolution of the Trust, the Administrator shall have power and authority, and is hereby authorized and empowered, to, and shall, wind up the Trust's affairs.

(b)    Winding Up, Liquidation and Distribution of Assets of the Trust Upon Dissolution of the Trust. Upon dissolution of the Trust, the Administrator shall wind up the affairs of the Trust in accordance with applicable law. The Beneficial Owners of the Trust shall be entitled to receive from the Administrator on behalf of the Trust the net assets of the Trust, if any, remaining upon the completion of such winding up. The Beneficial Owners shall comply with all requirements of applicable law pertaining to the winding up of the affairs of the Trust and the final distribution and receipt of the assets associated with its Series. Upon the completion of the winding up of the Trust, the Administrator shall send written notice thereof to the Owner Trustee, and upon the Owner Trustee's receipt of such written notice, the Owner Trustee shall, at the expense of the Administrator, execute a certificate of cancellation, and file such executed certificate of cancellation with the Secretary of State, as required by the Statutory Trust Act.

(c)    Effect of Filing Certificate of Cancellation. Upon the filing of a certificate of cancellation with the Secretary of State pursuant to Section 10.02(b), the existence of the Trust shall cease, and this Agreement (other than Article VI) shall be of no further force or effect.

## ARTICLE XI.
## ADMINISTRATOR

Section 11.01  Duties with Respect to the Trust.

(a)    Marlette Funding, LLC, in the capacity of Administrator as provided in this Section 11.01 hereby agrees to act as an agent of the Trust and is hereby appointed by the current Beneficial Owners pursuant to Section 3806(b)(7) of the Statutory Trust Act as an independent contractor acting as an agent of the Trust, having full power, authority and authorization to manage and administer the business and affairs of the Trust

31

ACTIVE 209654705v.9

Confidential                                                                                MARLETTE_000054

and to perform its obligations as Administrator hereunder; *provided*, *however*, that the Administrator may be removed, or replaced with a successor administrator, by either (i) the Agent, but only in the case of the occurrence and continuance of a Servicer Event of Default, for Cause (each, as defined in the Credit Agreement) or if the Administrator fails to materially satisfy its duties as Administrator hereunder and such failure continues for a period of ten (10) Business Days after the earlier of (x) written notice from the Agent has been provided to the Administrator specifying such failure with particularity and (y) actual knowledge of the Administrator, or (ii) at the written instructions of the Requisite Owners, with the prior written consent of the Agent (which consent shall not be unreasonably withheld), to the Administrator and the Owner Trustee.  The Administrator shall, and shall have the authority and power and authorization to, act on behalf of the Trust:

        (i)    to administer, perform, execute, manage or supervise any lawful activities of the Trust and involving the Trust Property, which are authorized pursuant to Section 2.03 and are reasonably within the capability of the Administrator, and which shall include, without limitation, entering into and executing Transaction Documents on behalf of the Trust and taking all action as it shall be the right or duty of the Trust to take pursuant to this Agreement or any of the Transaction Documents; *provided*, *however*, except as directed by the Beneficial Owners, the Administrator is expressly prohibited from both withdrawing capital or Trust Property from the Trust except for the benefit of the Beneficial Owners;

        (ii)    to enforce any agreement entered into by the Trust or pursuant to which it is a beneficiary or has any rights, including any of the Transaction Documents to which the Trust is or will be a party; and

        (iii)    to employ in good faith consultants, accountants, attorneys and expert persons, employ or contract for clerical and other administrative assistance, delegate to agents any matter whether ministerial or discretionary and act through such agents.

        (b)    The Administrator also shall perform such calculations and shall prepare, execute and deliver, on behalf of the Trust or the Owner Trustee, or shall cause the preparation by other appropriate Persons of all such documents, reports, filings (including any UCC filings), instruments, certificates and opinions as it shall be the duty of the Trust or the Owner Trustee to prepare, file or deliver pursuant to this Agreement or any of the Transaction Documents or under state and federal tax and securities laws, and at the request of the Owner Trustee shall take all appropriate action that is the right, power or duty of the Trust or Owner Trustee to take pursuant to this Agreement or any of the Transaction Documents.

        (c)    The relationship of the Administrator to the Trust and the Owner Trustee shall be that of an independent contractor for the Trust, and the Administrator shall not be a trustee, officer, employee, member or partner of the Trust or the Owner Trustee, and shall not be a representative, owner, or beneficiary of or for the Owner Trustee.  Nothing

32

ACTIVE 209654705v.9

       MARLETTE_000055

in this Agreement regarding the appointment and duties of the Administrator shall be deemed to constitute or define the relationship between the Administrator and the Trust or the Owner Trustee as a joint venture, a partnership or legal representation of the other party, or to create any fiduciary relationship between the Administrator and the Trust or Owner Trustee.

(d) It shall be the Administrator's duty and responsibility, and not the Owner Trustee's duty or responsibility, to cause the Trust to respond to, defend, participate in or otherwise act in connection with any regulatory, administrative, governmental, investigative or other proceeding or inquiry relating in any way to the Trust, its assets or the conduct of its business.

(e) The Administrator also shall act, or refrain from acting, in accordance with this Agreement and upon instructions, by an instrument or instruments in writing executed by the Requisite Owners; provided that the Administrator shall not be required to take or refrain from taking any action if the Administrator shall reasonably determine that such action (i) is likely to result in liability on the part of the Administrator for which adequate reimbursement or indemnity is not reasonably assured, (ii) is contrary to the terms hereof or of any document contemplated hereby to which the Administrator is a party or by which it is bound, or (iii) is contrary to applicable law, and the Administrator gives notice of its determination to the Beneficial Owners.

(f) The Owner Trustee shall not have any duty or obligation to manage, monitor or supervise the Administrator. The Owner Trustee shall not have any liability or responsibility for any actions or inactions of the Administrator pursuant to this Agreement.

(g) In carrying out the foregoing duties or any of its other obligations under this Agreement, the Administrator may enter into transactions with or otherwise deal with any of its Affiliates; *provided*, *however*, that the terms of any such transactions or dealing shall be in accordance with any directions received from the Requisite Owners or shall be otherwise on arm's-length terms no less favorable to the Trust in any material respect.

### ARTICLE XII.
### MISCELLANEOUS

Section 12.01 Amendments.

(a) This Agreement may not be amended, and neither the Owner Trustee nor the Administrator may agree to any amendment or modification, without the prior written consent of each of the Agent, Requisite Owners, the Owner Trustee and the Administrator.

(b) The Owner Trustee may, but shall not be obligated to, execute any instrument of amendment that adversely affects any right, duty or liability of, or immunity or indemnity in favor of, the Owner Trustee under this Agreement or any of the documents contemplated hereby to which the Trust is a party.

33

ACTIVE 209654705v.9

 MARLETTE_000056