# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD HENRY, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-00985 |
| Plaintiff, | |
| v. | |
| MARLETTE FUNDING, LLC d/b/a BEST EGG, | |
| Defendant. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
## THIRD MOTION TO COMPEL INDIVIDUAL ARBITRATION

Kevin Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.      INTRODUCTION  ................................................................................................  1

II.     FACTUAL AND PROCEDURAL BACKGROUND  ........................................  2

III.    APPLICABLE STANDARD AND LAW  .........................................................  4

        A.      Applicable Standard  ..............................................................................  4

        B.      Applicable Law  ......................................................................................  4

IV.     ARGUMENT  ......................................................................................................  5

        A.      Marlette Cannot Compel Arbitration Under The Plain Language Of
                The Loan Agreement Or Arbitration Provision  ......................................  5

        B.      Marlette Cannot Avoid The Plain Language Of The Loan Agreement
                Or Arbitration Provision  ........................................................................  8

                1.      Marlette cannot enforce the Arbitration Provision using
                        agency principles  ........................................................................  8

                2.      Marlette cannot enforce the Arbitration Provision using
                        estoppel principles  ......................................................................  12

                3.      Marlette cannot enforce the Arbitration Provision using
                        special arbitration-specific rules that are divorced from
                        the requirements of New Jersey law  .........................................  16

        C.      Even Assuming Marlette Can Avoid The Plain Language Of The
                Loan Agreement, It Still Cannot Compel Arbitration  .........................  19

        D.      Marlette Cannot Invoke The Delegation Clause  .................................  21

V.      CONCLUSION  .................................................................................................  24

i

# TABLE OF AUTHORITIES

## Cases

*1180 Raymond Urban Renewal, LLC v. 1180 Astro Urban Renewal Inv'rs LLC*,
No. A-5074-12T3, 2015 N.J. Super. Unpub. LEXIS 1494
(N.J. Super. Ct. App. Div. June 22, 2015) ........................................................ 9, 10

*Affymax, Inc. v. Johnson & Johnson*,
420 F. Supp. 2d 876 (N.D. Ill. 2006) .................................................................. 20

*Alfano v. BDO Seidman, LLP*,
925 A.2d 22 (N.J. Super. Ct. App. Div. 2007) .................................................. 9, 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................... 4

*Arnold v. The Arnold Corp.*,
920 F.2d 1269 (6th Cir. 1990) ............................................................................. 17

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ............................................................................................. 17

*Atricure, Inc. v. Meng*,
12 F.4th 516 (6th Cir. 2021) ............................................................................... 17

*Badiali v. N.J. Mfrs. Ins. Grp.*,
107 A.3d 1281 (N.J. 2015) .................................................................................... 5

*Barras v. Branch Banking & Trust Co. (In re Checking Account Overdraft Litig.)*,
685 F.3d 1269 (11th Cir. 2012) ........................................................................... 23

*Belnap v. Iasis Healthcare*,
844 F.3d 1272 (10th Cir. 2017) ............................................................................. 9

*Blaine v. Pressler & Pressler, LLP*, No. A-2289-11T2,
2013 N.J. Super Unpub. LEXIS 1312 (N.J. Super. Ct. App. Div. May 31, 2013) ................ 5

*Bleumer v. Parkway Ins. Co.*,
649 A.2d 913 (N.J. Super. Ct. Law Div. 1994) .................................................. 18

*Bodine v. Cook's Pest Control Inc.*,
830 F.3d 1320 (11th Cir. 2016) ..................................................................... 22, 23

*E.I. Dupont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
269 F.3d 187 (3d Cir. 2001) .................................................................................. 9

*EPIX Holdings Corp. v. Marsh & McLennan Cos.*,
  982 A.2d 1194 (N.J. Super. Ct. App. Div. 2009) ................................................................. 11

*Espada v. Guardian Serv. Indus., Inc.*, No. 18-cv-05443,
  2019 U.S. Dist. LEXIS 181187 (E.D.N.Y. Oct. 18, 2019) ............................................ 23, 24

*Farmland Dairies, Inc. v. Milk Drivers & Dairy Emps. Union Local 680*,
  956 F. Supp. 1190 (D.N.J. 1996) ...................................................................................... 17

*Fericks v. Lucy Ann Soffe Trust*,
  100 P.3d 1200 (Utah 2004) ................................................................................................ 9

*Fitts v. Chase Manhattan Mortg. Corp.*, No. A-0814-05T5,
  2006 N.J. Super. Unpub. LEXIS 1461 (N.J. Super. Ct. App. Div. Nov. 30, 2006) ............... 5

*Fox v. Nationwide Credit, Inc.*, No. 09-cv-07111,
  2010 U.S. Dist. LEXIS 88654 (N.D. Ill. Aug. 25, 2010) ...................................................... 6

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*,
  755 A.2d 626 (N.J. Super. Ct. App. Div. 2000) ................................................................... 8

*Gayles v. Sky Zone Trampoline Park*,
  254 A.3d 1271 (N.J. 2021) .................................................................................................. 9

*Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co.*, No. A-4016-97T3,
  727 A.2d 1050 (N.J. Super. Ct. App. Div. May 4, 1999) .................................................... 12

*Gray Holdco, Inc. v. Cassady*,
  654 F.3d 444 (3d Cir. 2011) ............................................................................................. 23

*Halsey v. Pfeiffer*,
  750 F.3d 273 (3d Cir. 2014) ............................................................................................... 4

*Henry v. Alliant Capital Mgmt. LLC*, No. 21-cv-01019,
  Doc. 25-4 (W.D. Pa. Jan. 7, 2022) ............................................................................... 20, 21

*Hirsch v. Amper Fin. Servs., LLC*,
  71 A.3d 849 (N.J. 2013) ............................................................................................ *passim*

*HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*,
  590 F. Supp. 2d 677 (D.N.J. 2008) ................................................................................... 20

*In re Wholesale Grocery Prods. Antitrust Litig.*,
  97 F. Supp. 3d 1101 (D. Minn. 2015), *aff'd*, 850 F.3d 344 (8th Cir. 2017) .................. 20, 21

*Jackson v. Home Depot, U.S.A., Inc.*,
857 S.E.2d 321 (N.C. Ct. App. 2021) .................................................................. 6

*Kennamer v. Ford Motor Credit Co. LLC*,
153 So. 3d 752 (Ala. 2014) ................................................................................. 20

*Kennedy v. LVNV Funding LLC*, No. 18-cv-10695,
2019 U.S. Dist. LEXIS 69119 (D.N.J. Apr. 24, 2019) ........................................... 6

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*,
691 F.3d 294 (3d Cir. 2012) .................................................................................. 4

*Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-cv-00895,
2021 U.S. Dist. LEXIS 164995 (E.D.N.Y. Aug. 31, 2021) ..................................... 6

*McCarthy v. Azure*,
22 F.3d 351 (1st Cir. 1994) ................................................................................. 19

*McGinnis v. John C. Bonewicz, P.C.*, No. 11-cv-02210,
2012 U.S. Dist. LEXIS 23833 (C.D. Ill. Feb. 2, 2012),
*report and recommendation adopted*,
2012 U.S. Dist. LEXIS 23829 (C.D. Ill. Feb. 24, 2012) ......................................... 6

*Morgan v. Sundance, Inc.*, No. 21-328,
596 U.S. __, 2022 U.S. LEXIS 2514 (2022) ......................................... 17, 22, 23

*Pacanowski v. Alltran Fin., LP*,
271 F. Supp. 3d 738 (M.D. Pa. 2017) .................................................................. 6

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
7 F.3d 1110 (3d Cir. 1993) ............................................................................ 16, 17

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ............................................................................................. 22

*RRCI Constructors, LLC v. Charlie's/Diamond Ready Mix, Inc.*,
51 V.I. 645 (D.V.I. 2009) ............................................................................... 20, 21

*S & R Co. of Kingston v. Latona Trucking, Inc.*,
159 F.3d 80 (2d Cir. 1998) ................................................................................. 23

*Salerno Med. Assocs., LLP v. Riverside Med. Mgmt., LLC*,
542 F. Supp. 3d 268 (D.N.J. 2021) ............................................................... 15, 24

*Sanders v. Savannah Highway Auto. Co.*,
852 S.E.2d 744 (S.C. Ct. App. 2020) ................................................................. 20

iv

*Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc.*, No. 10-cv-02023,
    2016 U.S. Dist. LEXIS 112171 (D.N.J. Aug. 22, 2016) ..................................................... 7, 12

*Saroza v. Client Servs., Inc.*, No. 17-cv-03429,
    2020 U.S. Dist. LEXIS 33375 (D.N.J. Feb. 27, 2020) ............................................................ 6

*Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy*,
    5 A.3d 166 (N.J. Super. Ct. App. Div. 2010) ........................................................................ 20

*Sicily by Car S.P.A. v. Hertz Global Holdings, Inc.*, No. 14-cv-06113,
    2015 U.S. Dist. LEXIS 65751 (D.N.J. May 20, 2015) ............................................ 14, 15, 24

*Supermedia v. Affordable Elec., Inc.*,
    565 F. App'x 144 (3d Cir. 2014) .......................................................................................... 22

*United States v. Olano*,
    507 U.S. 725 (1993) .............................................................................................................. 23

*White v. Sunoco, Inc.*,
    870 F.3d 257 (3d Cir. 2017) .............................................................................................. 6, 17

*Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London*,
    359 F. Supp. 3d 1253 (S.D. Fla. 2019) ................................................................................ 22

## Rules

Fed. R. Civ. P. 56(a) .................................................................................................................. 4

## Statutes

73 P.S. § 201-9.2(a) ................................................................................................................. 16

## Other Authorities

Adam J. Levitin, *Rent-a-Bank: Bank Partnerships and the Evasion of Usury Laws*,
    71 Duke L.J. 329, 329 (2021), https://ssrn.com/abstract=3684244 ........................................ 2

Restatement (Third) of Agency § 6.01 cmt. d (Am. Law Inst. 2006) .............................. 9, 10, 18

Restatement (Third) of Agency § 6.01 cmt. e (Am. Law Inst. 2006) ......................... 9, 10, 11, 18

## I.    **<u>INTRODUCTION</u>**

In this case, Plaintiff Ronald Henry ("Henry") claims Defendant Marlette Funding, LLC ("Marlette") charged $30,000,000.00 of usurious interest and fees on personal loans issued to Henry and 24,000 other Pennsylvanians, in contravention of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

Marlette seeks to avoid class wide liability for its allegedly unlawful charges by compelling this case to individual arbitration. Marlette claims the alleged agreement between Henry and Cross River Bank governing Henry's loan ("Loan Agreement") contains a valid and enforceable arbitration agreement ("Arbitration Provision") that covers Henry's claim. But Marlette cannot compel arbitration for multiple reasons.

First, the plain language of the Arbitration Provision and Loan Agreement prevent Marlette from compelling arbitration. The Arbitration Provision specifically identifies those who can elect arbitration of covered claims—the parties to, and subsequent assignees of, the Loan Agreement. It is undisputed that Marlette is neither. The Loan Agreement also contains a clear "no third party beneficiaries" provision prohibiting non-parties like Marlette from enforcing the Loan Agreement. As a result, the explicit terms of the Arbitration Provision and Loan Agreement preclude Marlette from compelling arbitration of Henry's claims.

Second, Marlette's various attempts to avoid the plain terms of the Arbitration Provision and Loan Agreement are unavailing. Marlette claims it can compel arbitration pursuant to agency and estoppel principles. Traditional principles of agency law, however, do not allow Marlette to enforce the Arbitration Provision on its own behalf and for its own benefit where, as here, the contracting parties clearly intended to prevent non-parties like Marlette from doing so. Moreover, agency law principles are likely inapplicable in cases, like this one, where a non-signatory *agent*

1

(rather than a non-signatory *principal*) seeks to compel arbitration. Nor does equitable estoppel allow Marlette to enforce the Arbitration Provision, since Marlette does not (and cannot) establish detrimental reliance, an essential element of the doctrine. Finally, insofar as Marlette seeks to rely on arbitration-specific agency or estoppel rules derived from the federal policy favoring arbitration to compel arbitration, it cannot do so.

Third, even if Marlette can avoid the plain language of the Loan Agreement, it still cannot compel arbitration. Marlette claims it can compel arbitration as an alleged agent of two trusts that previously possessed rights under the Loan Agreement. But, since Marlette admits the trusts now hold no rights thereunder and have no interest in Henry's loan, neither the trusts, nor Marlette, as their agent, can compel arbitration.

Fourth and finally, Marlette cannot invoke the Arbitration Provision's delegation clause. By repeatedly asking this Court to conclude that Henry must arbitrate his claims, despite knowing of the delegation clause, Marlette waived any argument that this determination is for an arbitrator. And, even if no waiver occurred, the plain language of the Arbitration Provision precludes Marlette from electing to arbitrate arbitrability.

Consequently, Henry respectfully requests that the Court deny Marlette's motion to compel individual arbitration with prejudice.

## II.    **FACTUAL AND PROCEDURAL BACKGROUND**

This case challenges a "rent-a-bank" scheme[1] that Marlette created and facilitates. In this scheme, Marlette advertises personal loans online and then directs Cross River Bank, a New Jersey

---

[1] "In a rent-a-bank arrangement, a nonbank lender contracts with a bank to make loans per [the nonbank lender's] specifications and then [the nonbank lender] buys the loans from the bank." Adam J. Levitin, *Rent-a-Bank: Bank Partnerships and the Evasion of Usury Laws*, 71 Duke L.J. 329, 329 (2021), https://ssrn.com/abstract=3684244.

state bank, to issue the loans to consumers. (Doc. 11, ¶¶ 13-14.) Shortly after the loans are issued, Marlette directs Cross River Bank to sell the loans to Marlette or various other nonbank trusts. (*Id.* at ¶ 15.) After the loans are sold, Marlette begins charging consumers interest rates reaching up to 36%, along with origination fees that are often in the hundreds to thousands of dollars. (*Id.* at ¶¶ 16-19.) Henry fell victim to this scheme when Cross River Bank issued a personal loan to him and then sold the loan to a trust. (*Id.* at ¶¶ 22-29.)

Henry claims Marlette's "rent-a-bank" scheme violates the UTPCPL. Neither Marlette nor any nonbank trust holding the loans originated by Cross River Bank had the licensure required by Pennsylvania law to receive interest and fees that aggregated in excess of 6%. (Doc. 11, ¶¶ 38-40.) As a result, Marlette did not have the ability to charge or collect interest and fees above 6%. (*Id.* at ¶¶ 41-47.) Yet Marlette admits it charged Henry and 24,000 Pennsylvanians $30,000,000.00 of interest and fees that exceeded Pennsylvania's 6% limit for unlicensed entities. (Doc. 1, ¶¶ 13, 23.) Henry contends Marlette's use and employment of this allegedly unlawful "rent-a-bank" scheme violates the UTPCPL. (Doc. 11, ¶¶ 48-59, 68-72.) Henry also claims that Marlette, as the architect and facilitator of this scheme, and as the entity that overcharged Henry and tens of thousands of others tens of millions of dollars, caused Henry and the citizens of this Commonwealth to suffer massive monetary losses. (*Id.*; Doc. 1, ¶¶ 13, 23.)

In response, Marlette has filed three motions to compel arbitration. Marlette now claims it can enforce the Arbitration Provision since Henry's loan was assigned to, and at one time held by, various trusts. (Doc. 34, pp. 11-16.) As conclusively established by entries in the "Loan Register," Henry's loan was assigned from Cross River Bank to various nonbank trusts, and eventually sold to UHG I LLC, a debt buyer. (Doc. 35-2, ¶ 16; Doc. 35-6, p. 3.) Marlette never held the loan. (*Id.*) These assignments are shown on the next page.

3

**Assignments of Henry's Loan, as Listed in Loan Register**



Cross River Bank → Marlette Funding Consumer Loan Trust → MF Trust 2015-A → Marlette Funding Consumer Loan Trust → UHG I LLC

### III.   APPLICABLE STANDARD AND LAW

#### A.   Applicable Standard.

It is undisputed that the summary judgment standard applies to Marlette's motion to compel arbitration. (Doc. 26, pp. 2-3; Doc. 34, pp. 2-3.) Under this standard, a motion to compel arbitration may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-moving party, and a fact is material if it could affect the outcome of the case. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When applying this standard, "a court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the evidence." *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

#### B.   Applicable Law.

New Jersey law controls in this case. The Loan Agreement contains a choice-of-law clause requiring that "[t]he provisions of th[e] [Loan] Agreement . . . be governed by federal laws and, to the extent that state law applies, the laws of the state of New Jersey[.]" (Doc. 35-2, ¶ 24.) Accordingly, New Jersey law applies to Marlette's motion to compel arbitration.[2]

---

[2] Marlette agrees that New Jersey law applies. (Doc. 34, pp. 6-7.)

## IV.   ARGUMENT

### A.   Marlette Cannot Compel Arbitration Under The Plain Language Of The Loan Agreement Or Arbitration Provision.

"A court must look to the language of [an] arbitration clause to establish its boundaries." *Hirsch v. Amper Fin. Servs., LLC*, 71 A.3d 849, 857 (N.J. 2013). In doing so, a court must "give meaning to every word . . . rather than leave a portion of the writing useless or inexplicable." *Fitts v. Chase Manhattan Mortg. Corp.*, No. A-0814-05T5, 2006 N.J. Super. Unpub. LEXIS 1461, at *9-10 (N.J. Super. Ct. App. Div. Nov. 30, 2006). "Where a contract specifies different rights to different specifically-mentioned entities, [it] must be interpreted to require that specificity." *Blaine v. Pressler & Pressler, LLP*, No. A-2289-11T2, 2013 N.J. Super Unpub. LEXIS 1312, at *7-8 (N.J. Super. Ct. App. Div. May 31, 2013). A court "may not rewrite [a] contract to broaden the scope of [an] arbitration [clause] or otherwise make it more effective." *Badiali v. N.J. Mfrs. Ins. Grp.*, 107 A.3d 1281, 1289 (N.J. 2015); *Hirsch*, 71 A.3d at 857.

Here, the plain text of the Arbitration Provision forecloses Marlette's ability to compel arbitration. The first sentence states, "Either party to th[e] [Loan] Agreement, or any subsequent assignee of th[e] [Loan] Agreement, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration[.]" (Doc. 35-2, ¶ 25.a.)[3] The second sentence defines "Claim" as "any past, present, or future claim, dispute, or controversy involving [Henry] (or persons claiming through or connected with [Henry]), on the one hand, and [Cross River Bank] and/or any assignee (or persons claiming through or connected with [Cross River Bank] and/or any assignee), on the other hand[.]" (*Id.*) Based on this plain language, Marlette

---

[3] The parties to the Loan Agreement include Cross River Bank and Henry, (Doc. 35-2, p. 1), and the subsequent assignees of the Loan Agreement include Marlette Funding Consumer Loan Trust, MF Trust 2015-A, and UHG I LLC, (Doc. 35-6, p. 3).

cannot elect arbitration because it is not a party to or subsequent assignee of the Loan Agreement. Had the parties intended otherwise, they should have used the language from the second sentence of the Arbitration Provision when describing who can elect arbitration within the first sentence. Given the distinct and unambiguous language utilized to describe who can elect arbitration versus which claims are subject to arbitration, the plain text of the Arbitration Provision prevents Marlette from compelling arbitration.

In *White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017), the Third Circuit agreed. There, Sunoco moved to compel White to arbitration based on a contract between White and a non-party to the suit. *Id.* at 259. The court denied Sunoco's motion, reasoning:

> Sunoco points to the portion of the arbitration clause in the Card[holder] Agreement which defines the claims covered as inclusive of those "made by or against anyone connected with us or you or claiming through us or you." Sunoco argues that it is "connected with" Citibank . . . [but] ***Sunoco's argument fails because it confuses the nature of the claims covered by the arbitration clause with the question of who can compel arbitration. Even if . . . the claims against Sunoco are covered claims, that does not give Sunoco the right to elect to arbitrate against White.*** The arbitration clause . . . establishes unequivocally that "[e]ither you or we may . . . elect . . . arbitration for any claim, dispute, or controversy between you and us[."] . . . The Cardholder Agreement defines "you" as the card holder and "we" and "us" as Citibank. Nowhere does the agreement provide [] a third party, like Sunoco, [with] the ability to elect arbitration or to move to compel arbitration.

*Id*. at 267-68 (emphasis added) (citations omitted).[4]

---

[4] State and federal courts across the country have followed the Third Circuit's reasoning in *White*. *Jackson v. Home Depot, U.S.A., Inc.*, 857 S.E.2d 321, 328-329 (N.C. Ct. App. 2021); *Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-cv-00895, 2021 U.S. Dist. LEXIS 164995, at *15-20 (E.D.N.Y. Aug. 31, 2021); *Saroza v. Client Servs., Inc.*, No. 17-cv-03429, 2020 U.S. Dist. LEXIS 33375, at *5-8 (D.N.J. Feb. 27, 2020); *Kennedy v. LVNV Funding LLC*, No. 18-cv-10695, 2019 U.S. Dist. LEXIS 69119, at *7 n.4 (D.N.J. Apr. 24, 2019); *Pacanowski v. Alltran Fin., LP*, 271 F. Supp. 3d 738, 745-46 (M.D. Pa. 2017); *McGinnis v. John C. Bonewicz, P.C.*, No. 11-cv-02210, 2012 U.S. Dist. LEXIS 23833, at *6-12 (C.D. Ill. Feb. 2, 2012), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 23829 (C.D. Ill. Feb. 24, 2012); *Fox v. Nationwide Credit, Inc.*, No. 09-cv-07111, 2010 U.S. Dist. LEXIS 88654, at *7-10 (N.D. Ill. Aug. 25, 2010).

In addition to the fact that the Arbitration Provision does not allow Marlette to compel arbitration, the Loan Agreement also denies Marlette the right to benefit from or enforce its terms. The Loan Agreement states: "The parties acknowledge that there are no third party beneficiaries [of] th[e] [Loan] Agreement." (Doc. 35-2, ¶ 24.) Contracting parties incorporate such clauses when they intend that their contract not benefit (or be enforceable by) non-parties. *Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc.*, No. 10-cv-02023, 2016 U.S. Dist. LEXIS 112171, at *11 (D.N.J. Aug. 22, 2016) (describing such clauses as "demonstrative of the [contracting] parties' intent not to create any rights in any third part[ies]"). As a result, allowing Marlette to enforce the terms of the Loan Agreement (such as the Arbitration Provision) would flout the clear, unambiguous text of the Loan Agreement. Marlette cannot compel arbitration for this additional reason.

Since the unambiguous language of the Loan Agreement denies Marlette the ability to elect arbitration or benefit from its terms, Marlette seeks to broaden the scope of the Loan Agreement by relying on various trust agreements. (Doc. 34, pp. 15-16.) But Marlette does not contend that Henry assented to, or is bound by, these agreements. Rather, Marlette claims that Henry executed the Loan Agreement, which clearly denies Marlette the ability to benefit from its terms or compel arbitration. The trust agreements, to which Henry plainly is not a party, cannot broaden the scope of the Loan Agreement or grant Marlette rights that the parties to the Loan Agreement specifically withheld from Marlette. Marlette cannot have an independent right under the trust agreements to enforce the Loan Agreement for its own benefit. In any event, the trust agreements Marlette cites do not grant Marlette the power to act for its own benefit. Instead, as Marlette admits, they only grant Marlette the power to "act on behalf of the [t]rust[s]." (Doc. 33, ¶¶ 51 (quoting Doc. 35-1, ¶ 25; Doc. 35-10, § 11.01(a)), 54 (quoting Doc. 35-1, ¶ 28; Doc. 35-11, § 11.01(a)).) Marlette, however, is not acting on behalf of any trust here. To the contrary, it is acting on its own behalf

7

and seeking to compel arbitration for its own benefit. Neither the trust agreements Marlette cites, nor the Loan Agreement Marlette alleges Henry executed, grant Marlette the ability to do so. Consequently, even if the trust agreements could broaden the scope of the Loan Agreement, they nonetheless do not allow Marlette to elect arbitration. Marlette has no power to compel arbitration and its motion to do so should be denied.

### B.   Marlette Cannot Avoid The Plain Language Of The Loan Agreement Or Arbitration Provision.

"[A] non-party to an [arbitration] agreement, absent certain special circumstances, lacks standing to compel arbitration[.]" *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 755 A.2d 626, 636 (N.J. Super. Ct. App. Div. 2000) (citation omitted). Such circumstances include agency and equitable estoppel. *Hirsch*, 71 A.3d at 859. Determining whether these principles apply requires "careful scrutiny[.]" *Id.* at 861-62.

Here, Marlette seeks to compel arbitration in accordance with three theories. First, Marlette contends it can compel arbitration as an agent of various trusts that once held Henry's loan. Second, Marlette argues equitable estoppel applies and permits it to compel arbitration because Henry's claims place the Loan Agreement at issue. Third, Marlette claims it should be allowed to compel arbitration because, if it cannot, Henry could easily avoid the practical consequences of the Loan Agreement. As explained below, each argument is misplaced. Accordingly, the Court should deny Marlette's motion to compel arbitration.

### 1.   Marlette cannot enforce the Arbitration Provision using agency principles.

"[A]rbitration may be compelled by a non-signatory against a signatory . . . on the basis of agency principles." *Hirsch*, 71 A.3d at 859. That said, a non-signatory cannot compel arbitration "unless the arbitration benefits [of] the contract [a plaintiff] executed with [a signatory defendant]

8

somehow extend[] to [the non-signatory] 'based on traditional principles of . . . agency law.'" *Alfano v. BDO Seidman, LLP*, 925 A.2d 22, 27 (N.J. Super. Ct. App. Div. 2007) (quoting *E.I. Dupont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001)).[5] Pursuant to traditional agency law principles, "[a]n agent's status does not confer a right on the agent to enforce a [contract] term for the agent's own benefit." Restatement (Third) of Agency § 6.01 cmt. e (Am. Law Inst. 2006) (Reporter's Notes);[6] *see also Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1298 (10th Cir. 2017) (quoting *Fericks v. Lucy Ann Soffe Trust*, 100 P.3d 1200, 1206 (Utah 2004)) (applying Utah law, which is similar to the Restatement, and stating, "an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit").

Here, Marlette's attempt to compel arbitration should fail, as Marlette seeks to do so for its own benefit. Agency law does not allow Marlette to do this. Nor does the Loan Agreement, which denies third parties, like Marlette, the right to benefit from or enforce its terms. Agency law principles prevent Marlette from enforcing or benefiting from the Loan Agreement. Restatement (Third) of Agency § 6.01 cmt. d (Am. Law Inst. 2006) (Comments & Illustrations) ("If an agent does not become a party to a contract and is not subject to liability on the contract . . . , the agent should not be able to assert rights . . . [under] the contract in the absence of indicia that the parties to the contract so intended."); *1180 Raymond Urban Renewal, LLC v. 1180 Astro Urban Renewal Inv'rs LLC*, No. A-5074-12T3, 2015 N.J. Super. Unpub. LEXIS 1494, at *9 (N.J. Super. Ct. App.

---

[5] Marlette relies on case law recognizing precisely this proposition. (*See, e.g.*, Doc. 34, p. 12 (citing *E.I. Dupont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001) ("[T]here is no dispute that a non-signatory cannot be bound to arbitrate unless it is bound 'under traditional principles of . . . agency law' to be akin to a signatory[.]")).)

[6] New Jersey's appellate courts have adopted, and now apply, the Third Restatement of Agency. *Gayles v. Sky Zone Trampoline Park*, 254 A.3d 1271, 1276-77 (N.J. 2021).

Div. June 22, 2015) (denying third party right to enforce "Loan Agreement [that] specifically provide[d] that there [we]re no third-party beneficiaries, and [that] no one other than the parties to the agreement ha[d] standing to enforce any term of the Loan Agreement").

Contrary to Marlette's suggestion, a principal-agent relationship between a signatory and a non-signatory does not, on its own, allow a non-signatory to compel arbitration. (Doc. 34, p. 14.) Indeed, "the intertwinement of claims and parties in [] litigation—in and of itself—[i]s [not] sufficient to give a non-signatory corporation standing to compel arbitration." *Hirsch*, 71 A.3d at 860. Instead, traditional principles of agency or contract law must properly apply, and must provide the non-signatory with standing to compel arbitration. *Id.*

As explained above, traditional principles of agency law do not allow Marlette to compel arbitration. First, "[a]n agent's status does not confer a right on the agent to enforce a [contract] term for the agent's own benefit." Restatement (Third) of Agency § 6.01 cmt. e (Am. Law Inst. 2006) (Reporter's Notes). That is exactly what Marlette seeks to do here. Second, "[i]f an agent does not become a party to a contract and is not subject to liability on the contract . . . , the agent should not be able to assert rights . . . [under] the contract in the absence of indicia that the parties to the contract so intended." Restatement (Third) of Agency § 6.01 cmt. d (Am. Law Inst. 2006) (Comments & Illustrations). Here, there is no indication that the parties to the Loan Agreement intended for Marlette to benefit from or enforce its terms. Instead, the parties unambiguously intended to deny Marlette the ability to do so, as explained in Section IV.A., *supra*. Traditional agency law principles do not allow Marlette, as a non-signatory agent, to compel arbitration in the face of the parties' clearly stated intent to deny Marlette the right to do so.

Moreover, it is unclear whether traditional agency law principles even apply in this case, because this case involves a ***non-signatory agent*** (rather than a ***non-signatory principal***) seeking

10

to compel arbitration. Agency arguments are typically made where a non-signatory principal seeks to compel arbitration pursuant to a contract executed on its behalf by its signatory agent. They are not normally made where, as here, a non-signatory agent wishes to compel arbitration pursuant to a contract assigned to its non-signatory principal. This is borne out by the fact that "[a]n agent's status does not confer a right . . . to enforce a [contract] term for the agent's own benefit." Restatement (Third) of Agency § 6.01 cmt. e (Am. Law Inst. 2006) (Reporter's Notes). It also is borne out by *Hirsch*, which cited only two cases as having properly compelled arbitration via agency principles. 71 A.3d at 859 (citing *Alfano*, 925 A.2d at 27-28); *id.* at 860 (citing *EPIX Holdings Corp. v. Marsh & McLennan Cos.*, 982 A.2d 1194, 1197-98 (N.J. Super. Ct. App. Div. 2009)). Both cases addressed a situation where, unlike here, a non-signatory principal sought to compel arbitration pursuant to a contract executed by a signatory agent. *See Alfano*, 925 A.2d at 27-28 (recognizing "[w]hen one corporation acts as the agent of a disclosed principal corporation, the latter corporation may be liable on contracts made by the agent[,]" and holding non-signatory principal ("DB") could enforce arbitration clause of contract entered into by signatory agent ("DBSI")); *EPIX Holdings*, 982 A.2d at 1197-98 (allowing non-signatory principal ("AIG") to enforce arbitration clause of contract entered into by signatory agent ("National Union")).

Since traditional principles of agency law do not allow Marlette to compel arbitration and, in any event, are likely inapplicable, it seems Marlette is attempting to be treated as a third party beneficiary, under the guise of agency. While Marlette's Trojan horse is understandable, given that the Loan Agreement denies third parties the right to benefit from or enforce the Loan Agreement and prohibits third parties from compelling arbitration, it does not provide any legitimate basis to compel arbitration. The Court should not be fooled. Marlette is not a third party beneficiary and it cannot become one by invoking traditional agency law principles, which are inapplicable and deny

11

Marlette the ability to compel arbitration. Accordingly, the Court should reject Marlette's agency claim and deny its motion to compel arbitration.

### 2. Marlette cannot enforce the Arbitration Provision using estoppel principles.

Under New Jersey law, a non-signatory may compel arbitration against a signatory via the equitable estoppel doctrine. *Hirsch*, 71 A.3d at 859. The "intertwinement of claims and parties" is not sufficient to invoke equitable estoppel; instead, a party must demonstrate that it "detrimentally rel[ied] on another party's conduct." *Id.* at 859-60. This is "critical" and requires a defendant to prove it reasonably "expected to arbitrate [a] dispute[] in detrimental reliance on [a] plaintiff['s] conduct." *Id.* at 860-61. "Equitable estoppel should be used sparingly to compel arbitration[,]" and it should not be used as "a sword to compel arbitration." *Id.* at 852.

Here, Marlette cannot use equitable estoppel because it fails to prove the "critical" element of reliance. In fact, Marlette essentially ignores this element. Marlette likely does so because it cannot credibly claim it "acted or changed [its] position to [its] detriment" due to Henry's conduct. *Hirsch*, 71 A.3d at 858. As explained in Section IV.A., *supra*, the Loan Agreement contains a "no third party beneficiaries" provision, which "expressly negate[s]" any intent to grant "any legally enforceable right[s]" to non-parties, like Marlette. *Sanofi-Aventis*, 2016 U.S. Dist. LEXIS 112171, at *11. Also, the Arbitration Provision allows only parties or assignees to elect arbitration. Given the plain text of the Loan Agreement, Marlette could not have "justifi[ably] and reasonabl[y]" expected to arbitrate the instant action. *Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co.*, No. A-4016-97T3, 727 A.2d 1050, 1055 (N.J. Super. Ct. App. Div. May 4, 1999). Accordingly, any purported reliance by Marlette was patently unreasonable and, therefore, is insufficient to allow Marlette to compel arbitration by way of equitable estoppel. *Id*.

12

Rather than prove the elements of equitable estoppel, Marlette claims it can use the doctrine to compel arbitration because Henry's claims "aris[e] under the Loan Agreement" and "plac[e] the Loan Agreement squarely at issue[.]" (Doc. 34, pp. 12-13.)

Initially, this characterization is inaccurate. Henry's claims do not arise under or place the Loan Agreement at issue. Marlette recognized this when attempting to explain why Henry's claims fall within the scope of the Arbitration Provision. (Doc. 34, p. 17 (quotations, alterations omitted) (emphasis added) ("[Henry]'s UTPCPL claim—*which arises from statute*—is premised on [Henry] allegedly being charged an interest rate in excess of the limits set by Pennsylvania law.").) The Court, when denying Marlette's second motion for arbitration, made a similar observation. (Doc. 26, p. 3 ("Plaintiff's claims, arguably, do not rely on any documents that contain the contested arbitration agreement.").) The complaint also does not mention the Loan Agreement or its terms. Nor does Henry: seek to enforce any rights created by the Loan Agreement; claim Marlette breached the Loan Agreement; or claim Marlette interfered with any rights created by the Loan Agreement. In addition, Henry need not rely on the Loan Agreement to prove anything. Instead, he can rely on math alone to prove his claims.[7] Henry's claims arise from general obligations imposed by state statute, not from the Loan Agreement. Accordingly, Henry's claims do not arise under or place the Loan Agreement at issue.

Regardless, even if Henry's claims placed the Loan Agreement at issue, a party cannot use equitable estoppel to compel arbitration absent proof of detrimental reliance. *Hirsch*, 71 A.3d at

---

[7] Had Marlette charged interest and fees at the legal rate, Henry's loan payments would have been $231.23 per month, (Exhibit A), rather than $286.42 per month, (Exhibit B). In addition, using Henry's first loan payment as an example, had Marlette charged interest and fees at the legal rate, Henry would have paid only $38.00 of interest with respect to his first payment, (Exhibit A), rather than the $113.75 of interest that he actually paid, (Exhibit B). In calculating these amounts, Henry did not rely on the Loan Agreement, nor does he presently seek to enforce any of its terms.

13

859-60. The only conduct that Marlette claims Henry engaged in with respect to the detrimental reliance requirement is filing this case, which Marlette argues placed the Loan Agreement at issue. (Doc. 34, p. 12.) But the filing of a lawsuit, alone, does not satisfy the reliance requirement. For example, in *Hirsch*, the plaintiffs filed suit on claims that arose out of an alleged scheme involving contracts with arbitration clauses. *Id.* at 861. The New Jersey Supreme Court held that this was insufficient, without proof of detrimental reliance, to allow the defendants to compel arbitration. *Id*. Here, like *Hirsch*, Henry filed suit on claims that arose out of an alleged "rent-a-bank" scheme, which scheme Henry contends contravenes general obligations imposed by Pennsylvania statute. The relationship between Henry's claims and the Loan Agreement is tenuous, at best. Regardless, assuming the two had a close nexus, as Marlette suggests, such nexus—on its own—is not enough: "the doctrine of equitable estoppel does not apply absent proof that a party detrimentally rel[ied] on another party's conduct." *Hirsch*, 71 A.3d at 860.

Further, the only case Marlette cites that discusses *Hirsch* and the elements of New Jersey equitable estoppel law is distinguishable. In *Sicily by Car S.P.A. v. Hertz Global Holdings, Inc.*, (cited at Doc. 34, p. 12), the plaintiff claimed the defendant "engaged in misconduct which interfered with [the plaintiff]'s rights and benefits under [a contract]" with an arbitration clause. No. 14-cv-06113, 2015 U.S. Dist. LEXIS 65751, at *13-14 (D.N.J. May 20, 2015); *id.* at *3. Thus, the plaintiff sought to benefit from a contract with an arbitration clause while disavowing it. Henry does not seek to benefit from the Loan Agreement, nor does he claim Marlette interfered with his contractual rights. Rather, as Marlette concedes, Henry's claims "arise[] from . . . statute" and are "premised on [Henry] allegedly being charged an interest rate in excess of the limits set by Pennsylvania law." (Doc. 34, p. 17.) *Sicily* presumed detrimental reliance because the suit at issue

14

sought to litigate the rights and benefits under a contract with an arbitration clause.[8] Henry does not seek to do that here, and his claims, "arguably, do not rely on any documents that contain the contested arbitration agreement." (Doc. 26, p. 3.) In any event, Marlette cannot claim that the mere filing of a lawsuit is sufficient to allow Marlette to compel arbitration *given the facts of this case*. The Loan Agreement clearly and unambiguously denies Marlette the ability to compel arbitration. As a result, Marlette could not have expected to arbitrate Henry's claims simply because Henry sued Marlette. Instead, Marlette would need to establish that Henry engaged in some other conduct that could have reasonably led Marlette to believe it could arbitrate Henry's claims.[9] Since Marlette has not done so, it cannot rely on equitable estoppel to compel arbitration.

---

[8] Although *Sicily* claims it applied equitable estoppel to allow a non-party to compel arbitration, it seems like the court applied agency principles to compel arbitration. To the extent *Sicily* is as broad as Marlette argues, and holds that merely filing suit on a claim that is intertwined with a contract containing an arbitration clause is enough to compel arbitration, *Sicily* conflicts with *Hirsch*, which held that "[e]stoppel cannot be applied solely because the parties and claims are intertwined[.]" 71 A.3d at 860. *Sicily* is better understood as applying agency principles to compel arbitration. *Sicily* presented the traditional agency situation, where non-signatory principals (Hertz) sought to compel arbitration based on a contract executed by non-signatory agents (Dollar Thrifty). 2015 U.S. Dist. LEXIS 65751, at *1-3. The claims in *Sicily* also specifically arose under a contract with an arbitration clause, as the plaintiff claimed the principals "interfered with [its] contracted-for rights and benefits under" the contract. *Id.* at *3. Together, these factors allowed the non-signatory principals to compel arbitration. Here, Marlette is a non-signatory agent, which on its own prevents Marlette from seeking arbitration. Further, Henry's claims do not arise under the Loan Agreement, as Marlette concedes. The Court should disregard *Sicily* for this additional reason.

[9] *Salerno Med. Assocs., LLP v. Riverside Med. Mgmt., LLC*, 542 F. Supp. 3d 268 (D.N.J. 2021), which Marlette cites, (Doc. 34, pp. 12-13), provides an example of a course of conduct that might be sufficient. In *Salerno*, the plaintiffs did not resist a prior order compelling claims to arbitration, had their providers bring claims in arbitration seeking to litigate the meaning of a contract with an arbitration provision, and afterward, filed another lawsuit seeking to use a favorable award that the providers obtained in arbitration concerning the meaning of contracts with arbitration provisions to assert claims against the defendants. 542 F. Supp. 3d at 274-75, 279-80. This course of conduct led the defendants to reasonably expect to arbitrate the plaintiffs' claims. *Id.* Here, by contrast, Henry has not arbitrated anything, nor does he seek to litigate the meaning of the Loan Agreement or take advantage of an arbitration award interpreting its terms. Henry did not engage in conduct that made Marlette believe it could arbitrate claims against it. Nor could Henry have engaged in such conduct had he tried, as the plain, unambiguous language of the Loan Agreement specifically denies non-parties, like Marlette, any right to benefit from or enforce its terms.

15

Finally, application of equitable estoppel in this case would permit Marlette to use estoppel as "a sword to compel arbitration." *Hirsch*, 71 A.3d at 852. Again, the plain language of the Loan Agreement establishes that non-parties, like Marlette, cannot benefit from or enforce its terms. (Doc. 35-2, ¶ 24.) Allowing Marlette to do so, despite this unambiguous language, is inequitable and would deny Henry the benefit of the bargain he allegedly made. Marlette cannot credibly claim it believed it could arbitrate claims with Henry. If it did, that belief was objectively unreasonable. Permitting Marlette to elect arbitration in the face of an agreement that clearly and unambiguously denies Marlette the ability to do so, would permit Marlette to use estoppel as "a sword to compel arbitration." *Hirsch*, 71 A.3d at 852. Equitable estoppel does not apply here, and the Court should deny Marlette's motion to compel arbitration.[10]

### 3. Marlette cannot enforce the Arbitration Provision using special arbitration-specific rules that are divorced from the requirements of New Jersey law.

Likely recognizing that its request to compel arbitration does not meet the requirements of New Jersey agency or equitable estoppel law, Marlette's main argument supporting its motion to compel relies on an equitable claim that is derived from the "federal policy favoring arbitration." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993). Marlette

---

[10] Marlette will likely classify Henry's decision to name Marlette as defendant as "gamesmanship" intended to allow Henry to avoid arbitration, (Doc. 16, pp. 1, 3-4), but any such characterization conveniently ignores "the entire theory" of this case, (*id*. at p. 4). Henry claims Marlette has created an allegedly unlawful "rent-a-bank" ruse for the purpose of circumventing Pennsylvania's usury and consumer protection laws, and that Marlette is the primary facilitator of this ploy. (Doc. 11, ¶¶ 38-47.) Henry has therefore sued Marlette. This decision makes sense not only as a matter of fact, but also as a matter of law. Henry asserts a single claim under the UTPCPL, which allows any person who suffers an ascertainable loss "as a result of the use or employment by any person of a method, act or practice declared unlawful by [the UTPCPL]" to bring an action for damages. 73 P.S. § 201-9.2(a). Marlette is the proper party to sue under the UTPCPL because Marlette is the alleged architect and facilitator of the "rent-a-bank" arrangement that Henry claims caused his losses and those of the class members. Because Marlette used and employed a scheme that resulted in $30,000,000.00 of losses to 24,000 Pennsylvania residents, Marlette is the proper party to sue.

16

argues it can compel arbitration because, "if the rule were otherwise, a party could easily 'avoid the practical consequences of [the Loan Agreement.]'" (Doc. 34, pp. 11-12 (quoting *Farmland Dairies, Inc. v. Milk Drivers & Dairy Emps. Union Local 680*, 956 F. Supp. 1190, 1197 (D.N.J. 1996) (quoting *Arnold v. The Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990))).) This type of equitable claim, which is not derived from New Jersey law, but from the "federal policy favoring arbitration," "extend[s] the scope of [an] arbitration clause[] to agents of the party who signed the agreements." *Pritzker*, 7 F.3d at 1122.

The first problem with Marlette's argument is that the "federal policy favoring arbitration" does not authorize federal courts to "devise novel rules to favor arbitration over litigation." *Morgan v. Sundance, Inc.*, No. 21-328, 596 U.S. __, 2022 U.S. LEXIS 2514, at *11 (2022). Put differently, federal law "bar[s] [courts from] using custom-made rules[] to tilt the playing field in favor of (or against) arbitration." *Id.* at *12. "[A] court must hold a party to its arbitration contract just as the court would to any other kind." *Id.* at *11. The federal policy favoring arbitration did not authorize *Pritzker*, *Arnold*, or the other cases on which Marlette relies, to devise special arbitration-related equitable rules to "extend the scope of [] arbitration clauses to agents of the party who signed the agreements." *Pritzker*, 7 F.3d at 1122. *Morgan* overruled these cases, and the arbitration-specific rules that they created are no longer good law.[11]

The second issue with Marlette's argument is that "traditional principles of state law[,]" not federal law, govern whether non-signatories can compel arbitration. *White*, 870 F.3d at 262 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). The Supreme Court overruled all contrary decisions. *Atricure, Inc. v. Meng*, 12 F.4th 516, 520 (6th Cir. 2021).

---

[11] *See also Atricure, Inc. v. Meng*, 12 F.4th 516, 532 (6th Cir. 2021) (emphasis added) (explicitly considering whether to apply "the traditional agency rule or *the arbitration-specific agency rule*").

17

Here, that matters because New Jersey law does not allow Marlette to compel arbitration as a non-signatory. The only equitable doctrine recognized by New Jersey law requires proof of detrimental reliance. *Hirsch*, 71 A.3d at 859-60. Additionally, traditional agency law principles prohibit non-signatory agents from enforcing contract terms for their own benefit absent proof that the parties intended to allow the agent to enforce the contract. Restatement (Third) of Agency § 6.01 cmts. d, e (Am. Law Inst. 2006). Although Marlette claims New Jersey law holds to the contrary, (Doc. 34, p. 11), this is patently untrue. To make this claim, Marlette does not cite traditional agency law principles, which do not grant agents the right to enforce contract terms for their own benefit (absent a showing the parties intended otherwise). Nor does Marlette cite *Hirsch*, which requires detrimental reliance to invoke equitable estoppel, and which recognizes that agency only applies in circumstances that are not present in this case. 71 A.3d at 859-61. Instead, Marlette cites only *Bleumer v. Parkway Ins. Co.*, 649 A.2d 913, 928-31 (N.J. Super. Ct. Law Div. 1994). (Doc. 34, p. 11.) But *Bleumer* was not decided by the appellate division of the New Jersey Superior Court; it was decided by the law division, meaning it is a trial court decision.[12] In addition, *Bleumer* is almost thirty years old and relied entirely on federal law, which the Supreme Court recently overruled in *Morgan*, to support its decision. Finally, *Bleumer* conflicts with *Hirsch* and traditional principles of agency law, as previously explained. A thirty-year-old, one-off decision from a trial court, which does not cite and is directly contrary to the holdings of the New Jersey Supreme Court and traditional agency law principles, cannot establish New Jersey law. Marlette cannot compel arbitration under New Jersey law.

---

[12] Marlette conveniently omitted this information from its brief. Instead of using a "(N.J. Super. Ct. Law Div.)" parenthetical to properly indicate that *Bleumer* is a trial court case, Marlette used a "(N.J. Super.)" parenthetical. (Doc. 34, p. 11.) This incomplete and incorrect parenthetical misleadingly suggests *Bleumer* is a New Jersey appellate court decision, rather than a New Jersey trial court decision.

Perhaps most importantly, allowing Henry to pursue his claims in court will not allow him to "easily avoid the practical consequences of" the Loan Agreement. (Doc. 34, p. 11.) The Loan Agreement unambiguously denies non-parties (like Marlette) any right to benefit from or enforce its terms, and the Arbitration Provision does not allow non-party, non-assignees (like Marlette) to elect arbitration. The drafter of the Loan Agreement knew that claims could be brought against Marlette,[13] but deliberately denied Marlette the right to benefit from the Loan Agreement or elect arbitration. Had the drafter intended otherwise, it should have said so, by both naming Marlette as a beneficiary and allowing Marlette to elect arbitration. *See McCarthy v. Azure*, 22 F.3d 351, 360 (1st Cir. 1994) ("A corporation that wishes to bring its agents . . . into the arbitral tent can do so by writing contracts in general, and arbitration clauses in particular, in ways that will specify the desired result."). But the drafter did none of these things. Instead, it drafted a contract that denies Marlette the ability to benefit from or enforce the terms of the Loan Agreement. Allowing Marlette to compel arbitration pursuant to a contract that clearly denies non-parties the right to benefit from, enforce, or invoke its terms would allow Marlette to "easily avoid the practical consequences of" the Loan Agreement. (Doc. 34, p. 11.) The Court should honor the plain language of the Loan Agreement and deny Marlette's motion to compel arbitration.

**C.      Even Assuming Marlette Can Avoid The Plain Language Of The Loan Agreement, It Still Cannot Compel Arbitration.**

Marlette claims it can compel arbitration as an alleged agent of two different assignees of the Loan Agreement (Marlette Funding Consumer Loan Trust, and MF Trust 2015-A), but both of these assignees now have no rights in the Loan Agreement and, thus, cannot compel arbitration. To this end, a sworn declaration Marlette filed in a related case states that the Loan Agreement

---

[13] Indeed, the Loan Agreement expressly references Marlette at least once. (Doc. 35-2, ¶ 16.)

19

"together with the rights and title therein" was sold to UHG I LLC and that, as a result, "Marlette Funding Consumer Loan Trust *has no further interest in [Henry's loan] for any purpose*." *Henry v. Alliant Capital Mgmt. LLC*, No. 21-cv-01019, Doc. 25-4, p. 4, ¶¶ 4-5 (W.D. Pa. Jan. 7, 2022) (emphasis added). MF Trust 2015-A, who "assigned all rights, title, and interest in Henry's . . . loan (including the Loan Agreement)[,]" similarly has no interest in Henry's loan. (Doc. 35-1, ¶¶ 22-23.) Since these assignees presently have no interest in the Loan Agreement for any purpose, they have no right to elect arbitration. *HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*, 590 F. Supp. 2d 677, 684 (D.N.J. 2008) (alterations omitted) (quoting *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 879 (N.D. Ill. 2006)) ("[A]n assignment ordinarily extinguishes the right of the assignor to compel arbitration."); *Sanders v. Savannah Highway Auto. Co.*, 852 S.E.2d 744, 746 (S.C. Ct. App. 2020) (same); *In re Wholesale Grocery Prods. Antitrust Litig.*, 97 F. Supp. 3d 1101, 1106 (D. Minn. 2015) (same), *aff'd*, 850 F.3d 344 (8th Cir. 2017); *Kennamer v. Ford Motor Credit Co. LLC*, 153 So. 3d 752, 763 (Ala. 2014) ("[B]ecause of the dealership's assignment [of the installment contract] to Ford Credit, Ford Credit stands in the shoes of the dealership, and the dealership no longer has any interest in the contract. Ford Credit can enforce the terms of the contract . . . but the dealership cannot. . . . [T]he dealership cannot enforce the arbitration clause under the installment contract either, because it assigned its right and liabilities to Ford Credit."); *see also Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy*, 5 A.3d 166, 170 (N.J. Super. Ct. App. Div. 2010) ("[A]n 'assignment' of a contract right extinguishes the right in the assignor and recreates the same right in the assignee[.]"); *cf. RRCI Constructors, LLC v. Charlie's/Diamond Ready Mix, Inc.*, 51 V.I. 645, 655 (D.V.I. 2009) (rejecting the position that "both the assignor and assignee of an agreement may be compelled to arbitrate a dispute that comes within the scope of a valid arbitration agreement," and

stating that "[s]uch a position is unsupported by law"). As a result, Marlette cannot rely on the above assignees' alleged interest in the Loan Agreement to compel arbitration.

To the extent Marlette argues that the trusts retained the right to compel arbitration, even though Marlette already testified under oath that the trusts have no further interest in Henry's loan for any purpose, the Court should reject this argument. Henry anticipates that Marlette will point to the Arbitration Provision's last paragraph, which states the Arbitration Provision survives any transfer of Henry's loan or the Loan Agreement and the termination of any parties' relationship. (Doc. 35-2, ¶ 25.h.) But this paragraph merely allows the Arbitration Provision to be passed on to assignees so that the assignees can compel arbitration. It cannot allow entities that sold their rights, and admitted they now have no interest in Henry's loan for any purpose, to elect arbitration. *In re Wholesale Grocery Prods. Antitrust Litig.*, 850 F.3d at 350 (quotations and alterations omitted) (distinguishing case law that permitted enforcement of contract rights after the termination of a contract because, when assignments occur, the assignors "have nothing left to enforce, since all of their remaining rights were assumed by someone else"). There can only be one party that holds the right to elect arbitration under the Loan Agreement. *RRCI Constructors, LLC*, 51 V.I. at 655. And, as Marlette previously admitted, that party is not the trusts, as they already sold Henry's loan to UHG I LLC and therefore have "***no further interest in [Henry's loan] for any purpose***." *Henry v. Alliant Capital Mgmt., LLC*, No. 21-cv-01019, Doc. 25-4, p. 4, ¶¶ 4-5 (W.D. Pa. Jan. 7, 2022) (emphasis added). Accordingly, Marlette cannot compel arbitration on the basis that the trusts still hold the right to elect arbitration under the Loan Agreement.

### D.      Marlette Cannot Invoke The Delegation Clause.

"The parties to a contract may agree to have an arbitrator, rather than a court, determine whether the contract's arbitration agreement is enforceable" by including a "delegation clause" in

21

the contract. *Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1324 (11th Cir. 2016) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010)). But "[a] delegation clause operates as a defense that the defendant must raise in order to rely upon it." *Id*. "When the defendant does not properly raise the delegation clause . . . , the defendant has waived the delegation clause and the court must determine whether the arbitration agreement is enforceable."[14] *Id*.; *Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1264 (S.D. Fla. 2019) (same).

Although Marlette now attempts to invoke the Arbitration Provision's delegation clause, (Doc. 34, pp. 5-6), it waived its right to do so. Henry initiated the instant action nearly a year ago. (Doc. 1, ¶ 1.) Soon after, Marlette filed its first motion to compel arbitration, to which it attached the Loan Agreement, asking *this Court* to conclude that Henry's claims are subject to arbitration. (Docs. 7, 8, 8-1.) Marlette later filed its second such motion, again supplying the Loan Agreement and seeking a *judicial* determination that Henry must arbitrate his claims. (Docs. 12, 13, 13-1.) After the Court denied this motion, (Doc. 26), the parties conducted arbitration-related discovery "to further develop the factual record" to enable *the Court* to rule on "the enforceability of the arbitration agreement," (*id*. at p. 3). Now, despite failing to advance any such argument in either of its two earlier motions, Marlette argues for the first time in its third motion to compel arbitration that all questions concerning the arbitrability of Henry's claims must be resolved by an arbitrator. But Marlette has waived this argument by repeatedly asking this Court to address arbitrability,

---

[14] Although *Bodine* and Third Circuit case law required plaintiffs to suffer prejudice to prove waiver of arbitration rights, *see Bodine*, 830 F.3d at 1324; *Supermedia v. Affordable Elec., Inc.*, 565 F. App'x 144, 147 (3d Cir. 2014), the Supreme Court recently held that prejudice is not a requirement for waiver and that federal courts must instead focus on a waiving party's conduct. *Morgan*, 2022 U.S. LEXIS 2514, at *4-5, 7-13.

notwithstanding its knowledge of the delegation clause.[15] *See Morgan*, 2022 U.S. LEXIS 2514, at *9 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) ("Waiver . . . 'is the intentional relinquishment or abandonment of a known right.'"); *Bodine*, 830 F.3d at 1324-25 ("Defendants waived enforcement of the delegation clause" by "not argu[ing] consistently that the threshold issue [of arbitrability] was assigned by agreement to the arbitrator[.]"); *Barras v. Branch Banking & Trust Co. (In re Checking Account Overdraft Litig.)*, 685 F.3d 1269, 1273-75 (11th Cir. 2012) (affirming the district court's conclusion that the defendant waived the delegation clause where it "litigated its case for over a year without moving the district court to submit the threshold issue of enforceability to the arbitrator"); *Espada v. Guardian Serv. Indus., Inc.*, No. 18-cv-05443, 2019 U.S. Dist. LEXIS 181187, at *21 (E.D.N.Y. Oct. 18, 2019) ("[Defendant] waived enforcement of the [contract]'s delegation clause when it asked the Court, in its opening papers, to rule directly on the 'reserved question' by holding that Plaintiff's underlying claims are arbitrable.").[16]

Even if no waiver occurred, the Arbitration Provision's plain language prevents Marlette from electing to arbitrate the arbitrability of this action. As Marlette recognizes, (Doc. 34, p. 6), the delegation clause Marlette now seeks to enforce is subsumed within the Arbitration Provision's definition of a "Claim," (Doc. 35-2, ¶ 25.a.). But, as explained in Section IV.A., *supra*, only the parties to and subsequent assignees of the Loan Agreement possess the power to elect arbitration

---

[15] Marlette clearly had knowledge of the Arbitration Provision's delegation clause. In addition to attaching the Loan Agreement (which contains the delegation clause) to both of its prior motions, Marlette included the language of the delegation clause in both of its briefs supporting its motions. (Doc. 8, pp. 3-4; Doc. 13, p. 4.) Despite doing so, Marlette made no attempt to enforce the clause.

[16] Marlette may point to the Loan Agreement's "no waiver" provision, (Doc. 35-2, ¶ 24), to argue that it did not waive its right to enforce the delegation clause, but parties cannot contractually limit a court's authority to find waiver by employing "no waiver" provisions. *See, e.g., Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 452 (3d Cir. 2011) (quoting *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 86 (2d Cir. 1998)) ("[T]he presence of a 'no waiver' clause does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration.").

of a covered "Claim." (*Id*.) Since Marlette was not a party to, and has never been an assignee of, the Loan Agreement, the plain text of the Arbitration Provision precludes Marlette from electing to arbitrate arbitrability of Henry's claims. *Cf. Espada*, 2019 U.S. Dist. LEXIS 181187, at *21 (finding Guardian could not invoke delegation clause where "delegation clause by its terms [could] be invoked solely by 'the Union or the RAB'").

And, most importantly, Marlette's own case law roundly rejects its delegation clause claim. *Sicily*, (cited at Doc. 34, p. 12), held that equitable estoppel arguments, which go to whether a valid arbitration agreement exists, must be decided by the court. 2015 U.S. Dist. LEXIS 65751, at *4-6 (rejecting the defendants' delegation clause argument since "[t]he argument presume[d] that [the defendants] c[ould] avail [themselves] of the rights and obligations of the [contract] insofar as they concern the arbitration of disputes, but whether . . . [the] non-signatory [defendants] [could] do so [wa]s precisely the question the Court [had to] address"). *Salerno*, (cited at Doc. 34, pp. 12-13), stands for the same proposition. 542 F. Supp. 3d at 277.

## V.   CONCLUSION

For the reasons stated herein, Henry respectfully requests that the Court deny Marlette's motion to compel individual arbitration with prejudice.

24

Respectfully submitted,

Dated: July 8, 2022

*/s/ Kevin Abramowicz*
Kevin Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
**East End Trial Group LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 8, 2022, a true and correct copy of the foregoing Plaintiff's Response in Opposition to Defendant's Third Motion to Compel Individual Arbitration was served upon the following counsel of record electronically via the Court's CM/ECF system:

Justin J. Kontul
Alex G. Mahfood
**Reed Smith LLP**
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
jkontul@reedsmith.com
amahfood@reedsmith.com

*/s/ Kevin Abramowicz*
Kevin Abramowicz

25